IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE | ) | |
| COMPANY, A/S/O TRANSMAR | ) | |
| COMMODITY GROUP, LTD., | ) | Case No.: 07-014 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | TRIAL BY JURY OF |
| | ) | TWELVE DEMANDED |
| UNITED COCOA PROCESSOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)

**A.**   Identities of individuals likely to have knowledge of discoverable information that may be used to support the disclosing parties' claims of defenses.

1.   Transmar Commodity

2.   United Cocoa Processor, Inc.

3.   Representatives of Plaintiff's insurance

4.   Representative of Travelers' Insurance Company

5.   Representatives from United Cocoa Processor, Inc.

6.   Richard Ward, Assistant State Fire Marshall

7.   Representatives from Trans-port Marine Surveyors, Inc.

8.   Department of Health and Human Services

**B.**   Documents and things in the possession of counsel or other parties that may be used to support disclosing parties' claims or defenses.

1.   Investigation file materials attached.

**C.**     Identities of Experts and their opinions.

    1.     No experts have been retained to date.

**D.**     Insurance Agreement in Force

    1.     Travelers Insurance General Aggregate (except Products-Completed Operations Limit) $2,000,000 Products-Completed Operations Aggregate Limit $2,000,000.

    2.     Policy documents to be supplied upon request.

                                     REGER RIZZO KAVULICH & DARNALL LLP


_____     */s/ Louis J. Rizzo, Jr., Esquire*
                                             Louis J. Rizzo, Jr., Esquire
                                             Delaware State Bar I.D. No. 3374
                                             1001 Jefferson Plaza, Suite 202
                                             Wilmington, DE 19801
                                             (302) 652-3611
                                             Attorney for Defendant
Dated:   March 29, 2007

# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CESAR AYLLON-FLORES**, | § | |
| | § | C.A. No.: 1-06-cv-140 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **PETER D. STANLEY** and **NANCY R.** | § | |
| **STANLEY**, | § | |
| | § | |
| Defendant. | § | |

## <u>CERTIFICATE OF SERVICE</u>

I, Louis J. Rizzo, Jr., Esquire, do hereby certify that on this 29th day of March, 2007 that a true and correct copy of Defendant's Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) has been served by ECF/PACER, upon the following counsel of record:

Michael K. Tighe, Esquire
Tighe & Cottrell, P.A.
704 North King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899

William Mullin, Esquire
Graham, Miller, Neandross,
Mullin & Roonan, L.L.C.
2350 Broadway
New York, New York  10024

REGER RIZZO KAVULICH & DARNALL LLP

_/s/ Louis J. Rizzo, Jr., Esquire_
Louis J. Rizzo, Jr., Esquire
Delaware State Bar I.D. No. 3374
1001 Jefferson Plaza, Suite 202
Wilmington, DE 19801
(302) 652-3611
Attorney for Defendant

Dated:  March 29, 2007

United Cocoa Summary of Loss to Property of Others

11/14/2006

| Item | Qty. | Unit | Unit Cost | Value | Loss | Remarks |
|---|---|---|---|---|---|---|
| Cocoa Beans in United Cocoa Roaster Condemned by FDA | | | | | | |
| Ocean Freight | 15 | MT | $ 1,418.00 | $ 21,270.00 | $ 21,270.00 | |
| Trucking | | | | | $ 1,231.53 | |
| Disposal | | | | | $ 608.32 | |
| | | | | | $ 733.82 | |
| **Subtotal Total Loss Product** | | | | | **$ 23,843.67** | |
| Reconditioning of Remaining Lot Wash, Dry & Rebag | 259,578 | lbs | $ 0.07 | $ 18,170.46 | $ 18,170.46 | |
| **Subtotal Reconditioning** | | | | | **$ 18,170.46** | |
| Subtotal Bean Loss | | | | | $ 42,014.13 | |
| Misc. Costs | | | | | $ 3,900.00 | |
| Transportation-To/From Camden | | | | | | |
| **Total** | | | | | **$ 45,914.13** | |

RDH,

## Hughes,Robert D

**From:**  Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:**  Monday, November 27, 2006 10:54 AM
**To:**  Hughes,Robert D
**Subject:** FW: Fire At United Cocoa Warehouse O/RF: 20032675 Transmar Without Prejudice

Dear Mr. Hughes,

This file has been reviewed by my Director from our office in London, where there is an established cocoa market and avaiable experts.  Please see copy draft report attached.

Please note that I can do no better than send you verbatim, the email of my Director, Mr. Jordan below.  This is sent on a without prejudice basis and of course our expert has not been able to inspect the cargo, but he has reviewed the facts and available documentation and the benefit of his experience has been made available to us.

On any view, given that the maximum return would have been a net $20,000, it seems that our insured was fully justified in following the course he did.  As a result of these 2 opinions in support of our case, the previously discussed "quick settlement" figures are withdrawn.  This matter will not settle for "nuisance value", but a fair reasonable offer may suffice.

Please seriously consider the attachments and confirm you will now agree to pay the reduced sum less uplift of $217,734.71 in full and final settlement of this matter.

Should payment not be forthcoming within 14 days, we will put this file into suit and as as you can see Mr. Jordan has sanctioned this action in his mail.  If we do so we reserve the right to claim the full amount due, plus interest and applicable costs.  This will mean you also incurring large defense costs yourself.

On the state of the available evidence, it looks like a good case on both laibility and evidence, to at least three of us, who have now looked at the file.

I look forward to hearing from you.

Best regards,

Don Soutar

---

**From:** Stuart Jordan
**Sent:** Friday, November 24, 2006 6:18 AM
**To:** Don Soutar
**Subject:** Fire At United Cocoa Warehouse O/RF: 20032675 Transmar

Don,

I have reviewed the file, in particular the question of whether the insured should have taken additional steps to mitigate his claim.  I have also sought the view of John Williamson a partner of the surveying firm E L Johnson's Sons & Mowat.  E L Johnson's are member of Federation of Cocoa Commerce and John is highly regarding for his experience and expertise in this field.  John also oversees the sale of large quantities of salvaged cocoa.

The claim appears to be in two parts; the beans that were damaged within the processing room where the fire broke out and which were subsequently condemned by the FDA and the beans (in bags) that were stored in the adjacent room and affected by water, smoke, soot and other debris.

Given the condemnation of the goods by the FDA, there does not appear to have been any possibility of mitigation in respect of the first part of the claim. These goods had a purchase value of $31,108.89. Disposal costs of $3,869.64 were incurred in respect of this portion of the cargo. Cargo insurers have paid $38,358.27 (purchase price x 110% + disposal costs). This element of the claim should be settled in full.

With regard to the second portion of the claim, 1710 bags / 113.0529 MT cocoa beans stored in the adjacent room, there are two factors which must be borne in mind when considering possible mitigation;

1) The beans in question were contaminated by smoke and soot. Whilst the water damage (mould) could have been relatively easily removed, smoke contamination is a different matter entirely as it effects the flavour of the cocoa bean. The effect of smoke on cocoa beans is well documented and will be readily confirmed by anyone with meaningful experience of this commodity. Please see John Williamson's comments for further information on this point.

2) The FDA insisted upon the approval of any proposed reconditioning plan. They refused to agree to the consignee's request that the bean be sold on an 'as is where is' basis or re-exported. There was no indication that re-export would be allowed even once the beans had been reconditioned. The insured was therefore facing the possibility of conducting a reconditioning exercise on beans that would remain unusable (due to the smoke contamination) and which could not be sold to another user due to an FDA order (the likely, possibly only, market for smoke damaged beans being Europe).

Salvage Sale have advised that they would typically see a return of 15% to 20% of market value when dealing with smoke contaminated cocoa. According to the ICCO web site (http://www.icco.org/prices/060131.htm), the daily market price for 31 January 2006 was $1,547.41 / MT. The average daily market price for December 2005 was $1,511.89 (68.86 cents per lb). A salvage return of 20% would therefore have realised a maximum figure in the region of $34,987.84 (113.0529 MT x $1,547.41). This figure does not take into account reconditioning costs.

John Williamson has provided some figures for the type of reconditioning plan likely to have been required to meet FDA approval. These can be summarised as follows;

Recondition Beans and Seek Export Sale in Europe
Cost Of Reconditioning $15 per bag + 1,710 new bags at $1.50 each

| | | |
|---|---|---|
| 1710 Bags reconditioned at $15 per bag | $ | 25,650.00 |
| 1710 New bags at $1.50 each | $ | 2,565.00 |
| | | |
| Anticipated loss of damaged cargo | $ | 31,878.26 |
| 20% or 342 bags / 22.25 Mt x $1,43.73 / MT (Average Purchase Price) | | |
| Anticipated destructions costs for 22.25 MT | $ | 4,000.00 |

1,710 Damaged Bags Reconditioned = 1368 Outwardly Sound Smoke Damaged Bags

| | | |
|---|---|---|
| Anticipated Transport Costs | $ | 20,000.00 |
| | | |
| Total Costs - Pre Salvage Sale | $ | 84,093.26 |

John Williamson has suggested that a net salvage recovery after deduction of the above costs + salvage commission (typically 3%), of around $20,000.00 may have been obtained in Europe. This would assume gross salvage proceeds of just over $100,000 - equivalent to salvage of around $1,150 per MT (80% of average purchase price - an extremely favourable return).

Given that the insured had no indication from the FDA that the reconditioned cargo would be released for re-exporting after reconditioning and given that even the most favourable predictions for salvage would return something in the region of $20,000, I think that it can be shown that the insured's decision to destroy the cargo

# E L JOHNSON'S SONS & MOWAT

BALFOUR HOUSE, 390 HIGH ROAD, ILFORD, ESSEX IG1 1TL ENGLAND
TEL: 020 8514 2456    FAX: 020 8478 5760    E-mail: surveys@elj.co.uk

## E-MAIL ATTACHMENT

TO:     CRAIG (UK) LTD                     YOUR REF:  TBA
Attn:   STUART JORDAN

FROM:   JOHN WILLIAMSON                    OUR REF:    JNW/AM/162733

DATE:   22nd November 2006

No of Sheets (Incl. this page) :    - 4 -

---

## WITHOUT PREJUDICE

Dear Sirs,

**Re:** **Fire at United Cocoa Processors Inc, Newark, DE, USA**
     **Cocoa Beans in Store for A/c Transmar Commodity Group Ltd, Morristown, NJ, USA**

We have now had the opportunity of reviewing the copy documentation and correspondence which was forwarded to us under cover of your email dated 10th November 2006.

It is evident that the following quantities were present in store at Unicontrol Cocoa Processors Inc at the time of the fire.

1,199 bags Ivory Coast origin Cocoa Beans
  290 bags Togo origin Cocoa Beans
  221 Bags Equador origin Cocoa Beans
1,710 in total

The first mentioned, Ivory Coast, had been found upon FDA sampling to have a mould level of 5.8% - therefore this Cocoa was not "in compliance" as per US FDA regulations.

The quantities of Togo and Equador Cocoa were found upon US FDA sampling to be "in compliance".

We would however comment that despite the findings and comments of US FDA as to the Ivory Coast, such a mould level is not detrimental, but other than to reduce the value of that specific quantity of Cocoa Beans.

Furthermore, the basis of sampling should be as per FCC and CMAA (i.e. Federation of Cocoa Commerce and Cocoa Merchants Association of America) standards taken from at least 30% of all bags in order to give a result which is acceptable to the trade. Random sampling does not do that and we cannot be sure that the US FDA sampling method was, in fact, correct for this commodity.

This fax message and any attachments are confidential. If you are not the intended recipient any use, disclosure or copying of this document is unauthorised. If you have received this document in error, or transmission has been incomplete or illegible, please notify us on the above telephone number immediately.

PARTNERS: K COUCH   J N WILLIAMSON   S PARRY

Notwithstanding the above, we have noted that the fire occurred on 2nd December 2005, as a result of which the subject quantity of Cocoa Beans in store were affected by varying types of damage:

1. Falling debris from the roof of the warehouse.
2. Falling water from the damaged roof of the warehouse (rainwater).
3. Extinguishing water via the roof due to fire-fighting operations.
4. Smoke (and possibly steam).
5. Soot particles.

We note that on the day following the fire, 3rd December 2005, tarpaulin sheets were placed over the quantities of Cocoa Beans which were in store and had become damaged.

We note that on 15th December 2005, at the time of the US FDA representatives' inspection various observations were made, notably that the damaged section of the roof had been closed in with "sheet tin". However, there was a "soot and dust like residue" over the tarpaulins which covered the stored product (of Cocoa Beans in bags) and there was dust, debris and soot covering all surfaces within the warehouse in addition to pools of standing water on the floor adjacent to and underneath the wooden framed pallets upon which were stacked Cocoa Beans in bags. A layer of black soot like residue from 1/16th to 1/8th of an inch thick covered the exposed floor area also. In view of sweeping operations which were being carried out by warehouse personnel, the soot particles became airborne and settled elsewhere, including on the Cocoa Beans.

Cocoa Beans

Cocoa Beans are an agricultural product which are, following harvesting of the pods and removal of the beans, subjected to a period of some 5 days of fermentation. During this period of fermentation the nature of the Cocoa Bean is created, including not only the external colour, but also the internal nature. A most important part of the Cocoa Bean is the flavour – the flavour is affected by matters such as moisture (which leads to mould development) and other taint. One of the most significant factors of taint is smoke. Cocoa Beans can radically absorb smoky taint due to their relatively high fat content. A part of the subsequent processing of the Cocoa Beans is to extract the fat – if tainted. This fat-containing product (i.e. either Cocoa Powder, Cocoa Liquor or Cocoa Butter) will be unacceptable for normal usage within the primary industry, namely chocolate manufacturing. However, it may have alternative uses, albeit at a lower value.

---

In our opinion, the placement of the Cocoa Beans under tarpaulin sheets for a period of 12 days, i.e. between the fire and the US FDA inspection would have meant that the sooty, smoky, damp conditions would have been retained under the tarpaulin sheet over and around the bags, and within any water underneath the pallet – this would have been ideal to have been absorbed by the Cocoa Beans themselves.

The various quantities were subsequently moved to the premises of Camden International Commodities Terminal at Camden, NJ, where they were received and stored for further consideration.

---

The option was given by US FDA to Transmar Commodity Group Ltd to either propose a reconditioning plan or to destroy the product. Transmar advised that their customers were not willing to receive any Cocoa Beans ex these lots and for their part Transmar therefore wished to offer the entire quantity for sale by auction (i.e. on an 'as is, where is' basis) to mitigate their loss. The US FDA did not permit this.

---

We are of the opinion that a reconditioning of the quantity of damaged bags would have entailed the following:-

1. To take each bag, examine externally.
2. Carefully open each bag and wherever wet or other obviously damaged areas were found -
3. To separate the Cocoa Beans from the wet/damaged areas from non-wet damaged areas.
4. To re-bag the non-damaged Cocoa Beans into clean bags.
5. To re-bag the wet damaged Cocoa Beans into clean bags.
6. To take an average sample of the Cocoa Beans from each of the resulting quantities of sound bags for consideration.

We consider, based upon our own experience of US FDA actions, that the quantities of damaged Cocoa Beans so segregated would have had to be surrendered for destruction. Whilst we are unable to be specific, we would assume that this quantity would represent some 20% of the total quantity of Cocoa Beans present.

The costs of such a re-conditioning operation are customarily in the region of USD 15 per bag, plus the cost of clean new bags at USD 1.50 bag. The costs which would therefore have been incurred in this operation would be as follows:-

        1,710 bags re-conditioned at USD 15 =  USD  25,650
        1,710 bags supplied at USD 1.50      = USD   2,565

                    Total:          USD  28,215

Taking an average value of USD 1,425 per m.t. this would equate to a loss of some 19.8 m.t. in addition to the quantity of Cocoa Beans which were considerably damaged and lost, i.e. 20% of 1,710 bags = 342 bags = 22.25 tonnes. Therefore, equivalent loss would be 42 m.t. plus the costs of destruction of the 22.25 m.t. which we would estimate at some USD 4,000.

The question then is, what value could have been realised for the resulting quantity of some 1368 bags, i.e. some 91 m.t. ?

We are aware that there would have been no normal market for this product given its most likely smoky taint, and which would undoubtedly have been to varying degrees throughout the re-bagged Cocoa. It is not possible to remove this taint by any form of aeration, and depending upon the degree, may or may not be possible to remove it from final products which are produced by way of "deodorisation".

Bearing in mind that there would therefore be no market within the Continental USA for such product, it would be required to be exported, most probably to Europe where facilities exist and buyers may be willing to take the considerable risk of using the Cocoa Beans by way of blending with other Cocoa Beans. The inherent risks in this operation to not need to be enlarged upon, simply a heavily smoke tainted quantity of Cocoa Beans when mixed with a perfectly sound quantity will lead to a prevailing smoky taint throughout the entire parcel and any products which are produced therefrom.

Accordingly, the residual value for the 91 m.t. would have been, in our opinion minimal, bearing in mind:

(a)     The costs associated with loading for shipment to Europe.
(b)     The costs of shipment to Europe.
(c)     The costs of receiving and storing in Europe.
(d)     The fact that normal storage could not be utilised due to the smoky taint and risk of contaminating other Cocoa Beans/product.
(e)     The risks as outlined above to the buyer.

Assuming that 15-20 tonnes would have been shipped to Europe per 40 ft. container, this would have required 5 containers at a freight cost of some USD 12,500 which together with associated handling costs would have resulted in total shipment costs of approximately USD 20,000, i.e. equivalent to a further loss of some 14 tonnes, based upon the above-mentioned average value of USD 1,425 per tonne.

Given the likely degree of smoke damage, based upon the information available to us, we would estimate from enquiries that a value of some USD 250 per tonne would have been realised nett of expenses.

On this basis, nett of storage expenses and sales expenses, it is most likely in our opinion that a nett recovery of USD 20,000 may have been possible – this would, of course, have been subject to US FDA approval of the reconditioning plan and authorisation for the export of the resulting quantity to proceed.

Yours faithfully,


E  L  Johnson's  Sons  &  Mowat

## Hughes,Robert D

| | |
|---|---|
| **From:** | Bill Comly [BComly@eastern-service.com] |
| **Sent:** | Thursday, November 09, 2006 8:39 AM |
| **To:** | Hughes,Robert D |
| **Subject:** | Cocoa Reconditioning |

Bob,

We talked this morning about the reconditioning of cocoa beans; the process and the cost. As I indicated, my information is probably six or seven years old, but probably still accurate. I have enclosed a rate schedule, while dated 1985, was still current at the end of 1990.

Cocoa beans are imported in fiber bags, natural or synthetic. Typical weight of bag contents is 145 to 155 lbs.

In a partial loss scenario where only some of the bags are affected, the bags can be sorted such that you identify the damaged bags. Costs for this range from $.75/bag to $1.50/bag. After sorting, the affected bags are place upon a table where the stained/affected areas are slit open and damaged contents skimmed out of the bag into a lined container. The sound contents are rebagged and at the end of the process, the skimmings are disposed of. Cost for the skimming process approximate $10 to $12/bag.

If the entire lot appears to be affected, the cocoa beans can be washed, dried and rebagged for approximately $0.07/lb.

Remember that there will be a weight loss after the completion of these processes. Please note that these costs do not include typical transportation and handling charges.

If I can be of any further assistance in this matter please contact me.

## *Bill Comly*

Eastern Service & Recovery Company
215-634-8590

2/13/2007

 **EASTERN SERVICE & RECOVERY CO.**

SERVING THE INSURANCE INDUSTRY

1001 FAIRVIEW STREET
CAMDEN, N. J. 08104
(215) 922-1985
(609) 541-4065

RATE SCHEDULE

Effective January 1, 1985

Reconditioning

BEANS

| | |
|---|---|
| Re-Bagging | - $5.00 / Bag |
| Skimming & Replacing Bag | - $10.50 / Bag |
| Screening & Blowing | - $0.035 / Lb. |
| Washing & Drying | - $0.07 / Lb. |

Bagged Cocoa Products

| | |
|---|---|
| Reconditioning Chocolate Liquor & Presscake | - $0.08 / Lb. |
| Kibbling Chocolate Liquor | - $0.10 / Lb. |

Boxed Cocoa Products

| | |
|---|---|
| Reconditioning Cocoa Butter & Chocolate Liquor (Includes scraping, new liners, cartons, etc.) | - $5.90 / Ctn. |

Storage

| | |
|---|---|
| Beans | - $0.25 / Bag |
| Product   (25 Kgs. or Less) | - $0.20 / Unit |

All rates include labor in and out, cartons, bags, stenciling, materials, etc.  Free storage is permitted for 30 days.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
USFDA
10 Waterview Blvd.
Parsippany, NJ 07054
Tel: (973) 526-6008
Fax: (973) 526-6069

# FAX Transmission

**Date:** 03/06/06

**To:** Dan McNamara, Transmar

**From:** Rich Manney, Compliance Officer, FDA

**Subject:** Cocoa beans in fire at United Cocoa, DE

**No. of Pages:** 1

Mr. McNamara:

I received your fax dated 03/03/06. In regards to why the product may not be re-exported under FD & C Act Section 801(e)(1):

Sub paragraph (A) "accords to the specifications of the foreign purchaser" – This sub-paragraph is interpreted as meaning that a product was manufactured or processed in accordance with a pre-determined foreign spec for a predetermined foreign buyer; not that a product is found adulterated under U.S. law and a willing foreign country/ purchaser is found subsequent to the adulteration occurring.

Further, sub paragraphs (A), (B), (C) are coupled with sub paragraph (D) (please note the Act specifies "and" before sup paragraph (D)). Therefore, sub-paragraph (D) "is not sold or offered for sale in domestic commerce" must also be met. Your product has been offered for sale. Courts have uniformly construed this section of the Act very broadly in the interest of consumer protection. Proof of actual sale is not an essential requirement for applying the provision. "Offered for sale" encompasses many transactions whereby the goods are stored, used, distributed or disposed of. It is the holding of the goods, not the selling, that precipitates the application of that section. Holding for sale can include storing pending further processing or disposition to consumers. All articles, single or compound, not intended for consumption by the producer, are designed for sale, and, because they are, it is of concern that they be lawful.

Once you decide if you intend to recondition or destroy the suspect product, please let me know, as we would need to either be informed as to the reconditioning plan or witness the destruction. If you have any other questions, please do not hesitate to contact me.

                                        Rich Manney

**NOTICE:** This document is intended for the use of the addressed party. It may contain information that is privileged, confidential or otherwise screened for disclosure under Federal law. If you are not the addressee, or an authorized deliverer to the addressee, you are hereby notified that any disclosure, copying or action based on this document is strictly prohibited. If you have received this document in error, please notify this office by telephone at the number provided above.

(B) The initial owner or consignee responsible for such imported article maintains records that identify the use of such imported article and upon request of the Secretary submits a report that provides an accounting of the exportation or the disposition of the imported article, including portions that have been destroyed, and the manner in which such person complied with the requirements of this paragraph; and

(C) any imported component, part, article, or accessory of a drug or device and any food additive, color additive, or dietary supplement not incorporated or further processed as described in subparagraph (A) is destroyed or exported by the owner or consignee.

(4) The importation into the United States of blood, blood components, source plasma, or source leukocytes or of a component, accessory, or part thereof is not permitted pursuant to paragraph (3) unless the importation complies with section 351(e) of the Public Health Service Act or the Secretary permits the importation under appropriate circumstances and conditions, as determined by the Secretary. The importation of tissue or a component or part of tissue is not permitted pursuant to paragraph (3) unless the importation complies with section 361 of the Public Health Service Act.

(e)(1) A food, drug, device, or cosmetic intended for export shall not be deemed to be adulterated or misbranded under this Act if it—

(A) accords to the specifications of the foreign purchaser,

(B) is not in conflict with the laws of the country to which it is intended for export,

(C) is labeled on the outside of the shipping package that it is intended for export, and

(D) is not sold or offered for sale in domestic commerce.

(2) Paragraph (1) does not apply to any device—

(A) which does not comply with an applicable requirement of section 514 or 515,

(B) which under section 520(g) is exempt from either such section, or

(C) which is a banned device under section 516,

unless, in addition to the requirements of paragraph (1), either (i) the Secretary has determined that the exportation of the device is not contrary to public health and safety and has the approval of the country to which it is intended for export or (ii) the device is eligible for export under section 802.

(3) A new animal drug that requires approval under section 512 shall not be exported pursuant to paragraph (1) if such drug has been banned in the United States.

(4)(A) Any person who exports a drug, animal drug, or device may request that the Secretary—

(i) certify in writing that the exported drug, animal drug, or device meets the requirements of paragraph (1) or section 802, or

(ii) certify in writing that the drug, animal drug, or device being exported meets the applicable requirements of this Act upon a showing that the drug or device meets the applicable requirements of this Act.

The Secretary shall issue such a certification within 20 days of the receipt of a request for such certification.

(B) If the Secretary issues a written export certification within the 20 days prescribed by subparagraph (A), a fee for such certification may be charged but shall not exceed $175 for each certification. Fees collected for a fiscal year pursuant to this subparagraph shall be credited to the appropriation account for salaries and expenses of the Food and Drug Administration and shall be available in accordance with appropriations Acts until expended without fiscal year limitation. Such fees shall be collected in each fiscal year in an amount equal to the amount specified in appropriations Acts for such fiscal year and shall only be collected and available for the costs of the Food and Drug Administration.

(f)(1) If a drug (other than insulin), an antibiotic drug, an animal drug, or a drug exported under section 802) being exported in accordance with subsection (e) is being exported to a country that has different requirements or conditions for the drug to be labeled in accordance with those requirements or conditions for use in the country to which such drug is being exported if it is also in labeled in accordance with the requirements of this Act.

(2) If, pursuant to paragraph (1), the labeling of an exported drug includes conditions for use that have not been approved under this Act, the labeling must state that such conditions for use have not been approved under this Act. A drug exported under section 802 is exempt from this section.

(g)(1) With respect to a prescription drug being imported or offered for import into the United States, the Secretary, in the case of an individual who is not in the business of such importation, may not send a warning notice to the individual unless the following conditions are met:

(A) The notice specifies, as applicable to the importation of the drug, that the Secretary has made a determination that—

(i) importation is in violation of section 801(a) because the drug is or appears to be adulterated, misbranded, or in violation of section 505;

(ii) importation is in violation of section 801(a) because the drug is or appears to be forbidden or restricted in sale in the country in which it was produced or from which it was exported;

(iii) importation is or appears to be in violation of section 801(d)(1); or

(iv) importation otherwise is or appears to be in violation of Federal law.

(B) This notice does not specify any provision described in subparagraph (A) that is not applicable to the importation of the drug.

(C) The notice states the reasons underlying such determination by the Secretary, including a brief explanation to the principal facts involved of the provision of law described in the subparagraph (A) that is the basis of the determination by the Secretary.

FEB. 10. 2006 4:22PM 873:AJG NY NY    TRANSMAR COMMODITY GROUP    NO. 0172    P. 2
02/10/2006 18:50    3 10025    UNITED C    @ 001/002
PAGE 02/02



### STATE OF DELAWARE
## OFFICE OF THE STATE FIRE MARSHAL

WILLARD F. PRESTON III
STATE FIRE MARSHAL

NEW CASTLE COUNTY
DIVISION

**DATE: January 9, 2006**

**TO: United Cocoa Processor, Inc.**

**ADDRESS: 701 Pencader Drive**
              **Newark, DE 19702**

### The following investigative information is provided for your use:

## STATEMENT OF VERIFICATION

**DATE & TIME OF INCIDENT: December 02, 2005 @12:35 - December 02, 2005 @12:35**

**DATE & TIME INCIDENT REPORTED: December 02, 2005 @12:35**

**LOCATION OF INCIDENT: 701 Pencader Drive Newark, De 19702**

**TYPE OF INCIDENT: Building Fire**

**NAME OF VICTIM: United Cocoa Processor**

**STATE FIRE MARSHAL'S INCIDENT #: 90-05023546**

**INVESTIGATING OFFICER: Krzysiak, J.**

**RESULTS OF INVESTIGATION: Electrical malfunction in a conveyor ignited material in the unit causing heavy damage to the processor and roof.**

**STATUS OF INVESTIGATION: Closed - Accidental**

*Richard R. Ward*

**Richard R. Ward**
**Assistant State Fire Marshal**

**RRW/mh**

.02/(FEB. 8.2006): 1:04PM73358AJG NY NY    TRANSMAR COMMODITY GROUP    NO. 0144    P. 4 03/003



# TRANSMAR COMMODITY GROUP LTD.

200 SOUTH STREET, 4TH FLOOR
MORRISTOWN, NJ 07960

**CONTRACT NO.: TL 005**
**DATE: April 5, 2005**

**WE CONFIRM:** Tolling agreement for cocoa beans into cocoa butter + 10/12% cocoa cake.

**QUANTITY:** Up to 1,600 m/t of cocoa beans per month

**DESCRIPTION:** Various grades of cocoa beans

**PRICE:** $290 per MT of bean conversion cost to butter/cake

**DELIVERY:** 1,400 MT April 2005 delivery and up to 1,600 MT per month to March 2006
In 30 day lot periods, starting on March 30, 2005

**WEIGHTS:** See below

**PAYMENT TERMS:** Immediate

**CONDITIONS:** 1) Butter to be delivered to Transmar, at UCP's plant, in liquid form. UCP will keep up to 400 MT of cake, per lot period, which will be priced as follows:

| Spot price | | Cake price of | |
|---|---|---|---|
| above $2,150 | | | $950 per MT |
| $1,900 to $2,150 | | | $900 per MT |
| $1,700 to $1,900 | | | $850 per MT |
| $1,500 to $1,700 | | | $800 per MT |
| $1,300 to $1,500 | | | $750 per MT |
| below $1,300 | | | $700 per MT |

2) Yields are expected to be consistent with traditional levels and ascertained in accordance with industry practices and standards. Yield disputes to be settled by mutually agreed independent analyst. 3) WEIGHTS (outgoing)- Butter (light and heavy): truck weights. Cake: UCP warehouse weights. WEIGHTS (ingoing beans)- Lyons warrant weights or light + heavy truck weights (especially in case of bulk delivery) or an independent supervised UCP weight on delivery at UCP or Lyons weights plus check weighing at UCP. 4) Brown Brothers Harriman to oversee the implementation of this tolling contract and mediate in case of disputes. 5) Transmar will have the option to renew agreement on monthly basis through December 2005 given written advise 10 calendar days prior to next processing period, assuming a mutual agreement to the cost of the cake based on a review of the performance of initial toll.

This contract is subject to the terms and conditions of Standard 1-A Contract of the Cocoa Merchants Association of America, Inc., and subject to any other conditions imposed by the United States Government. Any tariffs imposed by the United States Government are assumed and will be paid by the buyer.

Accepted:                                     Transmar Commodity Group Ltd.

Kindly sign and return the enclosed copy of this contract

Telephone: 973-359-4040 • Fax: 973-359-4058 • Email: transmarnj@aol.com

# TRANS-PORT MARINE SURVEYORS, INC.
Marine Cargo Surveyors-Consultants

P.O. Box 645 – Voorhees, New Jersey 08043 – (856) 751-5377 – Fax (856) 751-2387

| | |
|---|---|
| Date: | December 20, 2005 |
| To: | Transmar Commodity Group<br>Attn.: Mr. Sol Seltzer<br>Fax # (973) 359-4058 |
| Cc: | Fireman's Fund Ins. Co.<br>Atnn.: Mr. James Zrebiec<br>Fax # (212) 524-6805<br>Your ref.: 20032675 |
| From: | Saeed Esfahani<br>Our ref.: 05-3987 |
| Subject: | Status report |
| Re: | Warehouse Fire at United Cocoa Processing on December 2, 2005 |

Dear Mr. Seltzer,

The following is the status of the condition of the cargo in connection with the fire incident of December 2, 2005 at United Cocoa Processor, Inc.:

Except as noted below, we understand that all cargo of cocoa beans or processed material has been passed by FDA and was shipped to Lyons & Sons Warehouse for further storage and distribution.

−  Some 15 MT of cocoa beans in the processing room, which had been in three (3) roasters were condemned by the FDA and the Department of Heath and have been disposed of in way of dumping under FDA / DOH supervision.

−  Some 120 MT of cocoa beans that was stored in the storage room adjacent to the processing room is under FDA adulteration Act 4 as they have been exposed to conditions that may have adulterated the product, i.e., smoke, fire extinguishing agents and/or various contaminants from the roof.

The roof of the storage room was damaged during the fire incident and portion of the cargo was affected by wetting during fire fighting activity and/or melting snow on the roof that dripped onto the cargo.

Page 2

The above portion remains under strict FDA control unless a reconditioning plan is proposed and accepted by the NJ District office, compliance branch, 10 Waterview Blvd., Parsippany, NJ 07054.

Since United Cocoa Processor intends to repair the damaged roof in the storage room to resume their business, this portion of the cargo had to be transferred to another storage facility until its disposition is determined.

Arrangements were made by Transmar Commodity Group to transfer the subject 110 MT of cocoa beans in the storage room to Camden Int'l Warehouse (CICT), Gloucester, NJ for further storage & evaluation.

Transfer of the cargo was accomplished using six (6) trailers and under the supervision of FDA inspectors at both ends, i.e., at United Cocoa Processor and Camden Int'l warehouse. In other words, FDA inspectors supervised stuffing the trailers and sealing their doors at United Cocoa Processor and another FDA inspector witnessed breaking of the seals and was in constant attendance at Camden Int'l warehouse during stripping of the cargo.

We attended at Camden Int'l Warehouse together with FDA inspector, Judith Paterson to evaluate the condition of the cargo during stripping.

We jointly inspected the condition of the cargo as stowed on pallets, generally 25 bags per pallets, 5 tiers high, 5 to a tier. Therefore, our inspection was limited to the top and perimeter of the pallets without making removals.

**The condition of the cargo may be summarized as follows:**

- A total of 1,710 bags @ 69 Kg and 1 x 1 ton super sack were received at Camden Int'l Warehouse, i.e., 119 MT.

- The vast majority of the bags were covered with brownish color powdery substance ranging from light to heavy.

- The top tier bags in approximately 20% of the pallets showed signs of previous wetting manifesting as drip-down type wet stains and brown discoloration of the burlap bags. Other pallets also showed streaking type wetting stains on the perimeter. Less than 1% of the bags were still wet to the touch and/or heavily stained.

- There was no noticeable smoke odor.

- There was some minute amount of soot and/or foot step stains with soot on approx. 3% of the bags.

- During our inspection we obtained samples of burlap and beans as well as of the brown powdery substance on the bags for lab analysis.

Page 3

In short, the brown color powdery substance appeared to be widespread throughout the loads on top tier bags and the exposed sides of the bags in the perimeter.

As to the wetting, although there were some drip-down and wet stain streaking on some 10% of the bags stowed on top and/or perimeter of the bags, it did not appear significant and beans were free flowing in most cases. Caking of the beans within the wet bags appeared minimal.

As to the soot, the intensity was minimal and only to some 3% of the bags, some of which were in the form of foot prints only.

**Discussion**

In discussion with the FDA inspectors, they are of the opinion that this cargo was subjected to dual contamination, i.e., fire extinguishing agent as well as contaminated water / melting snow originating from the roof that carried foreign substances / debris. Further, they commented that since there were water puddles under the pallets in the storage room, the contaminated water had likely filtered through the bags thus contaminating the cocoa beans themselves.

**Recommendation:**

Based on the findings, we recommend the following steps and reconditioning plan:

– Submit sample of brown powdery substance to a qualified laboratory in order to establish its nature and toxicity, if any.

– Submit sample of the wet burlap and beans for lab analysis to determine any contamination and remedy to restore the condition.

– Draw a composite sample by professional sampler for grading. If grading passes, a sample lot should be considered for reconditioning by washing, drying and re-bagging.

If the FDA approves this plan for human consumption, the reconditioning will continue for the entire shipment. Alternative plan may have to be targeted for either animal consumption or other application for cosmetic use or export out of the country.

Finally, we would appreciate Transmar thoughts and comments to the above recommendation and any assistance they can provide to expedite this matter and to minimize the loss.

The above is written without prejudice or questions as to any liability.

Best regards,
Saeed Esfahani

Page 4



Shows brown color powdery substance



Shows brown color powdery substance

Page 5



Shows brown color powdery substance and wet stain top tier bags on pallets



wet stained / discolored bags on top tier on pallets

Page 6



Bags with some foot step type soot marks



Soot on bags

Page 7



Heavily wet stained bags



Heavily wet stained bags still wet to the touch

Page 8



General view of the cargo at Camden Int'l Warehouse



General view of the cargo in trailer on arrival at Camden Int'l warehouse



# TRANS-PORT MARINE SURVEYORS, INC.

Marine Cargo Surveyors-Consultants

P.O. Box 645 – Voorhees, New Jersey 08043 – (856) 751-5377 – Fax (856) 751-2387

| | |
|---|---|
| Date: | June 9, 2006 |
| Cc: | Fireman's Fund Ins. Co.<br>Attn.: Mr. James Zrebiec<br>Fax # (212) 524-6805<br>Your ref.: 20032675 |
| From: | Saeed Esfahani<br>Our ref.: 05-3987 |
| Subject: | Status report |
| Re: | Warehouse Fire at United Cocoa Processing on December 2, 2005 |

On April 28 and May 2, 2006, we periodically attended at Camden Int'l Warehouse (CICT) in order to witness destruction of some 113 tons of cargo, which had been stored in this warehouse since December 2005 as a result of warehouse fire on Dec. 2/05.

In attendance were:

Mr. Marcelo Mangalindan          FDA inspector
Mr. Steve Yeager:          Warehouse manager

The following quantities were sorted by label for verification prior to dumping:

| Label | # of bags |
|---|---|
| Cipex | 1199 |
| Togo | 290 |
| Ecuadorian | 221 |

Method of disposition:

Bags were stacked in dumpster and were sprayed with diluted bleach on each layer to make it unusable. The dumpsters were then hauled by the trucker, Franchi, to a landfill at Salem County Utility Authority for dumping.

Initially, CICT estimated that 225 bags will fill a dumpster, but this quantity was over estimated and only 165 bags filled the dumpster.

Page 2

<u>Cost of disposition:</u>

The total cost of disposition is $14,172.75. There are two parts to this invoice, i.e., charges by CICT and charges by the trucker, Franchi who hauled the dumpsters and dumped it in the landfill.

CICT has charged $2,240 for labor & equipment for loading the bags into dumpsters, which appears fair & reasonable.

The remaining charges of $11,932.75 are from the trucker, Franchi, involving 10 dumpsters. Reportedly, they charged $565 / per dumpster with a maximum of 4 tons per, plus $75.00 /MT per additional ton on the dumpster. Franchi's charges were not submitted separately and were included in CICT's invoice.

<u>Final claim statement:</u>

| <u>Description</u> | <u>Price</u> | <u>Comment</u> |
| --- | --- | --- |
| Purchase price of cocoa | Total price: $178,171.89<br><br>The above is for:<br><br>77.935 MT of Ivory Beans<br>15.249 MT of Ecuadorian Beans<br>19.869 MT of Togo Beans | Price breakdown to arrive at $178,171.89 not provided.<br><br>Documents reflects:<br>Ivory beans at $1460.00 /MT ex-warehouse in NY<br><br>Ecuadorian beans at $1375.10 / MT – FOB Ecuador<br><br>No documents found for the Togo beans<br><br>From correspondence in the file, the unit price for the Ivory Coast and Togo beans is $1,685/MT and for the Ecuadorian is $1,653/MT. However, calculation on this basis does not equal the claim amount. |
| Transportation from UCP to Camden | 1,950.00 | Appears in order |

Page 3

| Description | Price | Comment |
|---|---|---|
| Stripping / handling | 1,998.00 | Appears in order |
| Storage: | 2,660.48 | Appears in order |
| Cost to destroy cocoa | 14,172.75 | See above explanation |
| Total loss | **198,953.12** | |

The above is written without prejudice or questions as to any liability.

Best regards,
Saeed Esfahani

Trans-Port Marine Surveyors, Inc.

Attached, are 4 pictures dipicting loading of the dumpster and spraying them with bleach

Page 4



Preparing the shipment for destruction



Diluting the bleach for spraying on top of the bags

Page 5



Loading the bags in dumpster and spraying by bleach



Fully loaded dumpster

FEB. 6. 2006  2:13PM    AJG NY NY                                    NO. 0102   P.  14 02/18
01/27/2006  11:10    39...  ...0040              UNITED COCOA



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

<div align="right">
Food and Drug Administration
Wilmington Resident Post
920 King Street, Room 409
Wilmington, DE 19801
Telephone: (302) 573-6447
FAX: (302) 573-6398
</div>

January 11, 2006

Mr. Adriano de Silva
Director of Human Resources
United Cocoa Processor, Inc.
701 Pancader Drive
Newark, DE 19702-3311

Dear Mr. de Silva:

We enclose a copy of the Establishment Inspection Report (EIR) for the inspection conducted at your premises at Newark, DE on January 7, 2006 to January 12, 2006 by Investigators Stephaine C. Mangigian of the Food and Drug Administration (FDA). This procedure is applicable to EIRs for inspections completed on or after April 1, 1997. For those inspections completed prior to the above date, a copy of the EIR may still be made available through the Freedom of Information Act (FOIA).

The Agency is working to make its regulatory process and activities more transparent to regulated industry. Releasing the EIR to you is part of this effort. The copy being provided to you comprises the narrative portion of the report; it may reflect redactions made by the Agency in accordance with the FOIA and 21 CFR Part 20. This, however, does not preclude you from requesting and possibly obtaining additional information under FOIA.

If there is any question about the released information, feel free to contact me at the address indicated on the letterhead.

Sincerely,

Michael D. O'Meara
Supervisory Investigator

MDO/lcc

Enclosure: EIR,

.Establishment Inspection Report                          FEI:         3004333578
United Cocoa Processor, Inc.                             EI Start:      12/07/2005
Newark, DE 19702-3311                                    EI End:        12/12/2005

SUMMARY................................................................................................1
HISTORY.................................................................................................2
INTERSTATE COMMERCE/JURISDICTION.........................................2
INDIVIDUAL RESPONSIBILITY AND PERSONS INTERVIEWED............2
MANUFACTURING/DESIGN OPERATIONS...........................................2
MANUFACTURING CODES....................................................................2
COMPLAINTS..........................................................................................3
RECALL PROCEDURES..........................................................................3
REFUSALS...............................................................................................3
GENERAL DISCUSSION WITH MANAGEMENT.....................................3
ADDITIONAL INFORMATION................................................................3
EXHIBITS COLLECTED..........................................................................6
ATTACHMENTS.......................................................................................8

## SUMMARY

This directed inspection of a cocoa bean processor contract manufacturer was conducted in accordance with PHI DO FY 2006 work plan and in accordance with C.P. 7303.803, Domestic Food Safety Program. This inspection was initiated as a follow up to a fire that occurred at the firm on 12/2/05; under FACTS assignment #697411 and Operation ID #2648730.

The previous inspection dated 1/11, 12/05 was classified as ███.

The current inspection revealed the firm continues to be a cocoa bean processor contract manufacturer. The firm processes cocoa beans into cocoa cake, cocoa butter, cocoa liquor and cocoa powder. This inspection did not reveal any unsanitary conditions other than those associated with the fire. The firm was not issued a FDA-483, Inspectional Observations. On 12/12/05, close out meeting, two items were addressed concerned: 1) the disposition of finished product located in the production and 2) the final disposition of raw ingredients that were affected by the leak in the roof due to the fire. Mr. da Silva stated he would contact FDA for follow up information regarding these two items. No avian or rodent activity was noted.

Inspected firm:........... .......United Cocoa Processor, Inc.
Location:             701 Pencader Dr
                     Newark, DE 19702-3311
Phone:               302731-0825
FAX:                 (302)731-0825



**Establishment Inspection Report**                FEI:        3004333578
United Cocoa Processor, Inc.                        EI Start:   12/07/2005
Newark, DE  19702-3311                             EI End:     12/12/2005

| Mailing address: | 701 Pencader Dr |
| | Newark, DE  19702-3311 |

| Dates of inspection: | 12/7/2005, 12/12/2005 |
| Days in the facility: | 2 |
| Participants: | Stephanie C Mangigian, Investigator |

On 12/7/05, I displayed my credentials and issued a FDA Notice of Inspection to Adriano da Silva, Director of Human Resources and Operations. Mr. da Silva stated he was the most responsible person at the firm.

All FDA correspondence should be addressed to Mr. Adriano da Silva at the above address.

## HISTORY
According to Mr. da Silva, the history of the firm has not changed since the last inspection dated, 1/12/05.

## INTERSTATE COMMERCE/JURISDICTION
According to Mr. da Siva, all the cocoa beans used in manufacturing are received either directly from importers or by brokers who arranges the importing of cocoa beans. Mr. da Silva stated that all the cocoa beans are owned by customers. The firm contracts with these customers to manufacture the cocoa beans into various intermediary ingredients. The firm processes cocoa beans into cocoa cake, cocoa butter, cocoa liquor and cocoa powder.

## INDIVIDUAL RESPONSIBILITY AND PERSONS INTERVIEWED
Mr. da Silva stated the only change in the firm responsibility personnel is Mr. Peter Liu, President and Ian Liu, Accounting and Controller are no longer working at United Cocoa Processors Inc., (UPC). Paul Liu and Janet Liu have assumed the responsibilities until the positions are filled. Information regarding the firm manufacturing operations and the fire incident was obtained from Mr. da Silva.

## MANUFACTURING/DESIGN OPERATIONS
The firm's manufacturing operations had ceased since the fire dated on 12/2/05. The firm is in the process of waiting for structural repair of the damaged areas before resuming manufacturing operations.

## MANUFACTURING CODES
According to Mr. da Silva, the firm continues to use the same specific for each client (refer to Exhibit#1). For example: Lot: TRC 161~ TR (Transmar Commodity Group) C= Cocoa cake and 161=sack number.

FEB. 6. 2006  2:14PM   AJG NY NY                    UNITED_COCOA            NO. 0102  P. 17    05/18



**Establishment Inspection Report**          FEI:        3004333578
United Cocoa Processor, Inc.                  EI Start:   12/07/2005
Newark, DE  19702-3311                        EI End:     12/12/2005

## COMPLAINTS
According to Mr. da Silva, the firm had no complaints since the last inspection.

## RECALL PROCEDURES
The firm has a recall procedure but, has not had any recalls.

## REFUSALS
There were no refusals encountered during this inspection.

## GENERAL DISCUSSION WITH MANAGEMENT
At the close of the inspection the only discussion addressed was regarding the final disposition of cocoa powder and cocoa cake that was located in the production room at the time of the fire.

Exhibit# 2 is a photograph of the finished product in the production room. Mr. da Silva stated that the firm placed tarp to cover the finished product as seen in Exhibit #3, because it was in the water line of a leak from the roof. Exhibit #4 is a photograph of the blue container that was collecting water from a leak in the roof. Exhibit#5 is a photograph of the water that was on the tarp.

According to Mr. da Silva there was no water leaking on the upper portion of the tarp which covered the finished product. During the inspection I examined the top portion of the tarp and did not see any evidence of water only dust apparently from the cocoa powder.

According to Mr. da Silva, the firm will contact FDA regarding the final disposition of the finished product.

## ADDITIONAL INFORMATION
This directed inspection was to perform a limited inspection because of a fire that occurred at the firm. The information regarding the fire and product information was provided by Mr. Adriano da Silva, Director of Human Resources and Operations at United Cocoa Processor, Inc.

According to Mr. da Silva, a fire started in the Roaster Room approximately 12:00-12:30 PM. The root cause analysis, exact location and damage information has yet to be confirmed by the insurance investigation. Apparently, the roaster stack (exhaust line) caught on fire and the fire spread to the exhaust shaft to the roof. Mr. da Silva provided to me an inventory of the finished product in the production room refer to Exhibit#6, page 1 is a list of cocoa cake and page 2 is a list of the subsequent lot numbers.

The fire spread from the exhaust shafts that lead to the roof. The wind direction at that time of the fire was in the direction of the "Cocoa Bean Room." The membrane on the roof over the "Cocoa Bean Room" was affected.

Exhibits # 7a, b, c, d, are several photographs of different views of the ceiling in the Cocoa Bean Room.

According to Mr. da Silva, there was snow on the roof which melted into the Cocoa Bean Room and onto the cocoa beans. Exhibits #8(a)-(k) are photographs consisting of stacks of burlap bags containing cocoa beans that were in various areas of the cocoa bean room during my inspection. During my inspection of the cocoa bean room, I observed water dripping through the open areas in the ceiling and noted puddles of water on the floor. There was scattered debris on the floor and in

FEB. 6. 2006  2:14PM    AJG NY NY              UNITED COCOA           NO. 0102   P.  18
01/27/2006  11:16    302▉▉6625                                                              P▉▉▉ 05/18

| Establishment Inspection Report | FEI: | 3004333578 |
|---|---|---|
| United Cocoa Processor, Inc. | EI Start: | 12/07/2005 |
| Newark, DE 19702-3311 | EI End: | 12/12/2005 |

containers as seen in Exhibit #9.  I inspected blue, clear plastic and brown tarp covering the cocoa beans and found evidence of water.

When I entered the cocoa bean room, I found the loading dock door open and inquired if this door was open at the time of the fire. Mr. da Silva stated that he was not sure. The loading dock door opened to a trailer of cocoa beans did not appear through my visual examine to be affected by the water damage or fire.  Exhibit #10 is a photograph of the contents that were in the trailer which was located adjacent to the cocoa bean room on the loading dock.  I photographed labeling from the inside of the trailer. I found commingled lots of cocoa beans refer to one set of labeling in Exhibit #11 (a) and another set of labeling in Exhibit#11(b).  A seen in the floorplan Exhibit #12, the fire started in the roaster room and was confined to this area.  However the roof was damaged and therefore affected the product in the cocoa bean room.

Mr. da Silva provided to me interstate documentation of raw ingredients (cocoa beans) that were stored in the trailers located outside on the loading dock at the time of the fire.
Exhibit#15 is a copy of trailer # 728, Bill of Landing No. 38968 consisting of 308 bags of cocoa beans
Exhibit#16 is a copy of trailer#727 Delivery Order No. 02840 consisting of 363 bags of cocoa beans
Exhibit#17 is a copy of trailer # 726 Delivery No. 02840 consisting of 363 bags of cocoa beans that was located in the trailers located at the dock doors at the time of the fire and will be returned to their customer Transmar Commodity Group.

Mr. daSilva and I walked through the building to the warehouse where I found a large amount of stored finished product (refer to photograph in Exhibit# 13 (a) and (b)).  The warehouse did not appear to be affected by the fire.
Exhibit #12 is a floor plan Mr. da Silva provided to me.  Mr. da Silva annotated the areas where finished product is stored and the affected areas after the fire. Mr. da Silva stated there was approximately 1000 ton of finished product in the warehouse. I asked if the firm distributed any product since the fire 12/2/05.  Mr da Silva stated the firm shipped to two customers in Wisconsin and Pennsylvania. Mr. da Silva stated on 12/2/05, after the fire, Dr. Llewellyn, from the Delaware Health Department visited the firm. According to Mr. da Silva, Dr. Llewellyn stated the finished product stored in the warehouse as seen in Exhibit #13(a) and (b), was "okay to ship."

During the inspection I collected the following documentation:
Exhibit#18 a copy of a current list of inventory stock which is located in the Warehouse and Shipping Room that the firm manufactured, stored and distributed during the period after 12/2/05: this consists of Lot's 185, 188, 192, 202, 211, 217, 258, 259, 261, 262, and 263 of cocoa cake. Lot's 201, 230, 260, 264 consists of cocoa powder.  Lot's 274-293, 308-329, 273, 294-307, 330-339 consists of cocoa cake.-192 and 202 through 's from 339 of cocoa cake; Lot's H179-H182, H69,H66, H67, H55, H59, H68, Pare Kraft, IDC O, RC Cake UCP, ADM#15, BD&F Man#61 and #62, M511/512, IDC#' 24, 25, 10, 11.

FEB. 6. 2006  2:14PM    AJG NY NY                    UNITED COCOA                    NO. 0102    P. 19

**Establishment Inspection Report**          FEI:      3004353578
United Cocoa Processor, Inc.                 EI Start:  12/07/2005
Newark, DE  19702-3311                       EI End:    12/12/2005

I requested and received interstate documents for Liquid Cocoa Butter which was shipped to Hershey, PA (Exhibit #19) along with interstate documents for Chocolate Liquor shipped to Milwaukee, WI (Exhibit #20).
I requested and received copies of the Driver Delivery Order and P.O.D., Diamond Freight Distribution Co., Inc. for products shipped to PA (liquid cocoa butter) and WI (chocolate liquor)(refer to Exhibit#21, pgs. 1-9).

Mr. da Silva and I walked through an open area into an adjacent room which Mr. da Silva called the shipping room as seen in Exhibit #12 floor plan. The finished product located in this area did not appear to be affected by the fire (refer to Exhibit #14).

The shipping area leads into the mechanical repair area and into the production area. The wall of the production area is shared with the cocoa bean room. I did not visualize any fire damage to the wall however; the ceiling near the wall was leaking water. There was a blue container collecting the water (refer to Exhibit# 4). The finished product located in this production room (as annotated in Exhibit #12 floor plan and seen in Exhibit#2 and 3) are questionable as far as if the product was damaged by water or smoke. I did not visualize water on the finished product containers, only on the tarp that is seen in Exhibit#5. The containers as far as I could review were intact with no apparent openings or container damage. Mr. da Silva stated this finished product has yet to be determined its final disposition because the firm needs to perform a quality control on each lot. I collected a representative interstate documentation (Exhibit#22 (pgs. 1, 2) BILL OF LANDING No. 38644 for Lot# 286 of cocoa beans originating from Ivory Coast used to manufacture cocoa powder and cocoa cake that was stored in production room during the time of the fire.

<u>Additional documentation obtained during the inspection</u>
The following interstate documents relate to the raw ingredients that were located in "Cocoa Bean Room" during the time of the fire:
Exhibit#23 is a copy of Bill of Landing#187201, Transmar Commodity Group for 290 bags of cocoa beans weight 44950 kg. Trailer #717.
Exhibit#24 is a copy of Bill of Landing No. 38961, American Warehouse of New York, Transmar Commodity Group, quantity 308 bags of cocoa from Ivory Coast Trailer #716.
Exhibit#25 is a copy of Bill of Landing No. 38957, American Warehousing of New York, Transmar Commodity 308 bags of cocoa from Ivory Coast Trailer #713.
Exhibit#26 is a copy of Delivery Order#02840, Transmar Commodity Group, Ltd., 362 bags Trailer #725.
Exhibit#27 is a copy of Bill of Landing No.38964, American Warehousing of New York, Inc., Transmar Commodity Group 308 bags of cocoa from Ivory Coast Trailer #724.
Exhibit#28 is a copy of Bill of Landing No. 38962, American Warehousing of New York, Inc., 308 bags of cocoa, Transmar Commodity Group, from the Ivory Coast Trailer # 718.



**Establishment Inspection Report**                    FEI:        3004333578
United Cocoa Processor, Inc.                           EI Start:    12/07/2005
Newark, DE 19702-3311                                  EI End:      12/12/2005

An Affidavit (Attachment FDA Form 463a) was written explaining the fire which happened on 12/2/05 along with:
*Current inventory of finished product that was located in the warehouse, shipment room and production rooms; *I/S documentation of finished product sent to Milwaukee, WI and Hershey PA after 12/2/05; *exemplary I/S documentation of the inventory list of finished product located in production room that the firm has not determined the final disposition; *interstate shipment (I/S) documentation of product that was located in the "Cocoa Bean Room" where the snow melted on the roof; and *I/S documentation of raw ingredients that were stored in the trailers that were located on the loading docks.
Correction for FDA 463a Affidavit page 2, #8 stating "... The following interstate documents relate to the raw ingredients that will be returned to customer, Transmar Commodity Group that was located in "Cocoa Room..." should state "Cocoa Bean Room."

On 12/12/05, Mr. da Silva stated the firm was contacted by their customer Transmar Commodity Group regarding the disposition of the raw ingredients that were affected by the melted snow in the cocoa bean room. Mr. da Silva stated Transmar Commodity Group will ship all affected raw ingredients that were in the cocoa bean room and transport them out of UCP facility. Mr. da Silva did not have knowledge of the date or location where the product will be shipped to or when this transaction where this will be taking place. I requested that as soon as he has knowledge to please contact me at the FDA Wilmington, DE Resident Post office upon receipt of instructions and he agreed.
Additional Photographs:
Exhibit # 28 is a photograph of roster sack exhaust line
Exhibit # 29 is a photograph of the opposite side of the roaster stack seen in Exhibit #28
Exhibit # 30 is a photograph of two additional lines which connect to the roaster

## EXHIBITS COLLECTED
1. Firm's example of manufacturing codes
2. Photograph of the finished product in the production room.  3. Photograph of tarp covering finished
4. Photograph of the blue container that was collecting water from a leak in the roof
5. Photograph of the water that was on the brown tarp
6. Page 1 is a list of cocoa cake; Page 2 is a list of the subsequent lot numbers.
7. (a-d) are several photographs of different views of the ceiling in the Cocoa Bean Room. According to Mr. da Silva, there was snow on the roof which melted into the Cocoa Bean Room and onto the cocoa beans
8. (a-k) are photographs consisting of stacks of burlap bags containing cocoa beans that were in various areas of the cocoa bean
9. Debris on the floor and in containers
10. Photograph of the contents that were in the trailer which was located adjacent to the cocoa bean room on the loading dock. .

| | |
|---|---|
| **Establishment Inspection Report** | FEI: 3004333578 |
| United Cocoa Processor, Inc. | EI Start: 12/07/2005 |
| Newark, DE 19702-3311 | EI End: 12/12/2005 |

11. (a) is a photograph of an exemplary labeling on cocoa beans that were stored in the trailer that was on the loading dock; (b) is a photograph of an exemplary amount of finished product that was stored in the warehouse.

12. Firm's floor plan; Mr. da Silva annotated the areas where finished product is stored and the affected areas after the fire

13. (a) and (b) finished product located in the shipping area

14. However, the product located in the production room (as annotated in Exhibit #12 floor plan and seen in Exhibit#2) have yet to be determined its final disposition.

15. is a copy of trailer # 728, Bill of Landing No. 38968 consisting of 308 bags of cocoa beans

16. is a copy of trailer#727 Delivery Order No. 02840 consisting of 363 bags of cocoa beans

17. is a copy of trailer # 726 Delivery No. 02840 consisting of 363 bags of cocoa beans that was located in the trailers located at the dock doors at the time of the fire

18. a copy of a current list of inventory stock which is located in the Warehouse and Shipping Room; this consists of Lot's 185, 188, 192, 202, 211, 217, 258, 259, 261, 262, and 263 of cocoa cake. Lot's 201, 230, 260, 264 consists of cocoa powder. Lot's 274-293, 308-329, 273, 294-307, 330-339 consists of cocoa cake.-192 and 202 through 's from 185 through 339 of cocoa cake; Lot's H179-H182, H69,H66, H67, H55, H59, H68, Pare Kraft, IDC O, RC Cake UCP, ADM#15, BD&F Man#61 and #62, M511/512, IDC#' 24, 25, 10, 11.

19. a copy of BILL OF LANDING dated 12/05/2005 documenting shipment of United Cocoa Processors, Inc. to ADM Cocoa Division Chocolate Plant located in Milwaukee, WI Ivory Coast Chocolate Liquor block melted product # 111905, net weight 47760 lbs.

20. a copy of a current list of inventory stock which is located in the Warehouse and Shipping Room

21. Pages. 1-9 are copies of the Driver Delivery Order and P.O.D., Diamond Freight Distribution Co., Inc. documents for Lot's TRC 223, TRC 225 TRC 226, TRC 227, TRC 231, TRC 231, TRC 258, TRC 259, TRC 261 and TRC 262.

22. a copy of a representative BILL OF LANDING No. 38644, American Warehousing of New York, Delivery Order from Transmar Commodity Group; Page 2 has a Bill of Landing # 67227, but, Mr. da Silva stated this was together on Trailer 620.

23. a copy of Bill of Landing#187201, Transmar Commodity Group for 290 bags of cocoa beans weight 44950 kg. Trailer #717.

24. a copy of Bill of Landing No. 38961, American Warehouse of New York, Transmar Commodity Group, quantity 308 bags of cocoa from Ivory Coast Trailer #716.

25. a copy of Bill of Landing No. 38957, American Warehousing of New York, Transmar Commodity 308 bags of cocoa from Ivory Coast Trailer #713.

26. a copy of Delivery Order#02840, Transmar Commodity Group, Ltd., 362 bags Trailer #725.

27. a copy of Bill of Landing No.38964, American Warehousing of New York, Inc., Transmar Commodity Group 308 bags of cocoa from Ivory Coast Trailer #724

28. a copy of Bill of Landing No. 38962, American Warehousing of New York, Inc., 308 bags of cocoa, Transmar Commodity Group, from the Ivory Coast Trailer # 718.

29. is a photograph of roster sack exhaust line



**Establishment Inspection Report**                    FEI:        3004333578
United Cocoa Processor, Inc.                           EI Start:   12/07/2005
Newark, DE  19702-3311                                 EI End:     12/12/2005

30. Is a photograph of the opposite side of the roaster stack seen in Exhibit #29
31. Is a photograph of two additional lines which connect to the roaster


**ATTACHMENTS**
FDA 482, Notice of Inspection, issued to Mr. Adriano da Silva
FDA 463a, Affidavit, signed by Mr. Adriano da Silva
FDA 525 with photo negatives and digital disk


*Stephanie C Mangigian*
Stephanie C Mangigian, Investigator

Page 8 of 8

FEB. 6. 2006  2:14PM    AJG NY NY        UNITED COCOA        NO. 0102  P. 23



TRANSMAR TOLLING - Incomming Beans
TOLLING # 12                                    NOVEMBER 05

| | Date | TR # | Trucking | Trailer # | CROP | Bags | USP Net weight (Lbs) | USP Net weight (Kg) | DD # |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 11/01/2005 | 656 | P III | 502 | IC | 302 | 41,724 | 18,926 | 2735 |
| 2 | 11/01/2005 | 655 | P III | 3828 | IC | 302 | 42,548 | 19,433 | 2750 |
| 3 | 11/01/2005 | 657 | P III | 4178 | IC | 302 | 41,729 | 18,928 | 2730 |
| 4 | 11/01/2005 | 658 | P III | 8188 | IC | 308 | 42,845 | 19,341 | 2732 |
| 5 | 11/02/2005 | 659 | P III | 4087 | IC | 308 | 42,932 | 19,474 | 2742 |
| 6 | 11/02/2005 | 660 | P III | 4277 | IC | 308 | 43,116 | 19,558 | 3743 |
| 7 | 11/02/2005 | 661 | P III | 502 | IC | 309 | 42,991 | 19,591 | 2742 |
| 8 | 11/03/2005 | 662 | Continental | 973 | IC | 300 | 39,008 | 17,736 | 2741 |
| 9 | 11/03/2005 | 663 | P III | 8200 | IC | 303 | 42,941 | 19,478 | 3743 |
| 10 | 11/04/2005 | 664 | Continental | 502 | ML | 300 | 38,476 | 17,454 | 2721 |
| 11 | 11/04/2005 | 665 | P III | 4277 | IC | 308 | 43,080 | 19,641 | 2780 |
| 12 | 11/04/2005 | 666 | P III | 128 | IC | 308 | 43,230 | 19,830 | 2780 |
| 13 | 11/04/2005 | 667 | P III | 8309 | IC | 308 | 42,581 | 19,306 | 2757 |
| 14 | 11/05/2005 | 668 | Continental | 1467 | IC | 300 | 38,253 | 17,352 | 2741 |
| 15 | 11/05/2005 | 669 | P III | 502 | IC | 308 | 43,304 | 19,915 | 2757 |
| 16 | 11/08/2005 | 670 | Champion | CMAU 4516330 | EC | 382 | 54,639 | 24,784 | 2749 |
| 17 | 11/08/2005 | 671 | Continental | 4906 | ML | 300 | 39,333 | 17,836 | 2741 |
| 18 | 11/08/2005 | 672 | P III | 8154 | IC | 308 | 42,812 | 19,419 | 2737 |
| 19 | 11/08/2005 | 673 | P III | 8581 | IC | 309 | 42,687 | 19,387 | 2765 |
| 20 | 11/09/2005 | 674 | P III | 3800 | IC | 308 | 43,044 | 19,525 | 2765 |
| 21 | 11/10/2005 | 675 | P III | 4277 | IC | 303 | 42,562 | 19,300 | 2777 |
| 22 | 11/10/2005 | 676 | P III | 8154 | IC | 308 | 42,600 | 19,493 | 2777 |
| 23 | 11/10/2005 | 677 | P III | 2600 | IC | 355 | 42,862 | 19,850 | 2777 |
| 24 | 11/11/2005 | 678 | Continental | 4906 | ML | 303 | 38,846 | 17,666 | 2741 |
| 25 | 11/11/2005 | 679 | Continental | 973 | ML | 353 | 38,734 | 17,570 | 2741 |
| 26 | 11/11/2005 | 680 | P III | 4277 | IC | 308 | 42,101 | 19,097 | 2793 |
| 27 | 11/11/2005 | 681 | P III | 3601 | IC | 308 | 41,017 | 18,015 | 2703 |
| 28 | 11/14/2005 | 682 | P III | 502 | IC | 308 | 42,423 | 19,243 | 2793 |
| 29 | 11/14/2005 | 683 | P III | 8582 | IC | 305 | 43,041 | 18,823 | 2788 |
| 30 | 11/14/2005 | 684 | P III | 9509 | IC | 308 | 42,829 | 19,381 | 2708 |
| 31 | 11/14/2005 | 685 | P III | 502 | IC | 308 | 41,884 | 18,903 | 2765 |
| 32 | 11/15/2005 | 686 | P III | 8154 | IC | 308 | 42,318 | 19,280 | 2801 |
| 33 | 11/15/2005 | 687 | P III | 8501 | IC | 308 | 42,371 | 19,219 | 2801 |
| 34 | 11/15/2005 | 688 | P III | 9509 | TOGO | 255 | 43,585 | 19,766 | 2764 |
| 35 | 11/16/2005 | 689 | P III | 4277 | IC | 308 | 42,637 | 19,340 | 2801 |
| 36 | 11/16/2005 | 690 | P III | 8154 | IC | 308 | 43,115 | 19,567 | 2801 |
| 37 | 11/16/2005 | 691 | P III | 3601 | IC | 308 | 42,283 | 19,003 | 2802 |
| 38 | 11/16/2005 | 692 | P III | 8588 | TOGO | 260 | 44,066 | 19,991 | 2802 |
| 39 | 11/16/2005 | 693 | P III | 4277 | IC | 308 | 42,635 | 19,430 | 2803 |
| 40 | 11/17/2005 | 694 | P III | 8581 | IC | 308 | 42,379 | 19,223 | 2803 |
| 41 | 11/17/2005 | 695 | P III | 2806 | IC | 308 | 42,585 | 19,317 | 2805 |
| 42 | 11/17/2005 | 696 | P III | 8154 | TOGO | 260 | 43,286 | 19,629 | 2805 |
| 43 | 11/17/2005 | 697 | P III 2 | 9509 | IC | 308 | 42,668 | 19,353 | 2805 |
| 44 | 11/18/2005 | 698 | P III | 8501 | IC | 308 | 42,318 | 19,148 | 2807 |
| 45 | 11/18/2005 | 699 | Champion | GLDU 3418870 | EC | 382 | 53,883 | 24,441 | 2808 |
| 46 | 11/18/2005 | 700 | P III | 4277 | TOGO | 296 | 43,774 | 19,675 | 2806 |
| 47 | 11/18/2005 | 701 | P III | 502 | IC | 308 | 42,648 | 19,361 | 2807 |
| 48 | 11/18/2005 | 702 | Champion | SUDU 6466461 | EC | 392 | 53,945 | 24,467 | 2807 |
| 49 | 11/21/2005 | 703 | P III | 8154 | IC | 308 | 41,644 | 18,889 | 2807 |
| 50 | 11/21/2005 | 704 | P III | 2806 | IC | 308 | 42,958 | 19,490 | 2016 |
| 51 | 11/21/2005 | 705 | P III | 4391 | IC | 308 | 42,770 | 19,400 | 2816 |
| 52 | 11/21/2005 | 706 | P III | 8207 | TOGO | 292 | 42,879 | 19,350 | 2800 |
| 53 | 11/22/2005 | 707 | P III | 3413 | IC | 305 | 41,087 | 19,045 | 2819 |
| 54 | 11/22/2005 | 708 | P III | 8154 | IC | 308 | 42,020 | 19,060 | 2819 |
| 55 | 11/22/2005 | 709 | P III | 4277 | IC | 308 | 43,081 | 19,946 | 2819 |
| 56 | 11/22/2005 | 710 | P III | 128 | TOGO | 292 | 43,544 | 19,761 | 2809 |
| 57 | 11/22/2005 | 711 | P III | 3413 | IC | 308 | 45,943 | 18,973 | 2820 |
| 58 | 11/23/2005 | 712 | P III | 4277 | IC | 308 | 42,378 | 19,322 | 2824 |
| 59 | 11/23/2005 | 713 | P III | 8207 | IC | 308 | | | 2824 |
| 60 | 11/23/2005 | 714 | P III | 2418 | TOGO | 292 | 43,903 | 19,914 | 2800 |
| 61 | 11/23/2005 | 715 | P III | 128 | IC | 308 | 42,432 | 19,347 | 2824 |
| 62 | 11/23/2005 | 716 | P III | 3413 | IC | 22 | 2,060 | | 2825 |
| 63 | 11/23/2005 | 717 | S III | 2806 | TOGO | | | | 2800 |
| 64 | 11/23/2005 | 718 | P III | 8164 | IC | | | | 2825 |
| 65 | 11/28/2005 | 719 | Champion | FSCU 4072698 | EC Nibs | | | 0 | 2825 |
| 66 | 11/28/2005 | 720 | Champion | CMAU 4038581 | EC Nibs | | | 0 | 2830 |
| 67 | 11/28/2005 | 721 | Champion | CMGU 4061015 | EC | 382 | 53,910 | 24,462 | 2840 |
| 68 | 12/02/2005 | 722 | Champion | CAXU 4611857 | EC | 141 | | 8,884 | 2840 |
| 69 | 12/02/2005 | 723 | Champion | GLDU 4673247 | EC | | | 0 | 2845 |
| 70 | 12/02/2005 | 722 | Champion | GLDU 4293978 | EC | | | 0 | 2845 |
| 71 | | | | | | | | | |
| 72 | | | | | | | | | |
| 73 | | | | | | | | | |
| 74 | | | | | | | | | |
| 75 | | | | | | | | | |
| 76 | | | | | | | | | |

| | | Total Bags | 19918 | | |
|---|---|---|---|---|---|
| | | Total unloaded weight | | 2,624,902 | 1,201,635 |

FEB. 6. 2006 2:15PM AJG NY NY NO. 0102 P. 24

# FiMAT

A SOCIETE GENERALE BUSINESS

Friday **COCOA MARKET REPORT** December 2, 2005

| LONDON CLOSE | | | HI | LOW | OPEN INTEREST | | LDN VOLUME | VALUE DATE | GBP/USD 1.7313 | ARB USD | ARB STG | NEW YORK CLOSE | | | HI | LOW | OPEN INTEREST | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dec05 | 861 | -3 | 872 | 853 | 26,362 | -1,466 | 3085 | 12/21/05 | 1.7311 | 17 | 10 | Z | 1473 | 13 | 1,474 | 1,460 | 1,197 | -1 |
| Mch06 | 890 | 1 | 902 | 881 | 67,871 | -1,415 | 7357 | 03/15/06 | 1.7310 | 63 | 36 | H | 1478* | 13 | 1,484 | 1,460 | 56,979 | -1,427 |
| May06 | 901 | 1 | 910 | 894 | 21,021 | 793 | 1757 | 05/17/06 | 1.7318 | 62 | 36 | K | 1498 | 14 | 1,500 | 1,479 | 13,823 | 212 |
| Jul06 | 915 | 1 | 921 | 913 | 27,605 | 88 | 127 | 07/19/06 | 1.7329 | 68 | 39 | N | 1518 | 15 | 1,525 | 1,502 | 11,741 | 4 |
| Sep06 | 927 | 1 | 932 | 918 | 14,600 | 389 | 295 | 09/20/06 | 1.7342 | 71 | 41 | U | 1537 | 13 | 1,540 | 1,520 | 11,389 | 116 |
| Dec06 | 938 | 1 | 941 | 928 | 18,262 | 398 | 679 | 12/20/06 | 1.7357 | 62 | 36 | Z | 1566 | 13 | 1,563 | 1,548 | 10,163 | 16 |
| Mch07 | 947 | | 952 | 940 | 4,378 | 288 | 491 | 03/21/07 | 1.7371 | 55 | 32 | H | 1590 | 13 | 1,589 | 1,570 | 11,226 | 5 |
| May07 | 958 | -1 | | | 346 | | | 05/16/07 | 1.7377 | 54 | 31 | K | 1611 | 14 | | | 1,735 | 25 |
| Jul07 | 968 | -1 | | | 39 | | | 07/18/07 | 1.7383 | 52 | 30 | N | 1631 | 15 | | | 298 | |
| Sep07 | 978 | -1 | | | 15 | | | 09/19/07 | 1.7389 | | | U | 1649 | 13 | | | 3,600 | |
| | | | | | 180,499 | -925 | 14591 | | | | | | | | | | 122,151 | -1,050 |

| LDN VOLUMES | |
|---|---|
| AM: | 5300 |
| Final: | 14591 |
| Sprds: | 3807 |
| AA'S: | 1066 |
| Calls: | 100 |
| Puts: | 0 |
| LDN RSI | Mch06 |
| 9-Day = | 71.88 |
| 14-Day = | 65.58 |
| STOCHASTIC | |
| %K = | 66.49 |
| %D = | 61.84 |
| MOVING AVE. | |
| 5-Day = | 864 |
| 10-Day = | 865 |
| 20-Day = | 845 |
| 14-Day = | 853 |
| 40-Day = | 845 |

| - LONDON SPREADS - | Closing Bid/Ask | HI Low | Volume |
|---|---|---|---|
| Z/H | -30/-23 | -26 -31 | 1137 |
| Z/K | -44/-34 | -41 -42 | 1275 |
| Z/N | -63/-48 | | |
| Z/U | -75/-60 | | |
| Z/Z | -82/-70 | | |
| H/K | -12/-11 | -11 -12 | 254 |
| H/N | -26/-25 | -25 -26 | 21 |
| H/U | -38/-36 | -37 -38 | 32 |
| H/Z | -47/-46 | -45 -47 | 338 |
| H/H | -58/-57 | -56 -58 | 209 |
| K/N | -14/-13 | -14 -14 | 33 |
| K/U | -26/-25 | -26 -26 | 18 |
| K/Z | -36/-35 | -35 -35 | 102 |
| K/H | -48/-45 | | |
| K/K | -59/-51 | | |
| N/U | -12/-11 | -12 -12 | 1 |
| U/Z | -11/-10 | -9 -10 | 60 |

| CRB INDEX (NYBOT) | | |
|---|---|---|
| RJ/CRB | 323.38 | 2.67 |
| CCI (old) | 339.69 | 1.51 |

| LONDON IS DUE: | |
|---|---|
| Mch06 | Unch |
| May06 | Unch |

| Daily CMAA Spot Prices basis East. Seaboard, Ex-Dock Prices vrs. NYCC: | Mch06 |
|---|---|
| Ghana MC beans | $278 |
| Ivory Coast beans | $207 |
| Nigeria MC beans | $185 |
| Arriba ASS beans | $175 |
| Sanchez PAQ beans | $193 |
| Malaysia 110 beans | $15 |
| Sulawesi PAQ beans | $43 |
| Ecuador Liquor | 1.64 |
| African Type Butter | 2.95 |
| Nat. 10/12 Press Cake | 0.62 |

| SUPPORT & RESISTANCE Mch06 | LONDON |
|---|---|
| 2nd Resist. | 923 |
| 1st Resist. | 912 |
| Major Resist. | 901 |
| Pivot | 891 |
| Major Support | 880 |
| 1st Support | 870 |
| 2nd Support | 860 |

| SUPPORT & RESISTANCE Mch06 | NEW YORK |
|---|---|
| 2nd Resist. | 1508 |
| 1st Resist. | 1498 |
| Major Resist. | 1490 |
| Pivot | 1474 |
| Major Support | 1466 |
| 1st Support | 1450 |
| 2nd Support | 1436 |

| N.Y. VOLUMES | |
|---|---|
| FINAL: | 12242 |
| AA'S: | 37 |
| Est. Sw: | 714 |
| Calls: | 1156 |
| Puts: | 521 |
| EFP's: | 0 |
| NY RSI | Mch06 |
| 9-Day = | 70.93 |
| 14-Day = | 63.56 |
| STOCHASTIC | |
| %K = | 76.19 |
| %D = | 66.43 |
| MOVING AVE. | |
| 5-Day = | 1421 |
| 10-Day = | 1409 |
| 20-Day = | 1391 |
| 14-Day = | 1394 |
| 40-Day = | 1405 |

| - NEW YORK SPREADS - | Closing Bid/Ask | HI Low | Est. Vol. |
|---|---|---|---|
| Z/H | -10/+0 | +0 +0 | 64 |
| H/K | -20/-18 | -19 -19 | 275 |
| H/N | -41/-38 | -41 -42 | 125 |
| H/U | -60/-58 | | |
| H/Z | -87/-84 | -84 -84 | 20 |
| H/H | -112/-109 | -109 -112 | 165 |
| K/N | -21/-19 | -20 -20 | 15 |
| K/U | -42/-38 | | |
| K/Z | -69/-65 | -69 -69 | 10 |
| K/H | -95/-90 | | |
| K/K | -113/-110 | -113 -113 | 10 |
| N/U | -21/-18 | | |
| N/Z | -47/-42 | -42 -43 | 20 |
| N/H | -73/-68 | | |
| N/K | -94/-88 | | |
| N/N | -113/-106 | | |
| U/Z | -29/-23 | | |

above studies basis Mch06

above studies basis Mch06

| GBP @ LDN CLOSE | | |
|---|---|---|
| USD: | 1.7313 | 0.0013 |
| EUR: | 1.4799 | 0.0013 |
| DEM: | 2.8945 | 0.0028 |
| FRF: | 9.7076 | 0.0095 |
| NGL: | 3.2613 | 0.0032 |
| CHF: | 2.2853 | -0.0004 |
| JPY: | 209.11 | 0.4403 |
| CAN: | 2.0152 | -0.0109 |

| EUR @ LDN CLOSE | | |
|---|---|---|
| USD: | 1.1699 | -0.0001 |
| GBP: | 0.6757 | -0.0007 |
| DEM: | 1.95583 | fixed |
| FRF: | 6.55957 | fixed |
| NGL: | 2.20371 | fixed |
| CHF: | 1.5443 | -0.0019 |
| JPY: | 141.30 | 0.1990 |
| CAN: | 1.3603 | -0.0017 |

| USD @ LDN CLOSE | | |
|---|---|---|
| STG: | 0.5776 | -0.0005 |
| EUR: | 0.8548 | 0.0001 |
| DEM: | 1.6718 | 0.0002 |
| FRF: | 5.6071 | 0.0007 |
| NGL: | 1.8837 | 0.0002 |
| BEF: | 34.4825 | 0.0040 |
| ITL: | 1655.12 | 0.1936 |
| CHF: | 1.3200 | -0.0014 |

| USD @ LDN CLOSE | | |
|---|---|---|
| YEN: | 120.78 | 0.15 |
| CAN: | 1.1628 | -0.0073 |
| MEX: | 10.4525 | -0.0800 |
| AUD: | 1.3397 | -0.0092 |
| INR: | 9963 | -37.0 |
| SGD: | 1.6879 | -0.0025 |
| BRZ: | 2.1991 | -0.0114 |
| VEB: | 2149.00 | 0.00 |

NYBOT STOCKS OF COCOA BEANS IN EXCHANGE LICENSED WAREHOUSES (~145 LB. BAGS)

| | 02-Dec-05 | 1-Dec-05 | Chng |
|---|---|---|---|
| NY | 348,271 | 348,271 | 0 |
| DE | 2,619,138 | 2,635,489 | -16351 |
| BR | 27,375 | 27,375 | 0 |
| TTL | 3,034,784 | 3,051,135 | -16351 |

NYBOT COCOA GRADING RESULTS

Lots Passed: 1295 Lots Pending: 115

| Cocoa C.O.T. | | LS lng | LS shrt | Net LS Pos. | Sprd | COM Lng | COM Sht | Net COM Pos. | NR lng | NR sht | Net NR Pos. | TTl O/I | Comb. Net Spec. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fut Only | 29-Nov | 28381 | 26387 | 1994 | 1509 | 85369 | 90194 | -4825 | 8024 | 5193 | 2831 | 125285 | Long | 4825 |
| Fut Only | 22-Nov | 29108 | 26732 | 2376 | 1715 | 82446 | 87471 | -5025 | 7441 | 4792 | 2649 | 120710 | Long | 5025 |
| Fut Only | 15-Nov | 28485 | 37850 | -9365 | 2966 | 88457 | 82079 | 6378 | 9324 | 6337 | 2987 | 129232 | Short | -6378 |

The Mch06 contract in London ended marginally higher today as the continuation of fund buying from Thursday's £31 eruption helped to send the spot month to a new 11-week high in more moderate trading conditions. The market sprinted to a new £13 gain in the first 13 minutes of trading, only to find a torrent of trade and origin selling quickly deflect the nears to a pro-New York loss of £8 before a period of consolidation set in. A stronger-than-expected market in New York lifted the nears in London off of the lows to ultimately push the market back into the plus column in the final hours of the day. The market was strong enough to fight off of the inhibitive effects of a rising GB Pound as well as the seemingly negative effects of the weakening Dec05/Mch06 spread which plummeted to a new contract low of £31 discount. The presence of heavy trade profit taking and aggressive origin selling compressed the arbitrage levels, leaving them at their tightest levels in roughly 3-weeks. The latest rise in world prices helped to loosen up the flow of cocoa today that had previously been accumulating at the ports, particularly from Nigeria and the Ivory Coast.

The New York market provided additional firepower on the upside today as the strength of the GB Pound against the US Dollar teamed up with net fund buying of 3500 to 4000 lots to take the take the Mch06 contract to its highest close since the 13th of September. The surge in spec buying, which followed yesterday's revised estimates of 6000 to 7000 lots, seems to be part of a larger commodity buy program which has seen another huge allocation of long investment commodity money send the CRB's (old) Continuous Commodity Index to an all-time high just today.

Still the gains in cocoa may have also been sentimentally supported by reports of an attack by 20 gunmen on an army barrack in or near Abidjan that was quickly dispersed and resulted in no casualties. The mysterious attack was blamed on the rebels by government sources. However, Reuters reported that Ivory Coast rebels accused the government of staging the unusual attack on the military barracks to "provide President Laurent Gbagbo with an excuse not to attend a meeting of heads of state in Mali" where "everyone would be on his back". Whatever the case, the flow of cocoa was not affected as it was business as usual in Abidjan today.

Regarding the flow of cocoa in the Ivory Coast, there is increasing talk in the trade that the combined weekly arrivals in the ports of Abidjan and San Pedro, which should soon be hitting their seasonal peak of 70,000 tonnes per week, are topping out around 50,000 tonnes. This in turn has some analysts and government officials speculating that the Ivory main crop will not reach 1 million tonnes this season. Caution is advised, however, as the slowdown in "published arrivals" may not always equal "actual" arrivals. For example, in the last several years, we have seen and heard of large upward and unexplained adjustments to the Ivory Coast cumulative arrivals in January and February, sometimes by as much as 50,000 and 100,000 tonnes. That said, more verification of current arrivals may be needed before long term projections of total output can be reliably reformulated. Notwithstanding any statistical gerrymandering, the month of December has historically proven itself to be a strong seasonally driven "upmonth" for cocoa. In fact, the four weeks in December generally produce the second strongest seasonal rally of the year behind the "Silly Season". Competition for required year-end futures and differential coverage by end-users may explain the rally within the heart of the harvest. January thru March, on the other hand, tends to counter any December strength. When all is said and done, the funds are in the midst of reversing a moderately large short position, the world of commodity prices continue to enjoy inflationary pressure and large investment inflows, and the cocoa market in and of itself is looking more technically convincing for the bulls. More gains in the short term should not be unexpected. Regards, Luis Rangel

| Cocoa C.O.T. | | LS lng | LS shrt | Net LS Pos. | Spreaders | COM Lng | COM Sht | Net COM Pos. | NR lng | NR sht | Net NR Pos. | | TTl O/I | Comb. Net Spec. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| w/Opt. | 29-Nov | 26811 | 26412 | 399 | 8849 | 89245 | 92931 | -3686 | 9121 | 5835 | 3286 | 134026 | 134026 | Long | 3686 |
| w/Opt. | 22-Nov | 27296 | 26593 | 703 | 9477 | 86440 | 90410 | -3970 | 8632 | 5367 | 3265 | 131847 | 131847 | Long | 3970 |
| w/Opt. | 15-Nov | 26837 | 37890 | -11053 | 9766 | 92030 | 84429 | 7601 | 10156 | 6743 | 3453 | 138829 | 138829. | Short | -7600 |

[illegible]

**Draft Payments Detail Report**

Report run on:    August 16, 2006 12:21 PM

Draft_Detail_Rpt.rdf

Page 1

Asterisk (*) denotes surcharge for un-allocated expenses per state statute.

CRAIG's Ltd. Confidential - Internal Distribution ONLY

**Claim Number: 20032675**

| Draft Number | Issue Date | Reason | Pay Status | Payee | Amount | Suffix |
|---|---|---|---|---|---|---|
| 1134257 | 06-MAR-06 | FIRE 05-0914 | C | TRANSMAR COMMODITY GROUP LTD | $38358.37 | CARGO |
| 1134257 | 13-MAR-06 | INTERNAL CORRECTION | C | TRANSMAR COMMODITY GROUP | -$38358.37 | CARGO |
| 1134258 | 13-MAR-06 | INTERNAL CORRECTION | C | TRANSMAR COMODITY GROUP | $38358.37 | CARGO |
| 1136517 | 14-APR-06 | FIRE 05-0914 | C | TRANSMAR COMMODITY GROUP LTD | $150000.00 | CARGO |
| 1141039 | 22-JUN-06 | FIRE A/G # 05-0914 | C | TRANSMAR COMMODITY GROUP LTD | $48953.13 | CARGO |

**Total:**    $373311.50    CARGO

# ARTHUR J. GALLAGHER & CO. OF NEW YORK

## REVISED—STATEMENT OF CLAIM

AJG Ref. No.: 05-0914

Date: June 20, 2006

Insurer: Fireman's

Insured: Transmar Commodity Group

Carrier/Location:    UCP Fire Claims          Date of loss:11/01/06

Commodity: Cocoa Beans

Nature of Loss:  Fire at processing plant


Insured Value: $   178,171.90
Invoice Value: $   161,974.45
Advance: 10%

Calculation:

| | | |
|---|---|---:|
| a. | Insured value of cocoa bean | $178,171.90 |
| b. | Transportation from UCP to Camden | 1,950.00 |
| c. | Stripping and Handling | 1,998.00 |
| d. | Storage | 2,660.48 |
| e. | Destruction costs | 14,172.75 |
| f. | Total Loss | $198,953.13 |
| g. | Less: Advance payment | ($150,000.00) |

Balance   Due        $48,953.13



**Fireman's Fund®**

March 16, 2006

Arthur J. Gallagher Risk Mgt Services
444 Madison Avenue, 20th Floor
New York, NY 10022
Attn: Albert Loser, Marine Claims Dept.

RE:   Policy No:      OC-95282601
      Insured:        Transmar Commodity Group Ltd.
      Claimant:       Transmar Commodity Group Ltd.
      Your Ref No:    05-0914
      Our Ref No:     20032675
      Issue Date:     3/13/06
      Payee:          Transmar Commodity Group Ltd.
      Payment:        $38,358.37

Dear Albert,

Enclosed please find the partial settlement check of **$38,358.37** concerning the captioned claim.
As we e-mailed you on **3/6/06**, here is our adjustment:

$31,108.89 (Product Disposed) + $1,801.19 (Prorated Ocean Frt) = $32,910.08
$32,910.08 + $888.32 (Inland Freight) = $33,798.40
$33,798.40 x 1.10 Advance = $37,178.24
$37,178.24 + $1,180.13 (Waste Mgt Disposal Fees) = **$38,358.37** Total Owed to the Insured

We'll continue to await the status of the 110 MT of damage cocoa beans. Thanks for your
cooperation.

Sincerely,


James M. Zrebiec
Marine Cargo Adjuster


Fireman's Fund          1 Chase Manhattan Plaza
Insurance Companies     37th Floor
A company of Allianz ⑪  New York, NY 10005-1423

FEB. 6. 2006  2:12PM    AJG NY NY                              NO. 0102   P.  2

TRANSMAR COMMODITY GROUP LTD.
200 SOUTH STREET
MORRISTOWN NEW JERSEY 07960
TEL  973-359-4040 EXT 106
FAX  973-359-4058

ARTHUR J.GALLAGHER RISK MANAGEMENT SERVICES
444 MADISON AVENUE-20TH FLOOR
NEW YORK,NEW YORK 10022-6903

ATTN;     ALBERT LOSER
          CLAIMS DEPT

DEAR ALBERT

PLEASE FIND THE FOLLOWING DOCUMENTS COVERING THE FILE AT U.C.P (PARTIAL CLAIM)

COPY OF SHIPPERS COMMERICAL INVOICE
COPY OF B/L
COPY OF WT NOTE TR 721-CONT CMCU4031010(12M.T) 174 BAGS LOSSED/ECUADOR C,BEANS
COPY OF WT NOTE TR725-CONT CAXU4  9 M.T    CAXU4641897     129 BAGS LOSSED
COPY OF WT NOTE TR716-EX LOT TRAILER 2413   IVORY COAST COCOA BEANS ; LOSSED     ?
COPY OF  CHARGES-WASTE MANAGEMENT
COPY OF INCOMING BEANS TO U.C.P
COPY OF COCOA MARKET REPORT-DATED DECEMBER 2,2005
COPY OF  FREIGH BILLS- PRORATE FOR 308 BAGS
COPY OF TRAILER BILLS 34025/34026

COPY OF REPORT FROM DEPARTMENT OF HEALTH AND HUMAN SERVICE  TO FOLLOW


BALANCE OF CLAIM TO FOLLOW FOR 110 M.T

FEB. 6. 2006  2:12PM   AJG NY NY                          NO. 0102   P. 3

# COLONIAL COCOA DEL ECUADOR
Telef. 593-4-2252138 - 2252962 - 2252478
Fax 593-4-2260577 . E-mail info@colonialcocoa.com
Guayaquil - Ecuador

DECEMBER 2, 2005
INVOICE CC1329

| | |
|---|---|
| **BUYER:** | **TRANSMAR COMMODITY GROUP** |
| | 200 SOUTH STREET, MORRISTOWN N.J. 07960 |
| **SELLER:** | COLONIAL COCOA DEL ECUADOR S.A. |
| **CONTRACT:** | 05CC1141 - P-1734 |

**DESCRIPTION OF GOODS**

**1450 BAGS OF ECUADOR COCOA BEANS TYPE "ASE"**

**SHIPMENT DETAILS:**

| | |
|---|---|
| **VESSEL** | "CCNI PUNTA ARENAS" |
| **DATE** | NOVEMBER 9, 2005 |
| **PORT OF LOADING:** | GUAYAQUIL-ECUADOR |
| **PORT OF DISCHARGE:** | NEW YORK - U.S.A. |
| **MARKS:** | COLONIAL COCOA DEL ECUADOR S.A. LOT 0116 |
| **B/L** | SUDUB53705017026 |

**WEIGHTS:**

| | | |
|---|---|---|
| **NET KGS** | : | 100.050,00 |
| **GROSS KGS** | : | 100.920,00 |
| **NET POUNDS** | : | 220.570,23 |

| | | |
|---|---|---|
| **TERMS:** | **FOB** | |
| **UNIT PRICE:** | **1.375,10** per M/TON | |

| | | |
|---|---|---|
| **TOTAL PRICE** | US$ | 137.578,76 |
| LESS INV. #1308 DTD NOV. 9/05 | US$ | 104.932,44 |
| **DIFF. DUE COLONIAL:** | US$ | 32.646,32 |

$137.578,76 x 100%

INSURANCE IS UNDERSTOOD TO BE COVERED BY BUYERS.

COLONIAL COCOA DEL ECUADOR S.A.

Alberto Nácer Bagderian
Gerente General

FEB. 6. 2006  2:12PM    AJG NY NY                                    NO. 0102   P. 4

# Bill of Lading
Multimodal Transport
or Port-to-Port Shipment

## HAMBURG SÜD
www.hamburgsud.com

| Shipper | | |
|---|---|---|
| COLONIAL COCOA DEL ECUADOR S.A.<br>KM 7 1/2 VIA A DAULE<br>GUAYAQUIL-ECUADOR<br>R.U.C. # 0991465839001 | B/L No. (also to be used as payment ref.)<br>SUDUB53705017026 | Booking No.<br>5GYEAG1144 |

| Consignee  (*Not negotiable unless consigned to order*) | Export References |
|---|---|
| TO THE ORDER OF | Shipper information |
| | INTRL:  GAG1144R |

Notify Party (See cl. 17)

| | Forwarding Agent-References |
|---|---|
| TRANSMAR COMMODITIES GROUP<br>200 SOUTH STREET 4TH FLOOR<br>MORRISTOWN N.J. 07960<br>U.S.A.<br>TELEF.: 973-3594040 | not part of this |
| | Point and country of origin |

| Place of Receipt | Pre-carriage by | Domestic Routing Export Instructions / Also Notify / Agent at Port of Discharge |
|---|---|---|
| | | B/L contract |
| Port of Loading<br>GUAYAQUIL | Ocean Vessel<br>CCNI PUNTA ARENAS | Voyage<br>505 N | |
| Port of Discharge<br>NEW YORK, NY | Place of Delivery | | |
| | Type of move<br>/ | Originals to be released at<br>GUAYAQUIL |

## PARTICULARS FURNISHED BY SHIPPER

| Marks & Nos. | Cont./Seal Nos. | No. of Pkgs. | Description of Pkgs. and Goods | Gross Weight | Measurement |
|---|---|---|---|---|---|
| CMCU4031010<br>Seal-Numbers<br>0439793/015887<br>Size:40' Type:DC<br>Cnt.Ld.:LCLFCL | | 362 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE" | 25195.200 KGS<br>24978.000 KGS NET | |
| CAXU4641897<br>Seal-Numbers<br>0439799/015808<br>Size:40' Type:DV<br>Cnt.Ld.:LCLFCL | | 362 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE" | 25195.200 KGS<br>24978.000 KGS NET | |
| SUDU4673267<br>Seal-Numbers<br>0459104/015988<br>Size:40' Type:DV<br>Cnt.Ld.:LCLFCL | | 363 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE" | 25264.800 KGS<br>25047.000 KGS NET | |
| GLDU4055975<br>Seal-Numbers<br>0459102/015801<br>Size:40' Type:DV<br>Cnt.Ld.:LCLFCL<br>COLONIAL COCOA<br>DEL ECUADOR.<br>S.A.<br>LOTE 0116<br>COCOA BEANS<br>PRODUCT OF<br>ECUADOR<br>PAIS AMAZONICO<br>69.00 K.N.<br>69.60 K.B.<br>NEW YORK | | 363 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE"<br>CACAO EN GRANO ECUATORIANO<br>CALIDAD ASE<br>R.U.C. # 1594771<br>R.O.A. # 151 2086 6252<br>TOTAL: 1450 BAGS<br>100.050.00 K.N.<br>100.920.00 K.B.<br>"FREIGHT AS PER AGREEMENT"<br>CLEAN ON BOARD | 25264.800 KGS<br>25047.000 KGS NET | |

FREIGHT COLLECT

Mode load area          |Mode discharge area

Page: 1 of 1

## ORIGINAL

| Tariff Item No. | Total No. of Pkgs.<br>1450 | Declared value (See clause 17) | No. orig. B/L<br>3 | Freight payable at<br>NEW YORK, NY |
|---|---|---|---|---|

FEB. 6. 2006  2:12PM    AJG NY NY                                        NO. 0102  PAP. 5₃₂/₈₅

12/20/2005  14:33    302⬤0826              UNITED COCOA ⬤

# UCP

**United Cocoa Processor, Inc.**
701 Pencader Drive, Newark, DE, 19702
Phone: (302) 731 0825 - Fax: (302) 731 0826

## WEIGHT CERTIFICATE

| Weighted for: | UCP / Transmar | | |
|---|---|---|---|
| **Date:** | 12/01/2005 | **Lot:** | TR 721 |
| **Marks:** | ECUADOR | **Shipped Via:** | Champion |
| **Quantity of bags:** | 862 | **Container #:** | CMCU 4031010 |
| **Reference:** | DO# 274₉ | | |

|  | UCP | | |
|---|---|---|---|
| | Gross Weight: | 56,768 lbs | = 71.1320 Kg/BAG |
| | Tare of Bags: | 543 lbs | |
| | Tare of Pallets: | 2,315 lbs | |
| | Net Weight: | 53,910 lbs | |
| | or | 24,453 kg | = 67.5497 Kg/BAG |

UCP Inc.
Certified Weigher # 530

By _____
Guillermo Rangello

FEB. 6. 2006  2:12PM   AJG NY NY
01/27/2006  18:42    302    0826

UNITED COCOA 

NO. 0102  P.  6
PAGE      03/03

# UCP

**United Cocoa Processor, Inc.**
701 Pencader Drive, Newark, DE, 19702
Phone: (302) 731 0825 - Fax: (302) 731 0826

## WEIGHT CERTIFICATE

| | | | |
|---|---|---|---|
| **Weighted for:** | UCP / Transmar | | |
| **Date:** | 12/02/2005 | **Lot:** | TR 725 |
| **Marks:** | ECUADOR | **Shipped Via:** | Champion |
| **Quantity of bags:** | 362 | **Container #:** | CAXU 4641897 |
| **Reference:** | DO# 2840 | | |

UCP

| | | | |
|---|---|---|---|
| Gross Weight: | 57,180 lbs | = 78.6483 Kg /bag |
| Tare of Bags: | 543 lbs | |
| Tare of Pallets: | 2,275 lbs | |
| Net Weight: | 54,362 lbs | |
| or | 24,658 kg | = 68.1160 Kg/bag |

UCP Inc.
Certified Weigher # 530

By _____
Guillermo Ramallo

FEB. 6. 2006  2:12PM    AJG NY NY              UNITED COCOA              NO. 0102  P. 7  02/03
01/27/2006  10:42    30      0826

# UCP

**United Cocoa Processor, Inc.**
701 Pencader Drive, Newark, DE, 19702
Phone: (302) 731 0825 - Fax: (302) 731 0826

## WEIGHT CERTIFICATE

| | | | |
|---|---|---|---|
| Weighted for: | UCP / Transmar | | |
| Date: | 11/25/2005 | Lot: | TR 716 |
| Marks: | IC | Shipped Via: | P III |
| Quantity of bags: | 308 | Trailer #: | 2413 |
| Reference: | DO# 2825 | | |

UCP

| | | | |
|---|---|---|---|
| Gross Weight: | 45,693 lbs | | 67. 2929 Kg /BAG |
| Tare of Bags: | 711 lbs | | |
| Tare of Pallets: | 2,124 lbs | | |
| Net Weight: | 42,858 lbs | | |
| | or | | |
| | 19,440 kg | ≠ | 63. 1169 Kg /BAG |

UCP Inc.
Certified Weigher # 530

By _____
Guillermo Remallo

FEB. 6. 2006  2:13PM    AJG NY NY                    NO. 0102   P. 8
11-10-2005  03:33pm  From-                           T-210  P.006/009  F-190

# Arrival Notice & Freight Invoice

| SHIPPER | |
| --- | --- |
| COLONIAL COCOA DEL ECUADOR S.A. KM 7 1/2 VIA A DAULE GUAYAQUIL-ECUADOR R.U.C. # 0991465839001 | **HAMBURG SUD** |

| UBL No./Booking No. SUDUB53705017025 SGYBAG1144 | ACC. Ref. 0000497721  953358 | DATE 11/11/05 |
| --- | --- | --- |

| CONSIGNEE | |
| --- | --- |
| TO THE ORDER OF | MAKE ALL CHECKS PAYABLE TO: HAMBURG SUD NORTH AMERICA INC. 9485 regency square boulevard suite 500 jacksonville fl 32225 |

DELIVERY ONLY EFFECTED AGAINST SURRENDER OF REQUIRED DOCUMENTS, SURRENDER OF ENDORSED ORIGINAL BILL OF LADING AND PAYMENT OF FREIGHT AND CHARGES, IF COLLECT. TO AVOID STORAGE CHARGES, PLEASE MAKE ARRANGEMENTS FOR CUSTOMS ENTRY AND, ACCEPTANCE OF CARGO, IMMEDIATELY.

| NOTIFY PARTY | The intermodal certification information in this document is provided to the receiver for delivery to the inland carrier, which will be chosen by the broker or consignee and which is not known to Hamburg Sud. The receiver of this notice is hereby instructed, and by acceptance of this notice is deemed to agree, to forward to the inland carrier the gross cargo weight, description of contents, container number, and date of this certification, in compliance with the Intermodal Safe Container Act of 1992, as amended. |
| --- | --- |
| TRANSMAR COMMODITIES GROUP 200 SOUTH STREET 4TH FLOOR MORRISTOWN N.J. C7960 TELEF.: 973-3594640 | |

| VESSEL VOYAGE/VOIR CONI PUNTA ARENAS 505 N | FLAG LIBERIA | ETA 11/22/05 | TERMINAL NEW YORK CNTR TML |
| --- | --- | --- | --- |
| PLACE OF RECEIPT | PORT OF LOADING GUAYAQUIL ECUADOR | PORT OF DISCHARGE NEW YORK, NY | PLACE OF DELIVERY |

**PARTICULARS FURNISHED BY SHIPPER**

| Freight/Charge  Basis | Rated as | Prepaid | Collect |
| --- | --- | --- | --- |
| OCEANFREIGHT  LUMPSUM | 1900.000 USD | | 7600.00  USD |
| INTERN. SEC.  LUMPSUM | 6.000 USD | | 24.00  USD |
| == T O T A L == | | | 7624.00  USD |

7624 : 100.920 MT/GRAN = 75.55/M.T.

| ACCORDING TO HER MANIFEST THE VESSEL HAS ON BOARD THE ABOVE GOODS CONSIGNED TO YOU OR SHOWING YOU AS THE NOTIFY PARTY. PLEASE ADVISE THE CARRIER AT THE OFFICE NOTED ABOVE OF YOUR DELIVERY INSTRUCTIONS PRIOR TO THE VESSELS ARRIVAL. | ALL FREIGHT AND CHARGES MUST BE PAID BEFORE DELIVERY OF GOODS. EQUIPMENT DETENTION DEMURRAGE OR STORAGE CHARGES AS SET OUT IN THE CARRIER'S TARIFF AND TERMINAL OR PORT TARIFF WILL BE ASSESSED ON THE CARGO NOT DELIVERED WITHIN THE APPLICABLE FREE TIME. |
| --- | --- |

FOR CUSTOMER SERVICE CONTACT: HAMBURG SUD Jacksonville 1-888-228-3270

THANKS FOR SHIPPING  **HAMBURG SUD**

PAGE: 2 of 2

6E7795

FEB. 6. 2006  2:13PM    AJG NY NY                          NO. 0102   P. 9
11-16-2005  05:33PM  From-                                 T-210  P.004/005  F-180

# Arrival Notice & Freight Invoice

| SHIPPER | |
|---|---|
| COLONIAL COCOA DEL ECUADOR S.A.<br>KM 7 1/2 VIA A DAULE<br>GUAYAQUIL-ECUADOR<br>R.U.C. # 0991465839001 | **HAMBURG SUD** |

| | | | |
|---|---|---|---|
| | UBL No./Booking No.<br>SUDUBS3705017026<br><br>5GYBAG1144 | AOC Ref.<br>0000497721  953368 | DATE:<br>11/11/05 |

| CONSIGNEE | MAKE ALL CHECKS PAYABLE TO: |
|---|---|
| TO THE ORDER OF | HAMBURG SUD NORTH AMERICA INC.<br>9485 regency square boulevard<br>suite 500<br>jacksonville fl 32225 |

| NOTIFY PARTY | DELIVERY ONLY EFFECTED AGAINST SURRENDER OF REQUIRED DOCUMENTS, SURRENDER OF ENDORSED ORIGINAL BILL OF LADING AND PAYMENT OF FREIGHT AND CHARGES, IF COLLECT, TO AVOID STORAGE/DEMAGE, PLEASE MAKE ARRANGEMENTS FOR CUSTOMS ENTRY AND, ACCEPTANCE OF CARGO, IMMEDIATELY. |
|---|---|
| TRANSMAR COMMODITIES GROUP<br>200 SOUTH STREET 4TH FLOOR<br>MORRISTOWN N.J. 07960<br>TELEF.: 973-3594040 | The intermodal certification information in this document is provided to the receiver for delivery to the inland carrier, which will be chosen by the broker or consignee and which is not known to Hamburg Sud.  The receiver of this notice is hereby instructed, and by acceptance of this notice is deemed to agree, to forward to the inland carrier the gross cargo weight, description of contents, container number, and date of this certification, in compliance with the Intermodal Safe Container Act of 1992, as amended. |

| VESSEL VOYAGE/OUR<br>CCNI PUNTA ARENAS<br>505 N | FLAG<br>LIBERIA | ETA<br>11/22/05 | TERMINAL<br>NEW YORK CNIR TML |
|---|---|---|---|
| PLACE OF RECEIPT | PORT OF LOADING<br>GUAYAQUIL ECUADOR | PORT OF DISCHARGE<br>NEW YORK, NY | PLACE OF DELIVERY |

## PARTICULARS FURNISHED BY SHIPPER

| | | | |
|---|---|---|---|
| CMCU4031010<br>Seal-Numbers<br>0439793/015887<br>Tare: 3800 KG<br>Size:40' Type:DC | 362 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE" | 25198.200 KIL<br>24978.000 KIL NET |
| SUDU44373367<br>Seal-Numbers<br>0459104/015888<br>Tare: 3800 KG<br>Size:40' Type:DV | 363 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE" | 25264.800 KIL<br>25047.000 KIL NET |
| CAXU44641897<br>Seal-Numbers<br>0439799/015905<br>Tare: 3800 KG<br>Size:40' Type:DV | 362 | BAGS<br><br>OF ECUADOR COCOA BEANS TYPE "ASE" | 25195.200 KIL<br>24978.000 KIL NET |
| GLDU4055975<br>Seal-Numbers<br>0439102/015801<br>Tare: 3780 KG<br>Size:40' Type:DV | 363 | BAGS<br><br>OF ECUADOR COCOA BEANS TPE "ASE"<br>CACAO EN GRANO ECUATORIANO<br>CALIDAD ASE<br>F.O.B. # 1594771<br>F.D.A. #  151 2086 6252<br>TOTAL: 1450 BAGS<br>100.050.00 K.N.<br>100.920.00 K.B.<br>"FREIGHT AS PER AGREEMENT"<br>CLEAN ON BOARD | 25264.800 KIL<br>25047.000 KIL NET |

| ACCORDING TO HER MANIFEST THE VESSEL HAS ON BOARD THE ABOVE GOODS CONSIGNED TO YOU OR SHOWING YOU AS THE NOTIFY PARTY. PLEASE ADVISE THE CARRIER AT THE OFFICE NOTED ABOVE OF YOUR DELIVERY INSTRUCTIONS PRIOR TO THE VESSELS ARRIVAL. | ALL FREIGHT AND CHARGES MUST BE PAID BEFORE DELIVERY OF GOODS, EQUIPMENT DETENTION DEMURRAGE OR STORAGE CHARGES AS SET OUT IN THE CARRIERS TARIFF AND TERMINAL OR PORT TARIFF WILL BE ASSESSED ON THE CARGO NOT DELIVERED WITHIN THE APPLICABLE FREE TIMES. |
|---|---|

FOR CUSTOMER SERVICE CONTACT:  HAMBURG SUD Jacksonville  1-888-218-3270

THANKS FOR SHIPPING :   **HAMBURG SUD**

PAGE:  1 of  2

*BE7995/P01734*

FEB. 6. 2006  2:13PM   AJG NY NY                        NO. 0102   P. 10

I N V O I C E

Champion
1 Eves Drive, Suite 111
Marlton, NJ  08053
856-225-1069

Completion Date: 12/01/05                    Invoice #:   34025

Bill To: TRAMNJ                  Shipper: HOWSNY
TRANSMAR COMMODITY GROUP, LTD.    HOWLAND HOOK CONTAINER TE
200 SOUTH STREET                 300 WESTERD AVENUE
MORRISTOWN, NJ 07960             STATEN ISLAND, NY 10303

Manifest: C- 34025-A    Shippers #: P001734        Seal #:
Truck: 1516   Trailer:              Driver: KILBURN, CRAIG

-----------------------------------------------------------------
LOAD  PIECES  RATE  MILES  ACTWT  FREIGHT  PICKCHG  DROPCHG  ADD'L  AMOUNT
-----------------------------------------------------------------

34025   0  576.00  242    0   576.00   0.00  ,  0.00   362.65  938.65
Pickup Date: 12/01/05   Time: 00:00    ASN: PUNTA ARENAS
   Container1:  CMCU4031010          Container2:
   Pick # 1    HOWLAND HOOK CONTAINER TERMINA  STATEN ISLAND, NY
               Pickup Date: 12/01/05 00:00
               Pieces:    0 Weight:    0


   Drop # 1   UNITED COCACA  PROCESSOR   NEWARK, DE
              Delivery Date: 12/01/05 00:00
              Pieces:    0 Weight:    0


   Drop # 2   HOWLAND HOOK CONTAINER TERMINA   STATEN ISLAND, NY
              Delivery Date: 12/02/05 00:00
              Pieces:    0 Weight:    0


        E X P L A N A T I O N   O R   C O M M E N T
        OVERWEIGHT                                      100.00
        FUELSC                                          112.65
        ADDITIONAL TOLL FOR HOWLAND HO                  100.00
        chassis rent IMPORTANT NOTICE!                   50.00
                    This Invoice Is Sold, Assigned
                         and Payable to
                         W.F.I. Services
                      1 Eves Drive Suite 111
                       Marlton, NJ 08053      TOTAL
                                                        938.65
PAYMENT OF ALL SERVICE WORK IS DUE IN 30 DAYS NET.  A SERVICE CHARGE
OF 2% PER MONTH (SIMPLE INTEREST RATE.  24% PER YEAR) WILL BE ADDED TO
ALL ACCOUNTS 30 DAYS PAST DUE.  IN CASE SUIT SHALL BE BROUGHT FOR
COLLECTION OF BILLS IN RELATION TO THIS SERVICE ORDER AND REPAIR BILL
OR SAME HAS TO BE COLLECTED UPON DEMAND OF AN ATTORNEY, PURCHASER
AGREES TO PAY REASONABLE ATTORNEYS FEE FOR MAKING SUCH COLLECTION.

OD 1734 / BE 7995 - LH

FEB. 6. 2006  2:13PM   AJG NY NY                                    NO. 0102   P. 11

# I N V O I C E

Champion
1 Eves Drive, Suite 111
Marlton, NJ 08053
856-225-1069

Completion Date: 12/01/05                        Invoice #:    34026

Bill To: TRAMNJ                           Shipper: HOWSNY
TRANSMAR COMMODITY GROUP, LTD.            HOWLAND HOOK CONTAINER TE
200 SOUTH STREET                          300 WESTERD AVENUE
MORRISTOWN, NJ 07960                      STATEN ISLAND,NY 10303

Manifest: C- 34026-A    Shippers #: P001734          Seal #:
Truck: 1516   Trailer:                    Driver: KILBURN, CRAIG

-------------------------------------------------------------------------

LOAD  PIECES  RATE  MILES  ACTWT  FREIGHT  PICKCHG  DROPCHG  ADD'L  AMOUNT

-------------------------------------------------------------------------

| LOAD | PIECES | RATE | MILES | ACTWT | FREIGHT | PICKCHG | DROPCHG | ADD'L | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 34026 | 0 | 576.00 | 242 | 0 | 576.00 | 0.00 | 0.00 | 362.65 | 938.65 |

Pickup Date: 12/01/05   Time: 00:00    ASN: PUNTA ARENAS
Container1: CAXU4641897           Container2:
Pick # 1   HOWLAND HOOK CONTAINER TERMINA  STATEN ISLAND, NY
Pickup Date: 12/01/05 00:00
Pieces:   0 Weight:   0


Drop # 1   UNITED COCACA  PROCESSOR   NEWARK, DE
Delivery Date: 12/01/05 00:00
Pieces:   0 Weight:   0


Drop # 2   HOWLAND HOOK CONTAINER TERMINA   STATEN ISLAND, NY
Delivery Date:  / /   00:00
Pieces:   0 Weight:   0


E X P L A N A T I O N   O R   C O M M E N T
OVERWEIGHT                                            100.00
FUELSC                                                112.65
ADDITIONAL TOLL FOR HOWLAND HO                        100.00
chassis rental charge                                  50.00

*IMPORTANT NOTICE!*
*This Invoice is Sold, Assigned*
*and Payable to:*
*W.F.I. Services*
*1 Eves Drive Suite 111*
*Marlton, NJ 08053*   TOTAL

                                                      938.65

PAYMENT OF ALL SERVICE WORK IS UPON 30 DAYS NET.  A SERVICE CHARGE
OF 2% PER MONTH (SIMPLE INTEREST RATE.  24% PER YEAR) WILL BE ADDED TO
ALL ACCOUNTS 30 DAYS PAST DUE.  IN CASE SUIT SHALL BE BROUGHT FOR
COLLECTION OF BILLS IN RELATION TO THIS SERVICE ORDER AND REPAIR BILL
OR SAME HAS TO BE COLLECTED UPON DEMAND OF AN ATTORNEY, PURCHASER
AGREES TO PAY REASONABLE ATTORNEYS FEE FOR MAKING SUCH COLLECTION.

*O01734/BE 7995 -2*
*-PLL*

FEB. 6. 2006  2:13PM   AJG NY NY                                    NO. 0102  P. 12
01/09/2006   15:07   3621   8926          UNITED COCOA              PAGE  02/04

**WM.**
**WASTE MANAGEMENT**
Waste Management of Delaware, Inc.
Waste Management of Wilmington
107 Silvia St.
Swing NJ 08628

|                          |                         |
|--------------------------|-------------------------|
|                          | Page 2 of 2             |
| Customer:                | UNITED COCOA PROCESSING |
| Account Number:          | 276-0027808-0276-5      |
| Invoice Date:            | 12/21/2005              |
| Invoice Number:          | 0729249-0276-9          |
| Due Date:                | Due Upon Receipt        |
| WM e2Pay Account ID:     | 00005-18420-62000       |

| Date | Ticket | Description | Quantity | U/M | Rate | Amount |
|------|--------|-------------|----------|-----|------|--------|
| 2/01/05 | 579201 | Disposal per ton | 1.17 | | | 57.91 |
| | | Job #595455 — | | | | |
| 2/01/06 | 579201 | 20 Yd rolloff | 1.00 | | | 93.60 |
| 2/01/05 | 579203 | Disposal per ton | 4.82 | | | 223.74 |
| | | Job #581177 — | | | *468.85* | |
| 2/01/05 | 579203 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 2/02/05 | 580570 | Trip no charge | 1.00 | | | 0.00 |
| | | Job #trip | | | | |
| 2/05/05 | 580328 | Trip no charge | 1.00 | | | 0.00 |
| | | Job #trip | | | | |
| 12/05/05 | 580329 | Disposal per ton | 3.11 | | | 153.94 |
| | | Job #585393 — | | | | |
| 12/05/05 | 580329 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/05/05 | 580330 | Disposal per ton recycle | 2.83 | | *F.D.* | 0.00 |
| | | Job #544637 — | | | | |
| 12/05/05 | 580330 | 30 Yd rolloff | 1.00 | | | 97.34 |
| 12/06/05 | 580723 | Delivery | 1.00 | | | 54.60 |
| 12/08/05 | 580977 | Trip no charge | 1.00 | | | 0.00 |
| | | Job #trip | | | | |
| 12/08/05 | 580979 | Trip no charge | 1.00 | | | 0.00 |
| | | Job #trip | | | | |
| 12/12/05 | 581732 | Disposal per ton | .79 | | | 39.10 |
| | | Job #500026 | | | | |
| 12/12/05 | 581732 | 20 Yd rolloff | 1.00 | | | 93.60 |
| 12/12/05 | 581735 | Disposal per ton | 13.32 | | *x 49.50 =* | 659.34 |
| | | Job #587066 — | | | | |
| 12/12/05 | 581735 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/12/05 | 581736 | Disposal per ton recycle | 4.34 | | | 0.00 |
| | | Job #40419 — | | | | |
| 12/12/05 | 581736 | 30 Yd rolloff | 1.00 | | | 97.34 |
| 12/21/05 | | 1.00 Fuel/environmental charge | 1.00 | | | 61.76 |
| | | **Total Current Charges** | | | | 1,913.07 |

*1444.22*

| | | |
|--|--|--|
| Payment - thank you | | 2,283.21- |
| **Total Payments Received** | *43.08* | 2,283.21- |

FEB. 6. 2006  2:13PM    AJG NY NY                    UNITED COCOA              NO. 0102   P. 13
                                                                                         PAGE  03/04



**WM.**
WASTE MANAGEMENT
Waste Management of Delaware, Inc.
Waste Management of Wilmington
107 Sinia St.
Camp NJ 00025

| | | | | | |
|---|---|---|---|---|---|
| | | | | Page 2 of 2 | |
| | | Customer: | | UNITED COCOA PROCESSING | |
| | | Account Number: | | 275-0027896-0276-5 | |
| | | Invoice Date: | | 01/01/2006 | |
| | | Invoice Number: | | 0731452-0276-5 | |
| | | Due Date: | | Due Upon Receipt | |
| | | WM ezPay Account ID: | | 00005-18420-62000 | |

| Date | Ticket | Description | Quantity | U/M | Rate | Amount |
|---|---|---|---|---|---|---|
| 12/19/03 | 583403 | Trip no charge | 1.00 | | | 0.00 |
| | | Job #wp | | | | |
| 12/19/05 | 583411 | Disposal per ton | 4.37 | | | 218.31 |
| | | Job #587779 | | | | |
| 12/19/05 | 583411 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/19/05 | 583412 | Disposal per ton recycle | 4.69 | | | 0.00 |
| | | Job #40785 | | | | |
| 12/19/05 | 583412 | 30 Yd rolloff | 1.00 | | | 97.34 |
| 12/20/05 | 583925 | Relocate | 1.00 | | | 0.00 |
| 12/22/05 | 583949 | Disposal per ton | 2.76 | | | 135.82 |
| | | Job #588303 | | | | |
| 12/22/05 | 583949 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/22/05 | 583951 | Disposal per ton | 5.20 | | | 257.40 |
| | | Job #588332 | | | | |
| 12/22/05 | 583951 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/26/05 | 584065 | Disposal per ton | 1.35 | | | 66.82 |
| | | Job #507145 | | | | |
| 12/26/05 | 584685 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/26/05 | 584685 | Disposal per ton | 7.58 | | | 375.21 |
| | | Job #588488 | | | | |
| 12/26/05 | 584685 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 12/26/05 | 584689 | Disposal per ton recycle | 4.50 | | | 0.00 |
| 12/26/05 | 584689 | 30 Yd rolloff | 1.00 | | | 97.34 |
| 12/26/05 | 585093 | Trip no charge | 1.00 | | | 0.00 |
| | | Job #wp | | | | |
| 12/29/05 | 585096 | Disposal per ton | 2.76 | | | 135.62 |
| | | Job #588319 | | | | |
| 12/29/05 | 585096 | 30 Yd rolloff | 1.00 | | | 93.60 |
| 01/01/06 | | Fuel/environmental charge | 1.00 | | | 64.40 |
| | | Late payment fee | | | | 27.30 |

|  | Total Current Charges | | | | | 2,035.86 |

Rows 6/13/06

| REF # | PURCHASE | | BAGS | VESSEL | PRICE/ MT | PURCHASE PRICE +10% | TRANSPORTATION LYONS - CAMDEN | WEIGHING CAMDEN | STRIPPING HANDLING | STORAGE | SURVEY COSTS | ADDITIONAL COSTS | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7837 | P001805 | Ivory | 891 | 57.915 | $1,460.00 | $ 83,011.49 | | | | | | | |
| 7837 | P001805 | Ivory | 308 | 20.02 | $1,460.00 | $ 32,152.12 | | | | | | | |
| 7795 | P001724 | EGO | 221 | 15.249 | $1,375.10 | $ 23,095.79 | | | | | | | |
| 7076 | P001808 | Togo | 290 | 19.88284 | $1,370.00 | $ 29,942.40 | | | | | | | |
| | | | 1710 | 113.0828 | $ | 179,171.59 | $ 1,950.00 | $ 865.12 | $ 1,908.00 | $ 2,050.46 | | | |
| | | | | | | | $ 1,950.00 | $ 865.12 | $ 1,908.00 | $ 2,650.46 | | $ 185,445.49 | |

$ 161,894.45

/18/2006 08:57 FAX  9733594058          TRANSMAR COMMODITY GROUP          ☒ 001/002



## TRANSMAR COMMODITY GROUP LTD.
200 SOUTH STREET, 4TH FLOOR
MORRISTOWN, NJ 07960

Date: 05/17/2006

RE: UCP Fire Claim

| | | |
|---|---|---|
| Purchase price of Cocoa | $ | 178,171.89 |
| Transportation From UCP to Camden | $ | 1,960.00 |
| Stripping / Handling | $ | 1,998.00 |
| Storage | $ | 2,660.48 |
| Cost to destroy Cocoa | $ | 14,172.75 |
| Total Loss | $ | 198,963.12 |
| Less Payment Received | $ | (150,000.00) |
| Total Claim remaining | $ | 48,963.12 |



**TRANSMAR COMMODITY GROUP LTD.**
200 SOUTH STREET, 4TH FLOOR
MORRISTOWN, NJ 07960

Dear Mr. Loser

    In regard to our UCP Fire Insurance Claim, Please find enclosed all paper work available to complete this claim. We are only missing the Final report from the F.D.A saying that they witnessed the destruction of the damaged beans.

1)    On Dec 2, 2005, a fire accrued at UCP in Newark Delaware.

2)    On Dec 4 2005, Sol Seltzer ordered a survey to be done. Upon completion of that survey it was determined that approximately 113MT of Cocoa Beans in the warehouse that was subjected to Fire, Smoke, and Water. The beans were place under F.D.A hold, and told that they could not be moved.

        a.  77.935 MT of Ivory Beans
        b.  15.249 MT of Ecuador Beans
        c.  19.869 MT of Togo Beans

3)    Under F.D.A supervision, The Cocoa beans were moved from UCP to Camden International by Phase III trucking. The total cost of this move was $1,950. The Cost of Sorting and handling the damaged Cocoa was a total of $1,998.00.

4)    The total storage charges so far on this Cocoa is $2,660.48

5)    On April 17, 2005, we received a check for Partial payment of the claim in the amount of $150,000.

6)    Between the period of April 26, 2006 & May 2, 2006, The 113 Metric Tons of Damaged beans were properly destroyed under the supervision of the F.D.A. The total cost of the destruction of the Cocoa was 14,172.75.

04/1  APR. 11. 2006 1. 4:22PM AX 97 AJG NY NY TRANSMAR COMMODITY GROUP    NO. 0757   P. 4/133/012

BE7976
P001758

## ARMAJARO USA INC.
## 444 MADISON AVE.
## NEW YORK, NEW YORK 10022

To Transmar Commodity Group Ltd.
200 South Street
Morristown, New Jersey 07960

November 3, 2005
Invoice    CB162F
Contract   S-6109
Payment    DUE 11/14

| Grade: | LOME | | | Price: 1370.00 | | Premium: +160.00 | | #1530 |
|---|---|---|---|---|---|---|---|---|

| Ex-Lot | Bags | Net Wgt | Adj Wgt | Bean Cnt | Price | Allow. | Adj.Price | Amount |
|---|---|---|---|---|---|---|---|---|
| VON-01 | 148 | 10.018 | | 1160 | 1530 | -56 | 1474 | 14,766.53 |
| VON-03 | 148 | 10.103 | | 1080 | 1530 | -20 | 1510 | 15,255.53 |
| VON-05 | 148 | 10.856 | | 1110 | 1530 | -30 | 1500 | 16,284.00 |
| VON-08 | 148 | 10.062 | | 1120 | 1530 | -30 | 1500 | 16,078.00 |
| NNB-01 | 146 | 10.037 | | 1020 | 1530 | -20 | 1510 | 15,155.87 |
| NNB-02 | 146 | 10.013 | | 1080 | 1530 | -20 | 1510 | 15,119.63 |
| NNB-04 | 146 | 10.018 | | 840 | 1530 | 0 | 1530 | 15,327.54 |
| NNB-05 | 146 | 10.01 | | 1100 | 1530 | -20 | 1510 | 15,115.10 |
| NNB-06 | 146 | 10.034 | | 1100 | 1530 | -20 | 1510 | 15,151.34 |
| NNB-09 | 146 | 10.054 | | 1100 | 1530 | -20 | 1510 | 15,181.54 |
| NNB-10 | 146 | 10.039 | | 1160 | 1530 | -72 | 1458 | 14,636.86 |
| NNB-14 | 146 | 10.002 | | 1114 | 1530 | -30 | 1500 | 16,003.00 |
| NNB-16 | 146 | 10.009 | | 1090 | 1530 | -20 | 1510 | 15,113.59 |
| NNB-18 | 146 | 10.053 | | 1150 | 1530 | -42 | 1488 | 14,958.66 |
| NNB-23 | 146 | 10.055 | | 1150 | 1530 | -42 | 1488 | 14,961.84 |
| NNB-25 | 146 | 10.022 | | 1180 | 1530 | -72 | 1458 | 14,612.08 |
| NNB-27 | 146 | 10.043 | | 1190 | 1530 | -72 | 1458 | 14,642.69 |
| LSC-09 | 145 | 10.032 | | 1120 | 1530 | -30 | 1500 | 15,048.00 |
| LSC-12 | 145 | 10.035 | | 1050 | 1530 | 0 | 1530 | 15,353.55 |
| LSC-18 | 145 | 10.043 | | 1000 | 1530 | 0 | 1530 | 15,365.79 |
| LSC-26 | 145 | 10.055 | | 990 | 1530 | 0 | 1530 | 15,384.15 |
| LSC-32 | 145 | 10.01 | | 1180 | 1530 | -72 | 1458 | 14,594.58 |
| LSC-33 | 146 | 10.025 | | 1190 | 1530 | -72 | 1458 | 14,616.45 |
| LSC-39 | 145 | 10.007 | | 1100 | 1530 | -20 | 1530 | 15,310.71 |
| | 3505 | 241.625 | | | | | Total | 362,037.23 |

| | | Financing | Prime + 2 | 6.5%+2 | 8.50% | | |
|---|---|---|---|---|---|---|---|
| | | From 8/15 to 11/14 | 91 days | | | | 7,778.77 |
| | Storage | Sept. | October | November 0.25/mt ea.mo. | | | 6,765.09 |
| | Insurance | Sept. | October | November 1.00/mt ea.mo. | | | 724.89 |

Please remit payment to:
Barclay's Bank PLC
Lombard St.
London, England
Account name: Armajaro Trading Limited
Account No. 72372233.
Swift Code: BARCGB 22

Total    377,245.98

B
6/1/05

04/10/2006 MON 1:23 FAX 97AJG NY NY TRANSMAR COMMODITY GROUP    NO. 0757    P. 5/134/012
APR. 11. 2006 4:22PM

BE 7976

 **CONTINAF BV**

Herengracht 214, 1016 BS Amsterdam
P.O. Box 3775, 1001 AN Amsterdam
Holland

**Cocoa Department**

Telephone: +31 (0)20 - 524 05 24
Trade +31 (0)20 - 524 05 55
Documents +31 (0)20 - 524 05 56
Telefax: Trade +31 (0)20 - 524 05 56
Documents +31 (0)20 - 524 05 59
Telex: 11363
Register Amsterdam: 33031089
BTW: NL0014S 4365 B01

Transmar Commodity Group Ltd.
200 South Street - 4th Flr.
MORRISTOWN, NJ 07960
U.S.A.
attn Louise Hope

Clientno.    : 5166
VATnr.      :
Our ref.    : JZ/A22258-22306-22332          Amsterdam, September 29, 2005

Re: contract no.    : V23290 dated 21.09.05

|  |  |
|---|---|
| ex m.v. | "Umiavut" |
| cargo nr | 9655-9656-9657-9658-9659 |
| description | G.F. Ivory Coast cocoabeans maincrop |
| number of bags | 23100 |
| net weight | 1.506.830,71 kg. = abt 1500 tons |
| destination | ex warehouse American New York |
| marks | Cipexi |
| conditions of contract | CMA-1A |

INVOICE NO. V 23290 /.4014

net landed weight: 1.506.830,71 kg

at US$ 1.460,00 per 1000 kg, ex warehouse New York - landed weights = US$ 2.199.972,84
(final fixation price)

We kindly request you to remit the invoice amount BY TELEGRAPHIC TRANSFER to our IBAN
No. NL38FTSB0213117983 with Fortis Bank (Nederland) N.V., Amsterdam (BIC nr. FTSBNL2R),
stating our contract "V 23290".

Yours faithfully,

V.A.T.: 0%                    Continaf B.V.

BE 7995

# COLONIAL COCOA DEL ECUADOR
Telef. 593-4-2252138 - 2252962 - 2252473
Fax 593-4-2250577 , E-mail info@colonialcocoa.com
Guayaquil - Ecuador

DECEMBER 2, 2005
INVOICE CC1329

**BUYER:**        **TRANSMAR COMMODITY GROUP**
              200 SOUTH STREET, MORRISTOWN N.J. 07960
**SELLER:**       **COLONIAL COCOA DEL ECUADOR S.A.**
**CONTRACT:**     05CC1141 - P-1734

| DESCRIPTION OF GOODS |
| --- |
| 1450 BAGS OF ECUADOR COCOA BEANS TYPE "ASE" |

**SHIPMENT DETAILS:**

| | |
| --- | --- |
| VESSEL | "CCNI PUNTA ARENAS" |
| DATE | NOVEMBER 9, 2005 |
| PORT OF LOADING: | GUAYAQUIL-ECUADOR |
| PORT OF DISCHARGE: | NEW YORK - U.S.A. |
| MARKS: | COLONIAL COCOA DEL ECUADOR S.A. LOT 0116 |
| B/L | SUDUB53705017026 |

**WEIGHTS:**

| | | |
| --- | --- | --- |
| NET KGS | : | 100.050,00 |
| GROSS KGS | : | 100.920,00 |
| NET POUNDS | : | 220.570,23 |

**TERMS:**        FOB
**UNIT PRICE:**    1.376,10 per M/TON

|  |  | | |
| --- | --- | --- | --- |
| TOTAL PRICE | US$ | 137.578,76 |
| LESS INV. #1308 DTD NOV. 9/05 | US$ | 104.932,44 |
| **DIFF. DUE COLONIAL:** | US$ | 32.646,32 |

$137,578.76    100%

INSURANCE IS UNDERSTOOD TO BE COVERED BY BUYERS

COLONIAL COCOA DEL ECUADOR S.A.

Alberto Naser Bequerino
GERENTE GENERAL

04/1~ APR. 11. 2006 4:22PM AX 97 AJG NY NY TRANSMAR COMMODITY GROUP    NO. 0757    P. 7/136/012



**PHASE III TRUCKING, INC.**
197 BRADDOCK AVE.
WINSLOW, NJ  08037
609-561-1539  FAX 609-561-2059

# Invoice

| DATE | INVOICE # |
|------|-----------|
|      |           |

**BILL TO**
Transmar Commodity Group
200 South Street
Morristown, N.J.  07960

| | | | TERMS | | | |
|---|---|---|---|---|---|---|
| DATE | QNTY | DESCRIPTION | DATE | PRO # | AMOUNT |

| | | | | | Total | |

£4  44000 — 5016
45000 — 2208.

SAFEGUARD.

04/11/2006 MON 1:23PM FAX 973 AJG NY NY TRANSMAR COMMODITY GROUP    NO. 0757    P. 9/13 8/012



# CAMDEN
## INTERNATIONAL COMMODITIES TERMINAL L.L.C.
1200 FERRY AVENUE • CAMDEN, NEW JERSEY 08104 • (856) 964-0100 • FAX (856) 964-0101

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2005 | 954050 |

**Bill To**
Transmar
Louise Hope
200 South Street
Morristown, NJ 07960

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  |  |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
|  | Handling Charges: |  |  |
|  | 1,710 Bags Damaged |  |  |
| 111 | Stripping & Handling - 1,710 Bags | 18.00 | 1,998.00 |
|  | SEE ATTACHED |  |  |
|  |  |  |  |

TERM 15 DAYS

Thank you for your business.

| **Total** | $1,998.00 |
|-----------|-----------|

04/1... APR. 11. 2006 1. 4:23PM FAX 97 AJG NY NY TRANSMAR COMMODITY GROUP          NO. 0757    P. 11/13/012

(856) 964-0100

INVOICE

# CAMDEN INTERNATIONAL L.L.C. INVOICE# 12701

**1200 FERRY AVENUE**
**CAMDEN, NJ 08104**

TRANSMAR
200 SOUTH STREET
MORRISTOWN, NJ 07960

ATTN:                                        Date _____ JANUARY 1, 2006 20 _____

ACCNT# ?... COCOA BEAN STORAGE CHARGES - JANUARY, 2006          Page   1

| W/RS | LOC | REFB | EL.S/S | TYPE | COUNT | WEIGHT | | |
|------|-----|------|--------|------|-------|--------|------|-----|
| T1-U1-6943 | SLOU | RETURNED | VARIOUS | VARIOUS | 1710 | 244530 | 665 | .12 |

1710 BAGS WEIGHING   244530 Gwt
@ @.27 PER  100 POUNDS PER MONTH                               665  12

WIRE TRANSFER INFORMATION
BANK OF AMERICA
433 MARKET STREET
CAMDEN, NJ 08102
BANK ROUTING # 021200339
ACCT. # 345-00946-0

04/1 APR. 11. 2006 1.4:23PM AX 97 AJG NY NY TRANSMAR COMMODITY GROUP          NO. 0757   P. 12/13/012

### INVOICE

## CAMDEN INTERNATIONAL L.L.C.

INVOICE# 12806

**1200 FERRY AVENUE**
**CAMDEN, NJ 08104**

~AR
~OUTH STREET
~RISTOWN, NJ 07960

ATTN:

FEBRUARY 1, 2006

Date_____20_____

ACCNT# T1       COCOA BEAN STORAGE CHARGES - FEBRUARY, 2006          Page   1

| W/R# | LOC | REF# | EX.S/S | TYPE | COUNT | WEIGHT | | |
|------|-----|------|--------|------|-------|--------|---|---|
| T1-U1-6943 | GLRU | RETURNED | VARIOUS | VARIOUS | 1710 | 244530 | 665 | 12 |

1710 BAGS WEIGHING    244530 Gwt
@ 0.27 PER 100 POUNDS PER MONTH          665    12

TERM 15 DAYS

WIRE TRANSFER INFORMATION
BANK OF AMERICA
433 MARKET STREET
CAMDEN, NJ 08102
BANK ROUTING # 021200339
ACCT. # 345-00946-0

PAID MAR - 7 2006

11022

P O 1806/BE 7857- 1199 Ivory
PO 1734/BE 7995- 221 ase
PO 1758/BE 7976- 290 Togo

45230        £4

04/10/2006 MON 14:23 FAX 97 AJG NY NY TRANSMAR COMMODITY GROUP
APR. 11. 2006 4:23PM TRANSMAR COMMODITY GROUP
NO. 0757    P. 8/13 7/012

(856) 964-0100

# INVOICE
# CAMDEN INTERNATIONAL L.L.C. INVOICE# 13165
### 1200 FERRY AVENUE
### CAMDEN, NJ 08104

TRANSMAR
200 SOUTH STREET
MORRISTOWN, NJ 07960

ATTN:

Date    MARCH 1, 2006    20

| ACCNT# T1 | COCOA BEAN STORAGE CHARGES - MARCH, 2006 | | | | | | | Page | 1 |
|---|---|---|---|---|---|---|---|---|---|
| W/H# | LOC | REF# | EX-S/S | TYPE | COUNT | WEIGHT | | | |
| TI-U1-6943 | SLOU | RETURNED | VARIOUS | VARIOUS | 1710 | 244530 | | 665 | 12 |
| | | 1710 BAGS WEIGHING    244530 Cwt | | | | | | 665 | 12 |
| | | @ 0.27 PER  100 POUNDS PER MONTH | | | | | | | |

TERM 15 DAYS

WIRE TRANSFER INFORMATION
BANK OF AMERICA
433 MARKET STREET
CAMDEN, NJ  08102
BANK ROUTING # 021200339
ACCT. # 345-00946-0

P 1734/ BE 7995 - 221 ASE
1758/ BE 7876 - 220 Togos
1806/ BE 7857 - 1199 Ivory

LH

04/1ᴬᴾᴿ. 11. 2006 1. 4:23PMᴬᵡ 97ᴬᴶᴳ ⁿʸ ⁿʸTRANSMAR COMMODITY GROUP          NO. 0757   P. 10/13/012

(856) 964-0100

## INVOICE

# CAMDEN INTERNATIONAL L.L.C.

INVOICE# 13303

### 1200 FERRY AVENUE
### CAMDEN, NJ 08104

TRANSMAR
200 SOUTH STREET
MORRISTOWN, NJ 07960

ATTN:

APRIL 1, 2006

Date_____ 20_____

| ACCNT# T1 | | | COCOA BEAN STORAGE CHARGES - APRIL, 2006 | | | | | Page   1 | |
|-----------|-----|------|------------------|----------|-------|--------|-----|-----|----|
| W/R# | LOC | REF# | EX.S/S | TYPE | COUNT | WEIGHT | | | |
| T1-U1-6943 | GLOU | RETURNED | VARIOUS | VARIOUS | 1710 | 844530 | | 655 | 12 |
| T1-J1-6909 | LOCKE | 1201053 | SAFMARINE HOUSTON | CY | 1250 | 139970 | | 390 | 72 |

2960 BAGS WEIGHING      384500 Gwt               1045 | 84
@ 0.27 PER   100 POUNDS PER MONTH

WIRE TRANSFER INFORMATION
BANK OF AMERICA
433 MARKET STREET
CAMDEN, NJ 08102
BANK ROUTING # 021200339
ACCT. # 345-00946-0

H

1734/ BE 7995 - 271 ASE
1758/ BE 7976   290 Togo
1806/ BE 7857 - 1129  Ivory

1919/ BE 8133 - 1250 Congo Beans

TERM 15 DAYS

05/17/2006 WED 12:37 FAX 97█████4058 TRANSMAR COMMODITY GROUP     ☑002/015

 **CAMDEN**

# **Invoice**

## **INTERNATIONAL COMMODITIES TERMINAL L.L.C.**

1200 FERRY AVENUE • CAMDEN, NEW JERSEY 08104 • (856) 964-0100 • FAX (856) 964-0101

| Date | Invoice # |
|------|-----------|
| 4/28/2006 | 954679 |

**Bill To**

Transmar
Louise Hope
200 South Street
Morristown, NJ 07960

*DUE UPON RECEIPT*

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Due on receipt |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
|  | 4/28/2006 |  |  |
| 32 | 4 Labors @ $15.00 per hour for a total of 32 hours | 15.00 | 480.00 |
| 16 | 2 Forklift Drivers @ $25.00 per hour for a total of 16 hours | 25.00 | 400.00 |
| 8 | 1 Supervisor @ $30.00 per hour for a total of 8 hours | 30.00 | 240.00 |
|  | 5/2/2006 |  |  |
| 32 | 4 Labors @ $15.00 per hour for a total of 32 hours | 15.00 | 480.00 |
| 16 | 2 Forklift Drivers @ $25.00 per hour for a total of 16 hours | 25.00 | 400.00 |
| 8 | 1 Supervisor @ $ 30.00 per hour for 8 hours | 30.00 | 240.00 |
|  | 4/26/06 |  |  |
| 1 | Dumpster & disposal service up to 4 tons | 565.00 | 565.00 |
| 7.64 | above tonage permitted | 75.00 | 573.00 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 7.67 | above tonage permitted | 75.00 | 575.25 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 7.81 | above tonage permitted | 75.00 | 585.75 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 7.55 | above tonage permitted | 75.00 | 566.25 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
|  | 4/28/2006 |  |  |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 7.63 | above tonage permitted | 75.00 | 572.25 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 7.88 | above tonage permitted | 75.00 | 591.00 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
|  | 5/2/2006 |  |  |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 8.75 | above tonage permitted | 75.00 | 656.25 |

Thank you for your business.

| **Total** | |
|-----------|---|
| **Balance Due** | |

Page 1

05/17/2006 WED 12:37 FAX 97████4058 TRANSMAR COMMODITY GROUP ● @003/015



# CAMDEN
# INTERNATIONAL COMMODITIES TERMINAL L.L.C.
1200 FERRY AVENUE • CAMDEN, NEW JERSEY 08104 • (856) 964-0100 • FAX (856) 964-0101

## Invoice 

| Date | Invoice # |
|------|-----------|
| 4/28/2006 | 954679 |

**Bill To**
Transmar
Louise Hope
200 South Street
Morristown, NJ 07960

*DUE UPON RECEIPT*

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Due on receipt |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Fuel surcharge | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 9.47 | above tonage permitted | 75.00 | 710.25 |
| 1 | above tonage permitted | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 8.93 | above tonage permitted | 75.00 | 669.75 |
| 1 | Fuel surcharge | 12.00 | 12.00 |
| 1 | Dumpster & disposal service upto 4 tons | 565.00 | 565.00 |
| 8.84 | above tonage permitted | 75.00 | 663.00 |
| 1 | Fuel surcharge | 12.00 | 12.00 |

TRANSFER INFORMATION
BANK OF AMERICA
133 MARKET STREET
CAMDEN, NJ 08102
BANK ROUTING # 021200339
ACCT. # 345-00946-0

Thank you for your business.

| Total | $14,172.75 |
|-------|-----------|
| **Balance Due** | **$14,172.75** |

Page 2

03/02/2006 THU 13:16  FAX 9733594058 TRANSMAR COMMODITY GROUP                    ☒001/013



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**USFDA**
**10 Waterview Blvd.**
**Parsippany, NJ 07054**
**Tel: (973) 526-6008**
**Fax: (973) 526-6069**

## FAX Transmission
973- 359- 4058

Date:   03/02/06

To:  Dan McNamara, Transmar

From: Rich Manney, Compliance Officer, FDA

Subject: Cocoa beans in fire at United Cocoa, DE

No. of Pages:  23

Mr. McNamara:

Attached please find the following documents:

1) sample summary sheets for samples 361621, 361622 & 361623; please note that sample 361621, which was the Ivory Coast product was found to be violative, as it had 5.8% mold by count.

2) Copy of FDA CPG 7105.12- showing that cocoa beans with > 4% moldy beans by count may be considered adulterated and seizure by FDA is possible.

3) Copy of the FDA investigation at United Cocoa processors showing that the lots stored there were impacted by water and smoke damage.

4) Copy of FD&C Act, Section 801(e); Please specifically see 801 (e) (1) (D) - since the product has been in domestic commerce, it cannot be re-exported as an adulterated product.

As I advised you in our telephone conversation today, Once you decide if you intend to recondition or destroy the suspect product, please let me know, as we would need to either be informed as to the reconditioning plan or witness the destruction.  If you have any other questions, please do not hesitate to contact me.

Rich Manney

NOTICE:  This document is intended for the use of the addressed party.  It may contain information that is privileged, confidential or otherwise screened for disclosure under Federal law.  If you are not the addressee, or an authorized deliverer to the addressee, you are hereby notified that any disclosure, copying or action based on this document is strictly prohibited. If you have received this document in error, please notify this office by telephone at the number provided above.

03/02/2006 THU 13:17  FAX 9733594058 TRANSMAR COMMODITY GROUP                    @002/013

---

## Food and Drug Administration Office of Regulatory Affairs
### Collection Report
### For Sample Number:  361621
This is an accurate reproduction of the original electronic record as of  02/21/2006

---

| Flag | Flag Remarks | | | |
|---|---|---|---|---|
| Dealer Voluntarily Holding | Samples collected for 03803C & 07001. | | | |

| Episode Number | Origin | Basis | Sample Type | FIS Smpl Num | Status |
|---|---|---|---|---|---|
| | Domestic/Import | Compliance | Official | 0654209 | Completed |

| FEI | Date Collected | Product Code | Responsible Firm | PAC | Hours |
|---|---|---|---|---|---|
| 3000276002 | 01/30/2006 | 34AYB99 | Ingredient Supplier | 03803C | 14 |
| | | | | 07001 | 6 |

| Compliance Num | Country of Origin |
|---|---|
| | Ivory Coast |

| Related Smpl Num | Position Class | Sampling District | NDC Number | Permit Number | Storage Rqrmnt. |
|---|---|---|---|---|---|
| 361622 | INV | NWJ-DO | | | Ambient. |

| Dealer is Consumer | Crx/DEA Schedule | Recall Num | Consumer Compl. Num | Brand Name |
|---|---|---|---|---|
| No | | | | Cipexi. |

**Product Description**
Raw cocoa beans packed in burlap bags

Sample Finish.

**Product Label**
***CIPEXI PRODUCT OF COTE D'IVOIRE COCOA CI CACAO***

| Reason for Collection | MFG Codes | Expiration Date |
|---|---|---|
| Collected per FACTS Assign #706584 of cocoa beans identified during field examination displaying signs of water contact or mold, possibly contaminated during a fire on 12/02/05 at United Cocoa Processors in Newark, DE. | | |

| Firm Legal Name | Address | Type of Firm | Firm FEI | FCE |
|---|---|---|---|---|
| Transmar Commodity Group Ltd. | 200 South St Morristown, NJ 07960-5390 US | Ingredient Supplier | 3000276002 | |
| United Cocoa Processor, Inc. | 701 Pencader Dr Newark, DE 19702-3311 US | Shipper | 3004333578 | |
| camden international commodities terminal l.l.c. | 600 Jersey Ave gloucester city, NJ 08030-2361 US | Dealer | 3004337980 | |

| Size of Lot | Est. Value | Rcpt Type | Carrier Name | Date Shipped |
|---|---|---|---|---|
| 1,199 / 69 kg burlap bags of cocoa beans. | $  100,000.00 | FDA484 | Phase III Trucking | 12/15/2005 |

**Description of Sample**
See continuation.

**Method of Collection**
See continuation.

**How Prepared**
See continuation.

| Collector's Identification on Package and/or Label | Collector's Identification on Seal |
|---|---|
| "DI 01/30/06 or 01/31/06 MM or KFT Subsample____". | "DI 361621 01/30/06 or 01/31/06 Marcelo Mangalindan" |

| Sample Delivered To | Date Delivered | Orig C/R & Records To |
|---|---|---|
| For pick by Fed-Ex. | 02/02/2006 | NWJ-DO |

Date: 02/21/2006                      Page: 1  of  3

03/02/2006 THU 13:17  FAX 9733594058 TRANSMAR COMMODITY GROUP                    ☑003/013

---

**Food and Drug Administration Office of Regulatory Affairs**
**Summary Report**
**For Sample Number: 361621**

**TD Sample Number:**                              **Import Sample Number**
*This is an accurate reproduction of the original electronic record as of 02/24/2006*

---

**Sample Class:** Normal Everyday Sample          **Sample Origin:** Domestic/Import      **Sample Basis:** Compliance
**Sample Flag:** Dealer Voluntarily Holding        **Sample Type:** Official                **Collecting District:** NWJ-DO
**Home District:**                                 **Orig C/R and Records To:** NWJ-DO      **Collection PACs:** 03803C
                                                                                                                07001

**Product Name:** Cocoa Bean N.E.C.; Not Elsewhere Classified (NEC); Raw, Fresh, Ambient

**Product Description:** Raw cocoa beans packed in burlap bags

**Collection Reason:**   Collected per FACTS Assign #706584 of cocoa beans identified during field examination displaying signs of
                         water contact or mold, possibly contaminated during a fire on 12/02/05 at United Cocoa Processors in
                         Newark, DE.

---

| **Lab:** NRL | **Split Num:** 0 | **Date Received:** 02/03/2006 | **Date Out of Lab:** 02/24/2006 |
|---|---|---|---|
| **District Conclusion:** | | **District Conclusion Made By:** | **District Conclusion Date:** |
| **Disposition Reason:** | | **Disposition Authorized By:** | **Disposition Authorized Date** |

| **Performing Org** | **PAC** | **LID** | **PAF** | **Compliance No** | **Lab Class Description** | **Laboratory Status** |
|---|---|---|---|---|---|---|
| NRL-FCB-B | 03803B | | FIL | | 3  - Adverse Findings | Completed |

**Lab Conclusion**

Found an average of 5.8% by count internally moldy beans in 1000 examined.

| **Lab Conclusion Date** | **Lab Conclusion Made By** |
|---|---|
| 02/24/2006 | Giraco,Paul A |

| **Performing Org** | **PAC** | **LID** | **PAF** | **Compliance No** | **Lab Class Description** | **Laboratory Status** |
|---|---|---|---|---|---|---|
| NRL-FCB-A | 07001 | A | MYC | | 1  - In Compliance | Completed |

**Lab Conclusion**

No aflatoxin found.
Action Level > 20 ppb
Spike 1 = 76%, Spike 2 = 74%

| **Lab Conclusion Date** | **Lab Conclusion Made By** |
|---|---|
| 02/16/2006 | Emanuele,Kathryn E |

New Jersey

Date: 02/24/2006                    Page: 1 of 1

03/02/2006 THU 13:17 FAX 9733594058 TRANSMAR COMMODITY GROUP @004/013

---

## Food and Drug Administration Office of Regulatory Affairs
### Collection Report
### For Sample Number: 361622

This is an accurate reproduction of the original electronic record as of 02/22/2006

---

| Flag | Flag Remarks | | | | |
|---|---|---|---|---|---|
| Dealer Voluntarily Holding | Samples collected for 03803C & 07001. | | | | |

| **Episode Number** | **Origin** | **Basis** | **Sample Type** | **FTS Smpl Num** | **Status** |
|---|---|---|---|---|---|
| | Domestic/Import | Compliance | Official | 0654259 | Completed |
| **FEI** | **Date Collected** | **Product Code** | **Responsible Firm** | **PAC** | **Hours** |
| 3000276002 | 01/31/2006 | 34AYB99 | Ingredient Supplier | 03803C | 14 |
| | | | | 07001 | 6 |

| **Compliance Num** | **Country of Origin** |
|---|---|
| | Togo |

| **Related Smpl Num** | **Position Class** | **Sampling District** | **NDC Number** | **Permit Number** | **Storage Rqrmnt.** |
|---|---|---|---|---|---|
| 361621 | INV | NWJ-DO | | | Ambient |

| **Dealer is Consumer** | **Crx/DEA Schedule** | **Recall Num** | **Consumer Compl. Num** | **Brand Name** |
|---|---|---|---|---|
| No | | | | B N B SA |

**Product Description**
Raw cocoa beans packed in burlap bags.

SAMPLE FROM:

**Product Label**
****B N B SA CACAO DU TOGO RI D/****

| **Reason for Collection** | **MFG Codes** | **Expiration Date** |
|---|---|---|

**Reason for Collection**
Collected per FACTS Assign #706584 of cocoa beans identified
during field examination displaying signs of water contact or mold,
possibly contaminated during a fire on 12/02/05 at United Cocoa
Processor Inc. in Newark, DE.

| **Firm Legal Name** | **Address** | **Type of Firm** | **Firm FEI** | **FCE** |
|---|---|---|---|---|
| Transmar Commodity Group Ltd. | 200 South St Morristown, NJ 07960-5390 US | Ingredient Supplier | 3000276002 | |
| United Cocoa Processor, Inc. | 701 Pencader Dr Newark, DE 19702-3311 US | Shipper | 3004333578 | |
| camden international commodities terminal l,l,c. | 600 Jersey Ave gloucester city, NJ 08030-2361 US | Dealer | 3004337980 | |

| **Size of Lot** | **Est. Value** | **Rcpt Type** | **Carrier Name** | **Date Shipped** |
|---|---|---|---|---|
| 290 / 69 kg burlap bags of cocoa beans. | $   25,000.00 | FDA484 | Phase III Trucking | 12/16/2005 |

**Description of Sample**
See continuation.

**Method of Collection**
See continuation.

**How Prepared**
See continuation.

| **Collector's Identification on Package and/or Label** | **Collector's Identification on Seal** | |
|---|---|---|
| "DI 361622 01/31/06 MM or KFT Subsample____" | "DI 361622 01/31/06 Marcelo Mangalindan" | |

| **Sample Delivered To** | **Date Delivered** | **Orig C/R & Records To** |
|---|---|---|
| For pick-up by FedEx. | 02/02/2006 | NWJ-DO |
| | **Lab w/Split Sample** | **Lab** |
| | 0 | NRL |

Date: 02/22/2006                    Page: 1 of 3

03/02/2006 THU 13:18  FAX 9733594058 TRANSMAR COMMODITY GROUP    ☒005/013

---

**Food and Drug Administration Office of Regulatory Affairs**
**Summary Report**
**For Sample Number: 361 622**
**ID Sample Number:              Import Sample Number**
This is an accurate reproduction of the original electronic record as of .02/24/2006.

---

| | | | |
|---|---|---|---|
| **Sample Class:** Normal Everyday Sample | **Sample Origin:** Domestic/Import | **Sample Basis:** | Compliance |
| **Sample Flag:** Dealer Voluntarily Holding | **Sample Type:** Official | **Collecting District:** NWJ-DO | |
| **Home District:** | **Orig C/R and Records To: NWJ-DO** | **Collection PACs:** | 03803C |
| | | | 07001 |

**Product Name:** Cocoa Bean N.E.C., Not Elsewhere Classified (NEC); Raw, Fresh, Ambient

**Product Description:** Raw cocoa beans packed in burlap bags.

**Collection Reason:** Collected per FACTS Assign #706584 of cocoa beans identified during field examination displaying signs of water contact or mold, possibly contaminated during a fire on 12/02/05 at United Cocoa Processor Inc. in Newark, DE.

---

| | | | |
|---|---|---|---|
| **Lab:** NRL | **Split Num:** 0 | **Date Received:** 02/07/2006 | **Date Out of Lab:** 02/23/2006 |
| **District Conclusion:** | | **District Conclusion Made By:** | **District Conclusion Date:** |
| **Disposition Reason:** | | **Disposition Authorized By:** | **Disposition Authorized Date** |

---

| Performing Org | PAC | LID | PAF | Compliance No | Lab Class-Description | Laboratory Status |
|---|---|---|---|---|---|---|
| NRL-FCB-B | 03803B | | FIL | | 1   - In Compliance | Completed |

**Lab Conclusion**

Found an average of 2.2% by count internally moldy beans in 1000 examined.

| **Lab Conclusion Date** | **Lab Conclusion Made By** |
|---|---|
| 02/24/2006 | Grace,Paul A |

| Performing Org | PAC | LID | PAF | Compliance No | Lab Class-Description | Laboratory Status |
|---|---|---|---|---|---|---|
| NRL-FCB-A | 07001 | A | MYC | | 1   - In Compliance | Completed |

**Lab Conclusion**

Aflatoxin found: B1 = 1.6 ppb, B2 = 0, G1 = 0, G2 = 0.
Action Level > 20 ppb

| **Lab Conclusion Date** | **Lab Conclusion Made By** |
|---|---|
| 02/16/2006 | Emanuele,Kathryn E |

New Jersey

03/02/2006 THU 13:18  FAX 9733594058 TRANSMAR COMMODITY GROUP                    ☒006/013

---

## Food and Drug Administration Office of Regulatory Affairs
### Summary Report
### For Sample Number: 361623

| TD Sample Number: | Import Sample Number |
|---|---|

This is an accurate reproduction of the original electronic record as of  02/24/2006

---

**Sample Class:** Normal Everyday Sample    **Sample Origin:** Domestic/Import    **Sample Basis:** Compliance
**Sample Flag:** Dealer Voluntarily Holding    **Sample Type:** Official    **Collecting District:** NWJ-DO
**Home District:**    **Orig C/R and Records To:** NWJ-DO    **Collection PACs:** 03803C
                                                                                                07001

**Product Name:** Cocoa Bean N.E.C.; Not Elsewhere Classified (NEC); Raw, Fresh, Ambient

**Product Description:** Raw cocoa beans packed in burlap bags.

**Collection Reason:**    Collected per FACTS Assign #706584 of cocoa beans identified during field examination displaying signs of
water contact or mold, possibly contaminated during a fire on 12/02/05 at United Cocoa Processors in
Newark, DE.

---

| Lab: NRL | Split Num: 0 | Date Received: 02/07/2006 | Date Out of Lab: 02/23/2006 |
|---|---|---|---|
| District Conclusion: | | District Conclusion Made By: | District Conclusion Date: |
| Disposition Reason: | | Disposition Authorized By: | Disposition Authorized Date |

| Performing Org | PAC | LID | PAF | Compliance No | Lab Class Description | Laboratory Status |
|---|---|---|---|---|---|---|
| NRL-FCB-B | 03803B | | FIL | | 1  - In Compliance | Completed |

**Lab Conclusion**
Found an average of 3.8% by count internally moldy beans in 1000 examined.

**Lab Conclusion Date**    **Lab Conclusion Made By**

02/24/2006    Girace, Paul A

| Performing Org | PAC | LID | PAF | Compliance No | Lab Class Description | Laboratory Status |
|---|---|---|---|---|---|---|
| NRL-FCB-A | 07001 | A | MYC | | 1  - In Compliance | Completed |

**Lab Conclusion**
Aflatoxin Found B1 = 1.6 ppb, B2 = 0, G1 = 0, G2 = 0.
Action Level > 20 ppb

**Lab Conclusion Date**    **Lab Conclusion Made By**

02/16/2006    Emanuele, Kathryn E

*New Jersey*

Date: 02/24/2006                    Page: 1 of 1

FDA/ORA CPG 7105.12                                                         Page 1 of 1

Updated: 2005-11-29

## Sec. 515.750 Cocoa Beans - Adulteration by Mold, Insect Infestation, and Mammalian Excreta (CPG 7105.12)

REGULATORY ACTION GUIDANCE:

The following represents criteria for direct reference seizure to "the Office of General Counsel" through Division of Compliance Management and Operations (HFC-210) and for direct citation by District Offices:

Examination shows:

1. The cocoa beans contain an average of more than 4 percent moldy beans by count;

2. The cocoa beans contain an average of more than 4 percent insect infested or insect damaged beans, by count; or

3. The cocoa beans contain an average of more than 6 percent reject beans (moldy plus insect infested or insect damaged beans) by count.

REMARKS:

If live external infestation is present use the CPG "Food Storage and Warehousing - Adulteration - Filth" (See Sec. 580.100 for CPG 7103.01).

SPECIMEN CHARGE:

Article (cocoa beans) adulterated (when introduced into and while in interstate commerce) (while held for sale after shipment in interstate commerce), within meaning of 21 U.S.C. 342(a)(3), in that it consists wholly or in part of a filthy substance by reason of presence there in of (insects) (insect fragments) (insect damaged cocoa beans); and that it consists in part of a decomposed substance by reason of the presence therein of (moldy, decomposed cocoa beans).

CRITERIA FOR RECOMMENDING LEGAL ACTION:

The following represents criteria for recommending legal action to CFSAN/Office of *Compliance*/Division of Enforcement (HFS-605):

The cocoa beans contain an average of 10 mgs or more mammalian excreta per pound.

NOTE: Analyses for mold, insect damage, and mammalian excreta are conducted using the method specified in FDA Technical Bulletin 5, Macroanalytical Procedures Manual, Chapter V.4.A - Method for Cocoa Beans.

*Material between asterisks is new or revised.*

Issued: 8/1/83
Revised: 3/95, 8/96, 5/2005

03/02/2006 THU 13:19  FAX 9733594058 TRANSMAR COMMODITY GROUP                          ☒008/013

 **DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Food & Drug Administration**
**Philadelphia District, Investigations Branch**
**Wilmington Resident Post, HFR-CE1505**

# Memorandum

**Date:** January 3, 2006

**From:** Gerald W. Kopp, Investigator

**To:** Director, Investigations Branch; HFR-CE150

**Subject:** United Cocoa Processor, Inc. Newark, DE (FEI:3004333578)
**Re:** Cocoa Beans, Storage Conditions

## Summary

This investigation was performed under FACTS Asgmt. #699353 per Supervisor's request. Inspection conducted 12/7, 12/05 at the subject firm revealed raw cocoa beans were stored there when a fire occurred on 12/2/2005. The fire burned and damaged the roof/ceiling above the stored cocoa beans. Water used to fight the fire leaked through the roof onto the stored cocoa beans below.

I inspected the warehouse where the cocoa beans were stored and monitored the loading of raw cocoa beans onto inspected, truck-trailers for interstate shipment to: Camden International Commodity Terminal, Gloucester, NJ. I officially sealed each trailer load when closed. I took photographs depicting the warehouse storage conditions and the condition of the raw cocoa beans that were packed in burlap bags. I verified the employee's counting inventory of the bags of beans as they were loaded onto trailers.

---

**Endorsement:**

To: File                                                                     Date: 1/4/2006

The loading and sealing of trucks transporting cocoa beans affected by a fire at the subject firm was witnessed. The condition of the beans as they were being loaded was also documented by photographs. The delivery of the beans to Camden International Commodity Terminal, Gloucester, NJ was also witnessed and reported under separate cover. Info copy provided to HFR-CE340 as background information for review of the proposed reconditioning plan for the beans now in NJ.

Michael D. O'Meara, SI
PHI-DO, Wilmington RP

Distribution:
O: PHI-DO file
Cc w exh: HFR-CE340

United Cocoa Processor, Inc.                              CFN: 3004333578
701 Pencader Drive                                        12/15-16/2005
Newark, DE 19702-3311                                     GWK

No Inspectional Observations, Form FDA 483 was issued and no samples were collected.

## Administrative Information and Individual Responsibility

On 12/15/05 I presented credentials and issued Notice of Inspection, Form FDA 482 to Adriano Da Silva, Purchasing Manager of United Cocoa Processor, Inc. (UCP) at 701 Pencader Drive, Newark, DE 19702-3311. He assured me he had authority to receive the notice on behalf of the firm. Correspondence should be sent to Mr. Da Silva at the address above. He introduced Mr. Guillermo Ramallo who has responsibility for receiving and shipping goods and products at UCP. Mr. James Liu, Director of Processing conducted cocoa bean inventory and oversight for loading and shipping the raw cocoa beans.

I explained I was there to monitor the shipping of the cocoa beans that were stored there during the fire as followed up by another investigator. Mr. Da Silva explained the cocoa beans were owned by Transmar Commodity Group, Ltd. During closing discussion Mr. Da Silva provided copies of Bill of Ladings for six loads of cocoa beans shipped by Transmar to UCP's location (Exhibits 1a-1f). He explained the beans were owned by Transmar until used for manufacturing cocoa by UCP. He confirmed the beans were stored in the Cocoa Bean room during the fire.

I asked Mr. Da Silva for a copy of the Fire Marshall's report on the fire. He stated it would not be available until the following week, 12/27/05. After this investigation on 12/22/05 I called the Newark fire department. I spoke with an individual who identified himself as one of the responders to the fire at UCP. He stated only water was used to fight the fire and no chemicals were needed to extinguish the fire. Mr. Da Silva promised to forward a copy of the Fire Marshall's report as soon as he received it. On 1/3/05 I called Mr. Da Silva who stated he had not to date received a copy of the report.

Mr. Da Silva confirmed Transmar had asked UCP to ship the beans to:
Camden International Commodity Terminal,
600 Jersey Avenue
Gloucester, NJ 08030

He showed me to the cocoa bean room and showed me two truck trailers parked at the docks ready for loading the beans. Transmar provided the six truck trailers for shipping the cocoa beans.

## Warehouse Conditions

Upon my arrival the cocoa beans were stored in the cocoa bean room (Exhibit 6) under sheet plastic and tarpaulins. Mr. Da Silva explained the firefighters cut into and through the roof to put out the fire and insure no fire lingered between the roof and ceiling skins. The opening of the roof allowed firefighting water, and debris from the operation to cascade down onto the stored cocoa beans below. Mr. Da Silva stated they covered the beans the day after the fire (12/3/05) because of exposure by the destroyed, open portion of the roof.

On 12/15/05 the damaged portion of the roof had been closed in with sheet tin. Two ceiling skylights were covered with flexible, plastic sheeting and construction on the roof continued during this investigation. There was a soot and dust like residue on the sheet plastic and

United Cocoa Processor, Inc.                                    CFN: 3004333578
701 Pencader Drive                                               12/15-16/2005
Newark, DE 19702-3311                                                      GWK

tarpaulins covering the stored product. My inspection of the warehouse and the stored cocoa beans revealed dust, debris and soot had covered all surfaces within the warehouse. There were pools of standing water on the floor adjacent to and underneath pallets of stacked beans. A layer of black soot like residue from 1/16 to 1/8 of an inch thick covered the exposed floor area.

Employees were sweeping the floor at frequent intervals in an effort to clean up and contain the spreading of the soot by foot traffic and forklift activity. However, the sweeping caused soot particulate matter to become airborne. Some of it subsequently settled onto the stored cocoa beans.

Also, on 12/15 & 16/05 employees were dismantling and cleaning the raw cocoa bean cleaning equipment housed in the cocoa bean room. Mr. Da Silva explained the cleaning equipment removed foreign matter such as sticks, stones and metal. The cocoa beans were screened and sent through a centrifuge for dust and light matter removal. A dust collector was attached to the cleaning equipment. It too was being dismantled and cleaned during loading of the beans. The reconditioning and cleaning process of the equipment generated dense, dusty conditions in the cocoa bean room. This dust also settled onto the stored cocoa beans that remained in storage prior to loading.

### Receiving and Inventory Operations

Mr. Da Silva and Mr. Liu explained they assign a lot number to each load of beans when received. The pallet's gross weight and the identifying lot numbers were written onto a strip of adhesive tape then stuck onto one of the burlap bags on the top layer of each pallet. See exemplary Photo Exhibits 2a-2f.

[Note: I digitally enhanced most images with Microsoft Photo Editor using the original files of the digital photographs. The photographs were enhanced for improved black and white print quality and viewing. Each printed photograph is described with the corresponding file number. I did not use all the image files stored on the disc medium in this report. The dusty conditions in the warehouse caused flash reflections, white blotches captured in some of the file images.]

They assigned lot numbers TR 713, TR 716, TR 717, TR 718, TR724 and TR 725 to the six loads of cocoa beans stored in the warehouse. Mr. Da Silva explained the loads were stacked in dedicated locations in the warehouse to maintain identity and track inventory usage. The assigned lot number was also noted on the receiving documents, Bill of Ladings (Exhibits 1a-1f). Mr. Liu explained portions of some of the loads were used for manufacturing cocoa prior to the fire. Therefore the inventory in the warehouse would not match the receiving documents. He stated no cocoa beans were processed between the day of the fire and this investigation.

After I arrived the employees removed the plastic covers from the beans revealing stacks of burlap bags of cocoa beans. The bags were stacked on oversized wooden pallets. The number of layers varied from pallet to pallet but most of the pallets held 20 or 25 bags. The pallets were stacked two and three high (Exhibit 3).

**The following photographs depict the condition of the stored cocoa beans and the storage conditions of the warehouse during this inspection.**

United Cocoa Processor, Inc.                                    CFN: 3004333578
701 Peneader Drive                                              12/15-16/2005
Newark, DE 19702-3311                                                    GWK

Photograph Exhibits 7 & 8 depict soot like residues visible on the burlap bags stacked in the
warehouse. The residue was not uniform on the top exposed surfaces of the burlap sacks. The
photograph, Exhibit 9 also depicts soot residue and roofing materials nested in between the
stacks of cocoa beans.

Photograph Exhibit 10 portrays soot residue on a bag in the shape of a foot print. Also note the
darkened area on the bag under and around the footprint. The darkened area was caused by
water leaking through the unfinished roof and contacting the exposed burlap bag and beans.
Between the stacked product and the wall are particles of Styrofoam insulation previously used
as roof insulation.

Photograph Exhibit 11 shows broader view of a stack of cocoa beans. Note the small, black
spots of soot on the bags.

Photograph Exhibit 12 shows close up view of dust residue on a cocoa bean bag. Note the
imprinted lines on the bag are obscured by the dust residue. The white spot is a piece of
Styrofoam insulation debris.

Photograph Exhibit 13 shows close up view of soot and dust residue along with a particle of
Styrofoam on stacked cocoa beans.

## Water presence and/or damage

Photograph Exhibit 14 shows a stack of cocoa beans directly below a skylight in the ceiling. The
photograph was taken on 12/16/05. Rainfall the previous evening/night had pooled in the
flexible, plastic cover of the skylight. On 12/16/05 the plastic cover over the skylight was
removed by construction personnel. The pooled water cascaded down onto the stacked beans
below.

Photograph Exhibit 15 shows water stains on a bag of product. The light, water stains are most
prominent near the left side of the bag end, in the left, center portion of the photograph.

Photograph Exhibit 16 darkened, water stained areas on stored bean bags. The stains were
caused by water which cascaded down from the ceiling skylight during construction activity.

The darkened area in the lower right quadrant of photograph Exhibit 17 depicts standing water
adjacent to cocoa bean bags that spilled off the pallet and onto the floor. The darker areas on the
bean bags immediately above the standing water are wet areas from cascading water. [Note the
white spots in the dark black area are generated by camera back-flash off dust particles.]

Note the black soot adhering to the darkened, wet surface of the bean bag in center right of
photograph Exhibit 18. I observed the bag had been laying in standing water on the floor and
was restacked onto the pallet stack.

Photograph Exhibits 19a & 19b show two views of mold and mildew that developed on the floor
underneath a pallet stack of cocoa beans. The mottled, black to gray to white areas in the lower
half of Exhibit 19a are mold and mildew like residues on the floor surface. Exhibit 19b is a
detail, closer view of Photograph Exhibit 19a. The photographs were taken immediately after the
pallet of beans was moved and loaded onto the truck.

United Cocoa Processor, Inc.                                    CFN: 3004333578
701 Peneader Drive                                             12/15-16/2005
Newark, DE 19702-3311                                                  GWK

Photograph Exhibit 20 depicts another example of mold and mildew growth on the bed of a pallet after a stack of beans was removed. The black to gray to white areas are different mold and mildew like residues on the pallet surface. The photograph was taken immediately after the beans were restacked onto another pallet for loading onto the truck.

## Truck Loading

Mr. Da Silva explained each designated lot of cocoa beans as listed above would be maintained and loaded on a separate truck trailer. Mr. Liu and I individually counted the number of bags on each pallet as did the forklift operator. Some stacks of bean bags were scrambled in such a manner it made counting difficult but we did our best to get an accurate count. Mr. Liu wrote the count onto each Bill of Lading issued by UCP.

After loading and sealing the trucks Mr. Liu provided copies of Bill of Ladings (Exhibits 21-26) which included the following information:

1. a number of bags loaded on the trailer
2. a description of the cocoa beans by country source
3. the trailer number
4. USFDA Seal ##
5. United Cocoa Processor, Inc. seal ##
6. Bill of Lading ##
7. Reference DO ##

I verified the seal numbers and each trailer number entered on the Bill of Ladings. Mr. Da Silva signed an affidavit describing the copies of documents they provided.

I thanked Mr. Da Silva for his cooperation and concluded the investigation.

## Exhibits:

1a-f.  Cocoa Beans, Bill of Ladings, Receiving Documents
2a-f.  Exemplary Lot designation and weight labels.
   3.  Exemplary Stack of Cocoa Beans, Print Photo File DSC00164
   4.  Exemplary Label, Print Photo File DSC00148
   5.  Exemplary Label, Print Photo File DSC00144
   6.  Floor Diagram
7-8.  Photographs depicting storage conditions including soot residue and debris.
9a-b.  Two views depicting soot residue and debris.
  11.  Photograph depicting stacked cocoa beans in the warehouse.
  12.  Photograph depicting dust on cocoa bean bag.
  13.  Photograph depicting soot and dust like residue on cocoa bean bag.
  14.  Photograph depicting wet, water stains on stacked cocoa beans below open skylight.
  15.  Photograph depicting apparent water stains on cocoa bean bag.
  16.  Photograph depicting wet, water stains and soot like residue on stacked cocoa beans.
  17.  Photograph depicting standing water adjacent to stacked and spilled cocoa beans.
  18.  Photograph depicting wet, water and soot stains on stacked cocoa beans.
19a-b.  Mold & mildew like growth on floor after moving pallet of cocoa beans.
  20.  Mold & mildew like growth on bed of pallet after restacking cocoa beans.

07 - 014

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Fireman's Fund Insurance Company aso Transmar Commodity Group, Ltd.

**DEFENDANTS**
United Cocoa Processor, Inc.

(b) County of Residence of First Listed Plaintiff  Marin, Ca.
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant New Castle, De.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number) Graham, Miller Attorneys (If Known)
Neandross, Mullin & Roonan, LLC, 2350
Broadway, New York 10024 (212)-877-4486

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
- (For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure 28 USC 157 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. 1332
Brief description of cause: Negligence

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 237,311.50
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE ___ DOCKET NUMBER ___

DATE 1/5/07
SIGNATURE OF ATTORNEY OF RECORD William Mullin

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE
-----------------------------------------------------X

FIREMAN'S FUND INSURANCE COMPANY a/s/o
TRANSMAR COMMODITY GROUP LTD.,

                          Plaintiff,          Case No.    0 7 - 0 1 4

              v.                              COMPLAINT

UNITED COCOA PROCESSORS, INC.,

                          Defendant (s).
-----------------------------------------------------X

Plaintiff Fireman's Fund Insurance Company a/s/o TRANSMAR Commodity

Group Ltd., by its attorneys, Graham, Miller, Neandross, Mullin & Roonan, LLC.,

complaining of the defendant, states:

## PARTIES

1. At all times hereinafter mentioned, plaintiff is a corporation duly existing as an

insurance company under the laws of the State of California, with its principal place of

business located at 777 San Marin Drive, Novato, California 94998.

2. At all times hereinafter mentioned, plaintiff is subrogated to all right, title and

interest of any claim Transmar Commodity Group Ltd. has against the defendant United

cocoa Processor, Inc., as a result of its payment of $237,311.50  to under a policy of

insurance issued by the plaintiff to the its insured.

3. Upon information and belief, at all time hereinafter mentioned, defendant

United Cocoa Processor, Inc. is a corporation duly existing under the laws of the State of

Delaware, with its principal place of business located at 701 Penqader Drive, Newark,

Delaware 19702.

## JURISDICTION

4. This Court has jurisdiction over this action under 28 U.S.C. 1332 since there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

## FIRST CAUSE OF ACTION

5. On or before December 2, 2005, Transmar delivered into defendant's possession, in good order and condition, various quantities of cocoa product for storage and processing at a facility located at 701 Pencader Drive, Newark, Delaware.

6. On December 2, 2005, there was a fire in defendant's facility, which caused damage to Transmar's cocoa in the amount of $237,311.50, an amount which was paid by the plaintiff to Transmar.

7. The fire which damaged the cocoa was the sole result of defendant's negligence and neither plaintiff or Transmar was comparatively negligent.

8. As a result of defendant's negligence, plaintiff suffered a loss of $237,311.50.

## SECOND CAUSE OF ACTION

9. Plaintiff repeats and reiterates each and every allegation contained in the First Cause of Action with the same force and effect as if herein set forth anew.

10. The damage to the cocoa was the sole result of defendant's breach of a contract in bailment and at law.

11. As a result of defendant's breach of contract, plaintiff suffered a loss of $237,311.50.

WHEREFORE, plaintiff respectfully requests a judgment in favor of the plaintiff against the defendant in the sum of $237,311.50, with interest from December 2, 2005,

plus costs, expenses, attorneys' fees and such other relief which the Court deems just and

proper.

DATED:          December 29, 2006
                New York, New York

                                GRAHAM, MILLER, NEANDROSS,
                                MULLIN & ROONAN, LLC.
                                Attorneys for the Plaintiff
                                2350 Broadway
                                New York, New York 10024
                                (212) 877-4486
                                (212) 877 - 4487 (Fax)
                                Email : wjm@grahammiller.com

                                By _____
                                    William Mullin (WM-5318)

                                TIGHE & COTTRELL, P.A.
                                Local Counsel for Plaintiff   Bar ID #29
                                704 North King Street, Suite 500
                                P.O. Box 1031
                                Wilmington, Delaware 19899
                                302-658-6400
                                302-658-9836
                                Email: m.tighe@tighecottrell.com

                                By _____
                                    Michael Tighe

By Deputy Clerk
UNITED STATE DISTRICT COURT
DISTRICT OF DELAWARE
------------------------------------------------------------X

FIREMAN'S FUND INSURANCE COMPANY a/s/o
TRANSMAR COMMODITY GROUP, LTD.,

                Plaintiff,

       -against-

UNITED COCOA PROCESSOR, INC.,

             Defendant(s).
------------------------------------------------------------X

Case No.

0 7 - 0 1 4

RULE 7.1
STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable judges

and magistrates to evaluate possible disqualification or recusal, the undersigned attorney

for the plaintiff certifies that the following are corporate parents, subsidiaries, or affiliates

of the plaintiff:

                Allianz Insurance Company

DATED:     December 29, 2006

                           William Mullin (WM-5318)
                           Graham, Miller, Neandross,
                           Mullin & Roonan, LLC.
                           Attorneys for the Plaintiff
                           2350 Broadway
                           New York, New York 10024
                           (212) 877-4486

                           Michael Tighe, Local Counsel  Bar # 29
                           Tighe & Cottrell, P.A.
                           704 King Street
                           P.O. Box 1031
                           Wilmington, DE 19899
                           (302) 658-6400

2007 JAN -9 PM 4:11

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

AO 85 (Rev. 8/98) Notice, Consent, and Order of Reference — Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT

District of _____

| | |
|---|---|
| Plaintiff<br>V. | NOTICE, CONSENT, AND ORDER OF REFERENCE —<br>EXERCISE OF JURISDICTION BY A UNITED STATES<br>MAGISTRATE JUDGE<br><br>Case Number:   0 7 - 0 1 4 |
| Defendant | |

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c), and Fed.R.Civ.P. 73, you are notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a magistrate judge. If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any magistrate judge or to the district judge to whom the case has been assigned.

An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

| Party Represented | Signatures | Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

## ORDER OF REFERENCE

IT IS ORDERED that this case be referred to _____
United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.

_____          _____
Date                                         United States District Judge

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT ONLY IF ALL PARTIES HAVE CONSENTED ON THIS FORM TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

## Hughes,Robert D

**From:** Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:** Tuesday, December 12, 2006 9:44 AM
**To:** Hughes,Robert D
**Subject:** Fire At United Cocoa Warehouse O/RF: 20032675 Transmar Without Prejudice

Dear Mr. Hughes,

Just a courtesy mail to advise you that after our last talk, I did review the file completely and discussed with my Director, but the gap between us was too wide and so this file has been passed to our litigation department.

I really came to the conclusion that the weight of the evidence was largely in our favor.

Thank you for your time in looking at this file.

Best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

**From:**    Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:**    Friday, December 01, 2006 3:38 PM
**To:**    Hughes,Robert D
**Subject:** Fire At United Cocoa Warehouse O/RF: 20032675 Transmar Without Prejudice

Dear Mr. Hughes,

I phoned you twice this week and left voice messages.

Can we please deal with this next week without fail or I will have to hand back to the litigation guys.  The state of our expert evidence is much better now and we would be even more justified in going ahead with suit now.

Please consider our proposal to avoid costly proceedings and let us speak on Monday.

Best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

| | |
|---|---|
| **From:** | Don Soutar [DSoutar@CRAIG-IS.com] |
| **Sent:** | Thursday, November 09, 2006 11:11 AM |
| **To:** | Hughes,Robert D |
| **Subject:** | Without Prejudice United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT |

Dear Mr. Hughes,

We have identified the $38K you could not account for.  It was the quantity of beans in the processing room that were a total loss as a result of the fire and were outright condemned and destroyed.  See below.

| | | |
|---|---|---|
| Beans Within Processing Room condemned By FDA | 22.6231375.1 | $ 34,219.78 |
| Ocean Freight for 23,841 MT (22.623 + tare?) | | $ 1,981.31 |
| Trucking (23,841 MT) | | $   977.15 |
| Disposal By Waste Management (23,841 MT) | | $ 1,180.13 |
| | | $38,358.37 |

(note includes 10% policy uplift)

On the basis of this, any "nuisance value" settlement could not be less than this amount plus legal fees etc.

We will speak on Monday

> Don Soutar
> Ocean Marine Product Manager
> **CRAIG/is** Ltd.
> 904.807.2549  voice
> 904.807.2649  fax
> dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

# Hughes,Robert D

**From:**    Don Soutar [DSoutar@CRAIG-IS.com]

**Sent:**    Wednesday, November 08, 2006 5:17 PM

**To:**    Hughes,Robert D

**Subject:** Without Prejudice United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW
URGENT

Dear Mr. Hughes,

Thank you for taking the time out of your busy schedule to speak with me today.

I am taking note of the points you make for the purposes of wp amicable resolution.  Giving force to your points,
the discounted claim would appear as follows:

113.053 mt of beans destroyed

Ivory coast 77.953 x $1685 = $131,350.80
Ecuador 15.249 x $1653 = $ 25,206.59
Togo 19.869 x $1685 = $ 33,479.26

| | |
|---|---|
| Total | $190,036.65 |
| Plus costs of destruction | $ 14,172.75 |
| Transport | $ 1,950.00 |
| Stripping & handling | $ 1,998.00 |
| Storage | $ 2,660.48 |
| Grand total: | $210,817.88 |

I have excluded:
10% policy uplift $ 19,003.66
and $38,000.00 figure you could not recognize.
If we take the view that half the beans were a total loss and that the costs of reconditioning and income on
resale amounted to half of the balance, would produce a new loss figures of $95,018.32 plus $47,509.16 =
$142,527.48 plus the above destruction costs etc would produce a total reduced claim amount after all
discounts and reconditioning and salvage of = $163,308.71.

Were we to litigate, this is the figure we would most likely recover plus of course interest and applicable
costs.  we may recover more as the value of the beans may not be as high as we have allowed above and you
would have to pay legal costs plus a higher award.

As a result, this is a fair figure to arrive at between us and I would be willing to recommend that we accept
this sum to dispose of this matter without resort to litigation or paying experts to substantiate or disprove
these figures.

Mr. Hughes, this is my bottom line.  If you can not agree this then we will have to litigate.  I have come down a
great deal and this reflects the force I have given to your arguments and points, but I can not reduce further.
This is the "out of the door price", if you wish to dispose amicably.

Once suit is filed we will not be considering sums this low as extra funds will be spent and the attorney will be
entitled to his fee.

Please consdier seriously and get back to me by Monday.  This case is worth much more than nuisance value.
We are able to prove most of the loss.  Your points only go to reconditioning and salvage value, which on any
view, can not be more than the allowances given above.  I believe I have been realistic with these in the spirit

ofamicable resolution.

Best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

**From:**   Don Soutar [DSoutar@CRAIG-IS.com]

**Sent:**   Wednesday, November 08, 2006 12:54 PM

**To:**   Hughes,Robert D

**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

I can not understand why you have not kept your word and agreed to speak with me this week early as discussed and it is now Wednesday and I have been unable to reach you, getting voice mail every time I call since the end of last week.  At least 5 calls yesterday and 3 today.

As a result, I have had to take the matter further and look forward to being able to reach you.  You must understand it is important to me personally to close this out with you.

I am not going to go away.  I again renew my request for you to call to discuss this matter and I only have a day or so left before I will be forced to escalate.

Best regards (still!)

Don Soutar
Ocean Marine Product Manager
**CRAIG/is Ltd.**
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

**From:** Tom Burns [TBurns@CRAIG-IS.com]

**Sent:** Thursday, November 02, 2006 8:57 AM

**To:** Hughes,Robert D

**Subject:** Subject: United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 Without Prejudice

Dear Mr. Hughes,

As Don Soutar has previously given your until October 31 to hold off potential litigation.   As per the LOR the file is now on my desk for review.   Please provide your response by Tuesday November 7th.

Regards,


Tom Burns

Associate

CRAIG/is Ltd.

904.807.2750    voice

904.807.2850    fax

tburns@craig-is.com


This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

**From:** Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:** Monday, October 23, 2006 9:30 AM
**To:** Hughes,Robert D
**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

I set out below, email from our insured giving reasons why this Fire/Smoke damaged product could not be salvaged in this instance.

Please also note the attached article form an expert para 6-Flavours, to say that Smoke is one of the worst "off" or "foreign" flavors that affect cocoa. Note also his comment about selling "deoderized" product. Some houses will not buy. Concerns about product recall by insured seem valid.

From: Danny McNamara [mailto:Daniel.McNamara@TransmarUSA.com]
Sent: Friday, October 20, 2006 5:20 PM
To: Don Soutar
Subject: RE: Transmar/UCP Cocoa Fire claim:20032675


Mr. Soutar

Good day

Confirming our telephone conversation of yesterday I will like to explain why it was impossible to recondition - safely.

Normal reconditioning of cocoa bean are done regularly as a result of mold / moisture that damages the beans. The cocoa can be skimmed and good cocoa rebagged.

This situation is different. Cocoa is hydroscopic and absorbs odors. As a result of the fire on the roof of the whse---fire retardents, pieces of the roof, water .....fell on the cocoa --plus the presence of smoke I have experience in sampling cocoa that has been in warehouse fires and results vary from bag to bag. It not only would be cost prohibitive but completely impossible to "recondition" bean that are effected or not effected by smoke. This product and it deriaties find there way into the food chain (Hershey, Nestle, M&M Mars) and it would be unethical to market these beans and be subject to a far greater problem- product recall.

I will be traveling next week so should you need further information I will reply in one weeks time

Regards
Daniel McNamara
SVP
Transmar Commodity Group

I consider I have now successfully answered all of your points and would ask that you agree this matter may be settled on the discounted sum previously put to you.

I would ask that you respond within this week, as the pressure on me continues to hand over to the lawyers.

2/13/2007

Best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com


This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

# Cocoa Butter Quality

Hugh Nickless, Cocoa & Chocolate Consultants Ltd, Robin Hill, Steep, Hampshire GU32 2DP, United Kingdom. Tel: +44 1730 266 321, Fax: +44 1730 268 024

hughnickless@btclick.com

Hugh Nickless is a director of Cocoa & Chocolate Consultants Ltd., a UK based independent technical and operational consultancy providing advice and guidance to companies involved in the processing of cocoa, production of cocoa products and the manufacturing of cocoa and chocolate products world-wide.

His article covers the following topics:

1. Introduction
2. Geographic area of cultivation
3. Post-harvest processing
4. Overall bean quality
5. Processing of cocoa to cocoa products
6. Flavours
7. Conclusion

## 1. Introduction

Cocoa butter is the fatty component of the cocoa bean and constitutes approximately 45% of the whole bean. While cocoa butter has a number of uses other than the production of chocolate, cosmetics and pharmaceuticals, its use as an ingredient in chocolate accounts for some 95% of all cocoa butter consumption.

The majority of chocolates contain in the region of 30-35% of fatty material, of which cocoa butter is the major part. Therefore it is understandable that cocoa butter will be required to conform to a range of quality standards. However cocoa butter is a natural material which is liable to variation and end users are usually looking for reliably consistent feed stocks in order to ensure conformity of processing and continued consumer satisfaction. The primary concern of the chocolate manufacturer is that their client, the consumer, is always fully satisfied with the confection they purchase.

Ideally the confection should meet all the expectations of the consumer each and every time the product is purchased and eaten. Since confectionery is usually purchased as a pleasurable luxury, the key attributes of flavour, aroma and texture, together with an expectation of wholesomeness and visual appeal, are of prime importance.

It is therefore clear that the chocolate industry requires the chocolates they produce to meet a wide range of quality standards:

- The most important attributes are those relating to food safety, which are of increasing concern to both consumers and manufacturers. These safety attributes encompass microbiological standards (especially pathogens), pesticide residues, toxic metals and physical contaminants.

- The chocolate industry is concerned with those attributes which are considered important to the consumer. These include flavour, colour, mouth feel, texture,

hardness and appearance.

- The industry is concerned with those attributes which influence the manufacturing performance within production. For the fatty constituent of chocolate these include temperability, setting rates, contraction and stability.

In general terms, four parameters are responsible for the overall quality of a cocoa butter.

Back to Start

## 2. Geographic area of cultivation

It is well understood that cocoa butters from different regions exhibit differing physical and flavour properties. Generally, cocoa butters from south east Asia are harder than those from the south and central Americas with those from west Africa falling somewhere in between; with Papua New Guinea butter being the hardest and Brazilian the softest. These differences in hardness generally carry over to the other physical properties of butters, including temperability, contraction and setting rates. By careful blending of differing cocoa butters a range of physical properties can be created although it must be understood that the degree of difference is in reality, quite small.

Figure 1 below shows the cocoa flower and the immature cocoa pods on the tree.



Figure 2 below shows the mature cocoa pods ready for harvesting.



Figure 3 below shows the inside of a pod with the cocoa beans. In the foreground are beans with the skin removed to show the purple cotyledons which turn brown on fermentation.



Flavour of the cocoa bean (when fermented and dried), and thus of the natural cocoa butter, is also influenced by geographic region although this is more often to do with the genetic type of cocoa grown in one area compared to another. The reasons for these differences are not well understood but are certainly influenced by type of cocoa grown, growing conditions, weather, soil types and differences in farming techniques.

Back to Start

### 3. Post-harvest processing

The fermentation and drying of cocoa post-harvest can have marked effects on both flavour and physical properties. Poor fermentation can lead to unfermented beans, purple and "slatey" beans which typically lack the characteristic flavours and colours required by

FEB. 6. 2006  2:13PM    AJG NY NY                    UNITED COCOA          NO. 0102   P. 14
01/27/2006  11:16     392....0046



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Food and Drug Administration
Wilmington Resident Post
920 King Street, Room 409
Wilmington, DE 19801
Telephone: (302) 573-8447
FAX: (302) 573-6398

January 11, 2006

Mr. Adriano de Silva
Director of Human Resources
United Cocoa Processor, Inc.
701 Pencader Drive
Newark, DE 19702-3311

Dear Mr. de Silva:

We enclose a copy of the Establishment Inspection Report (EIR) for the inspection
conducted at your premises at Newark, DE on January 7, 2006 to January 12,
2006 by Investigators Stephaine C. Mangigian of the Food and Drug
Administration (FDA). This procedure is applicable to EIRs for inspections
completed on or after April 1, 1997. For those inspections completed prior to the
above date, a copy of the EIR may still be made available through the Freedom of
Information Act (FOIA).

The Agency is working to make its regulatory process and activities more
transparent to regulated industry. Releasing the EIR to you is part of this effort.
The copy being provided to you comprises the narrative portion of the report; it
may reflect redactions made by the Agency in accordance with the FOIA and 21
CFR Part 20. This, however, does not preclude you from requesting and possibly
obtaining additional information under FOIA.

If there is any question about the released information, feel free to contact me at
the address indicated on the letterhead.

Sincerely,



Michael D. O'Meara
Supervisory Investigator

MDO/lcc

Enclosure: EIR.

FEB. 6. 2006  2:13PM     AJG NY NY                                          NO. 0102  P. 15/18
01/27/2006  11:16    3021    826               UNITED. COCOA

**Establishment Inspection Report**            FEI:            3004333578
United Cocoa Processor, Inc.                    EI Start:       12/07/2005
Newark, DE  19702-3311                          EI End:         12/12/2005

SUMMARY.............................................................................................................1
HISTORY..............................................................................................................2
INTERSTATE COMMERCE/JURISDICTION..................................................2
INDIVIDUAL RESPONSIBILITY AND PERSONS INTERVIEWED..................2
MANUFACTURING/DESIGN OPERATIONS ...................................................2
MANUFACTURING CODES .................................................................................2
COMPLAINTS........................................................................................................3
RECALL PROCEDURES........................................................................................3
REFUSALS .............................................................................................................3
GENERAL DISCUSSION WITH MANAGEMENT................................................3
ADDITIONAL INFORMATION ...........................................................................3
EXHIBITS COLLECTED .......................................................................................6
ATTACHMENTS ...................................................................................................8

## SUMMARY

This directed inspection of a cocoa bean processor contract manufacturer was conducted in accordance with PHI DO FY 2006 work plan and in accordance with C.P. 7303.803, Domestic Food Safety Program. This inspection was initiated as a follow up to a fire that occurred at the firm on 12/2/05; under FACTS assignment #697411 and Operation ID #2648730.

The previous inspection dated 1/11, 12/05 was classified as

The current inspection revealed the firm continues to be a cocoa bean processor contract manufacturer. The firm processes cocoa beans into cocoa cake, cocoa butter, cocoa liquor and cocoa powder. This inspection did not reveal any unsanitary conditions other than those associated with the fire. The firm was not issued a FDA-483, Inspectional Observations. On 12/12/05, close out meeting, two items were addressed concerned: 1) the disposition of finished product located in the production and 2) the final disposition of raw ingredients that were affected by the leak in the roof due to the fire. Mr. da Silva stated he would contact FDA for follow up information regarding these two items. No avian or rodent activity was noted.

Inspected firm:. .... ....United Cocoa Processor, Inc.
Location:         701 Pencader Dr
                  Newark, DE  19702-3311
Phone:            302731-0825
FAX:              (302)731-0825



**Establishment Inspection Report**
United Cocoa Processor, Inc,
Newark, DE  19702-3311

|  |  |
|---|---|
| FEI: | 3004333578 |
| EI Start: | 12/07/2005 |
| EI End: | 12/12/2005 |

Mailing address:    701 Pencader Dr
Newark, DE  19702-3311

Dates of inspection:    12/7/2005, 12/12/2005
Days in the facility:    2
Participants:    Stephanie C Mangigian, Investigator

On 12/7/05, I displayed my credentials and issued a FDA Notice of Inspection to Adriano da Silva, Director of Human Resources and Operations. Mr. da Silva stated he was the most responsible person at the firm.
All FDA correspondence should be addressed to Mr. Adriano da Silva at the above address.

## HISTORY
According to Mr. da Silva, the history of the firm has not changed since the last inspection dated, 1/12/05..

## INTERSTATE COMMERCE/JURISDICTION
According to Mr. da Siva, all the cocoa beans used in manufacturing are received either directly from importers or by brokers who arranges the importing of cocoa beans. Mr. da Silva stated that all the cocoa beans are owned by customers. The firm contracts with these customers to manufacture the cocoa beans into various intermediary ingredients. The firm processes cocoa beans into cocoa cake, cocoa butter, cocoa liquor and cocoa powder.

## INDIVIDUAL RESPONSIBILITY AND PERSONS INTERVIEWED
Mr. da Silva stated the only change in the firm responsibility personnel is Mr. Peter Liu, President and Ian Liu, Accounting and Controller are no longer working at United Cocoa Processors Inc., (UPC). Paul Liu and Janet Liu have assumed the responsibilities until the positions are filled. Information regarding the firm manufacturing operations and the fire incident was obtained from Mr. da Silva.

## MANUFACTURING/DESIGN OPERATIONS
The firm's manufacturing operations had ceased since the fire dated on 12/2/05. The firm is in the process of waiting for structural repair of the damaged areas before resuming manufacturing operations.

## MANUFACTURING CODES
According to Mr. da Silva, the firm continues to use the same specific for each client (refer to Exhibit#1). For example: Lot: TRC 161~ TR (Transmar Commodity Group) C= Cocoa cake and 161=sack number.



| Establishment Inspection Report | FEI: | 3004333578 |
|---|---|---|
| United Cocoa Processor, Inc. | EI Start: | 12/07/2005 |
| Newark, DE 19702-3311 | EI End: | 12/12/2005 |

**COMPLAINTS**

According to Mr. da Silva, the firm had no complaints since the last inspection.

**RECALL PROCEDURES**

The firm has a recall procedure but, has not had any recalls.

**REFUSALS**

There were no refusals encountered during this inspection.

**GENERAL DISCUSSION WITH MANAGEMENT**

At the close of the inspection the only discussion addressed was regarding the final disposition of cocoa powder and cocoa cake that was located in the production room at the time of the fire. Exhibit# 2 is a photograph of the finished product in the production room. Mr. da Silva stated that the firm placed tarp to cover the finished product as seen in Exhibit #3, because it was in the water line of a leak from the roof. Exhibit #4 is a photograph of the blue container that was collecting water from a leak in the roof. Exhibit#5 is a photograph of the water that was on the tarp. According to Mr. da Silva there was no water leaking on the upper portion of the tarp which covered the finished product. During the inspection I examined the top portion of the tarp and did not see any evidence of water only dust apparently from the cocoa powder.

According to Mr. da Silva, the firm will contact FDA regarding the final disposition of the finished product.

**ADDITIONAL INFORMATION**

This directed inspection was to perform a limited inspection because of a fire that occurred at the firm. The information regarding the fire and product information was provided by Mr. Adriano da Silva, Director of Human Resources and Operations at United Cocoa Processor, Inc.

According to Mr. da Silva, a fire started in the Roaster Room approximately 12:00-12:30 PM. The root cause analysis, exact location and damage information has yet to be confirmed by the insurance investigation. Apparently, the roaster stack (exhaust line) caught on fire and the fire spread to the exhaust shaft to the roof. Mr. da Silva provided to me an inventory of the finished product in the production room refer to Exhibit#6, page 1 is a list of cocoa cake and page 2 is a list of the subsequent lot numbers.

The fire spread from the exhaust shafts that lead to the roof. The wind direction at that time of the fire was in the direction of the "Cocoa Bean Room." The membrane on the roof over the "Cocoa Bean Room" was affected.

Exhibits # 7a, b, c, d, are several photographs of different views of the ceiling in the Cocoa Bean Room.

According to Mr. da Silva, there was snow on the roof which melted into the Cocoa Bean Room and onto the cocoa beans. Exhibits #8(a)-(k) are photographs consisting of stacks of burlap bags containing cocoa beans that were in various areas of the cocoa bean room during my inspection. During my inspection of the cocoa bean room, I observed water dripping through the open areas in the ceiling and noted puddles of water on the floor. There was scattered debris on the floor and in

| | | |
|---|---|---|
| **Establishment Inspection Report** | **FEI:** | 3004333578 |
| United Cocoa Processor, Inc. | **EI Start:** | 12/07/2005 |
| Newark, DE 19702-3311 | **EI End:** | 12/12/2005 |

containers as seen in Exhibit #9. I inspected blue, clear plastic and brown tarp covering the cocoa beans and found evidence of water.

When I entered the cocoa bean room, I found the loading dock door open and inquired if this door was open at the time of the fire. Mr. da Silva stated that he was not sure. The loading dock door opened to a trailer of cocoa beans did not appear through my visual examine to be affected by the water damage or fire. Exhibit #10 is a photograph of the contents that were in the trailer which was located adjacent to the cocoa bean room on the loading dock. I photographed labeling from the inside of the trailer. I found commingled lots of cocoa beans refer to one set of labeling in Exhibit # 11 (a) and another set of labeling in Exhibit #11(b). A seen in the floorplan Exhibit #12, the fire started in the roaster room and was confined to this area. However the roof was damaged and therefore affected the product in the cocoa bean room.

Mr. da Silva provided to me interstate documentation of raw ingredients (cocoa beans) that were stored in the trailers located outside on the loading dock at the time of the fire.
Exhibit #15 is a copy of trailer # 728, Bill of Landing No. 38968 consisting of 308 bags of cocoa beans
Exhibit #16 is a copy of trailer#727 Delivery Order No. 02840 consisting of 363 bags of cocoa beans
Exhibit #17 is a copy of trailer # 726 Delivery No. 02840 consisting of 363 bags of cocoa beans that was located in the trailers located at the dock doors at the time of the fire and will be returned to their customer Transmar Commodity Group.

Mr. daSilva and I walked through the building to the warehouse where I found a large amount of stored finished product (refer to photograph in Exhibit# 13 (a) and (b)). The warehouse did not appear to be affected by the fire.
Exhibit #12 is a floor plan Mr. da Silva provided to me. Mr. da Silva annotated the areas where finished product is stored and the affected areas after the fire. Mr. da Silva stated there was approximately 1000 ton of finished product in the warehouse. I asked if the firm distributed any product since the fire 12/2/05. Mr da Silva stated the firm shipped to two customers in Wisconsin and Pennsylvania. Mr. da Silva stated on 12/2/05, after the fire, Dr. Llewellyn, from the Delaware Health Department visited the firm. According to Mr. da Silva, Dr. Llewellyn stated the finished product stored in the warehouse as seen in Exhibit #13(a) and (b), was "okay to ship."

During the inspection I collected the following documentation:
Exhibit#18 a copy of a current list of inventory stock which is located in the Warehouse and Shipping Room that the firm manufactured, stored and distributed during the period after 12/2/05: this consists of Lot's 185, 188, 192, 202, 211, 217, 258, 259, 261, 262, and 263 of cocoa cake. Lot's 201, 230, 260, 264 consists of cocoa powder. Lot's 274-293, 308-329, 273, 294-307, 330-339 consists of cocoa cake.-192 and 202 through 's from 185 through 339 of cocoa cake; Lot's H179-H182, H69,H66, H67, H55, H59, H68, Pare Kraft, IDC O, RC Cake UCP, ADM#15, BD&F Man#61 and #62, M511/512, IDC#' 24, 25, 10, 11.

| Establishment Inspection Report | FEI: | 3004333578 |
|---|---|---|
| United Cocoa Processor, Inc. | EI Start: | 12/07/2005 |
| Newark, DE  19702-3311 | EI End: | 12/12/2005 |

I requested and received interstate documents for Liquid Cocoa Butter which was shipped to Hershey, PA (Exhibit #19) along with interstate documents for Chocolate Liquor shipped to Milwaukee, WI (Exhibit #20).

I requested and received copies of the Driver Delivery Order and P.O.D., Diamond Freight Distribution Co., Inc. for products shipped to PA (liquid cocoa butter) and WI (chocolate liquor)(refer to Exhibit#21, pgs. 1-9).

Mr. da Silva and I walked through an open area into an adjacent room which Mr. da Silva called the shipping room as seen in Exhibit #12 floor plan. The finished product located in this area did not appear to be affected by the fire (refer to Exhibit #14).

The shipping area leads into the mechanical repair area and into the production area. The wall of the production area is shared with the cocoa bean room. I did not visualize any fire damage to the wall however; the ceiling near the wall was leaking water. There was a blue container collecting the water (refer to Exhibit# 4). The finished product located in this production room (as annotated in Exhibit #12 floor plan and seen in Exhibit#2 and 3) are questionable as far as if the product was damaged by water or smoke. I did not visualize water on the finished product containers, only on the tarp that is seen in Exhibit #5. The containers as far as I could review were intact with no apparent openings or container damage. Mr. da Silva stated this finished product has yet to be determined its final disposition because the firm needs to perform a quality control on each lot. I collected a representative interstate documentation (Exhibit#22 (pgs. 1, 2) BILL OF LANDING No. 38644 for Lot# 286 of cocoa beans originating from Ivory Coast used to manufacture cocoa powder and cocoa cake that was stored in production room during the time of the fire.

<u>Additional documentation obtained during the inspection</u>

The following interstate documents relate to the raw ingredients that were located in "Cocoa Bean Room" during the time of the fire:

Exhibit#23 is a copy of Bill of Landing#187201, Transmar Commodity Group for 290 bags of cocoa beans weight 44950 kg. Trailer #717.

Exhibit#24 is a copy of Bill of Landing No. 38961, American Warehouse of New York, Transmar Commodity Group, quantity 308 bags of cocoa from Ivory Coast Trailer #716.

Exhibit#25 is a copy of Bill of Landing No. 38957, American Warehousing of New York, Transmar Commodity 308 bags of cocoa from Ivory Coast Trailer #713.

Exhibit#26 is a copy of Delivery Order#02840, Transmar Commodity Group, Ltd., 362 bags Trailer #725.

Exhibit#27 is a copy of Bill of Landing No.38964, American Warehousing of New York, Inc., Transmar Commodity Group 308 bags of cocoa from Ivory Coast Trailer #724.

Exhibit#28 is a copy of Bill of Landing No. 38962, American Warehousing of New York, Inc., 308 bags of cocoa, Transmar Commodity Group, from the Ivory Coast Trailer # 718.

FEB. 6. 2006  2:14PM    AJG NY NY          UNITED COCOA          NO. 0102   P. 20 08/18

**Establishment Inspection Report**                    FEI:         3004333578
United Cocoa Processor, Inc.                            EI Start:    12/07/2005
Newark, DE 19702-3311                                   EI End:      12/12/2005

An Affidavit (Attachment FDA Form 463a) was written explaining the fire which happened on 12/2/05 along with:
*Current inventory of finished product that was located in the warehouse, shipment room and production rooms; *I/S documentation of finished product sent to Milwaukee, WI and Hershey PA after 12/2/05; *exemplary I/S documentation of the inventory list of finished product located in production room that the firm has not determined the final disposition; *interstate shipment (I/S) documentation of product that was located in the "Cocoa Bean Room" where the snow melted on the roof; and *I/S documentation of raw ingredients that were stored in the trailers that were located on the loading docks.
Correction for FDA 463a Affidavit page 2, #8 stating "... The following interstate documents relate to the raw ingredients that will be returned to customer, Transmar Commodity Group that was located in "Cocoa Room..." should state "Cocoa Bean Room."

On 12/12/05, Mr. da Silva stated the firm was contacted by their customer Transmar Commodity Group regarding the disposition of the raw ingredients that were affected by the melted snow in the cocoa bean room. Mr. da Silva stated Transmar Commodity Group will ship all affected raw ingredients that were in the cocoa bean room and transport them out of UCP facility. Mr. da Silva did not have knowledge of the date or location where the product will be shipped to or when this transaction where this will be taking place. I requested that as soon as he has knowledge to please contact me at the FDA Wilmington, DE Resident Post office upon receipt of instructions and he agreed.
Additional Photographs:
Exhibit # 28 is a photograph of roaster sack exhaust line
Exhibit # 29 is a photograph of the opposite side of the roaster stack seen in Exhibit #28
Exhibit # 30 is a photograph of two additional lines which connect to the roaster

**EXHIBITS COLLECTED**
1. Firm's example of manufacturing codes
2. Photograph of the finished product in the production room.  3. Photograph of tarp covering finished
4. Photograph of the blue container that was collecting water from a leak in the roof
5. Photograph of the water that was on the brown tarp
6. Page 1 is a list of cocoa cake; Page 2 is a list of the subsequent lot numbers.
7. (a-d) are several photographs of different views of the ceiling in the Cocoa Bean Room. According to Mr. da Silva, there was snow on the roof which melted into the Cocoa Bean Room and onto the cocoa beans
8. (a-k) are photographs consisting of stacks of burlap bags containing cocoa beans that were in various areas of the cocoa bean
9. Debris on the floor and in containers
10. Photograph of the contents that were in the trailer which was located adjacent to the cocoa bean room on the loading dock. .

Page 6 of 8

**Establishment Inspection Report**
United Cocoa Processor, Inc.
Newark, DE 19702-3311

| | |
|---|---|
| FEI: | 3004333578 |
| EI Start: | 12/07/2005 |
| EI End: | 12/12/2005 |

11. (a) is a photograph of an exemplary labeling on cocoa beans that were stored in the trailer that was on the loading dock; (b) is a photograph of an exemplary amount of finished product that was stored in the warehouse.

12. Firm's floor plan; Mr. da Silva annotated the areas where finished product is stored and the affectedareas after the fire

13. (a) and (b) finished product located in the shipping area

14. However, the product located in the production room (as annotated in Exhibit #12 floor plan and seen in Exhibit#2) have yet to be determined its final disposition.

15. is a copy of trailer # 728, Bill of Landing No. 38968 consisting of 308 bags of cocoa beans

16. is a copy of trailer#727 Delivery Order No. 02840 consisting of 363 bags of cocoa beans

17. is a copy of trailers # 726 Delivery No. 02840 consisting of 363 bags of cocoa beans that was located in the trailers located at the dock doors at the time of the fire

18. a copy of a current list of inventory stock which is located in the Warehouse and Shipping Room: this consists of Lot's 185, 188, 192, 202, 211, 217, 258, 259, 261, 262, and 263 of cocoa cake. Lot's 201, 230, 260, 264 consists of cocoa powder. Lot's 274-293, 308-329, 273, 294-307, 330-339 consists of cocoa cake.-192 and 202 through 's from 185 through 339 of cocoa cake; Lot's H179-H182, H69,H66, H67, H55, H59, H68, Parc Kraft, IDC O, RC Cake UCP, ADM#15, ED&F Man#61 and #62, M511/512, IDC#' 24, 25, 10, 11.

19. a copy of BILL OF LANDING dated 12/05/2005 documenting shipment of United Cocoa Processors, Inc. to ADM Cocoa Division Chocolate Plant located in Milwaukee, WI Ivory Coast Chocolate Liquor block melted product # 111905, net weight 47760 lbs.

20. a copy of a current list of inventory stock which is located in the Warehouse and Shipping Room

21. Pages. 1-9 are copies of the Driver Delivery Order and P.O.D., Diamond Freight Distribution Co., Inc. documents for Lot's TRC 223, TRC 225TRC 226, TRC 227, TRC 231, TRC 231, TRC 258, TRC 259, TRC 261 and TRC 262.

22. a copy of a representative BILL OF LANDING No. 38644, American Warehousing of New York, Delivery Order from Transmar Commodity Group; Page 2 has a Bill of Landing # 67227, but, Mr. da Silva stated this was together on Trailer 620.

23. a copy of Bill of Landing#187201, Transmar Commodity Group for 290 bags of cocoa beans weight 44950 kg. Trailer #717.

24. a copy of Bill of Landing No. 38961, American Warehouse of New York, Transmar Commodity Group, quantity 308 bags of cocoa from Ivory Coast Trailer #716.

25. a copy of Bill of Landing No. 38957, American Warehousing of New York, Transmar Commodity 308 bags of cocoa from Ivory Coast Trailer #713.

26. a copy of Delivery Order#02840, Transmar Commodity Group, Ltd., 362 bags Trailer #725.

27. a copy of Bill of Landing No.38964, American Warehousing of New York, Inc., Transmar Commodity Group 308 bags of cocoa from Ivory Coast Trailer #724

28. a copy of Bill of Landing No. 38962, American Warehousing of New York, Inc., 308 bags of cocoa, Transmar Commodity Group, from the Ivory Coast Trailer # 718.

29. is a photograph of roster sack exhaust line

FEB. 6. 2006, 2:14PM   AJG NY NY           UNITED COCOA          NO. 0102   P. 22  10/10

**Establishment Inspection Report**                                              FEI:        3004333578
United Cocoa Processor, Inc.                                               EI Start:   12/07/2005
Newark, DE 19702-3311                                                      EI End:     12/12/2005

30. is a photograph of the opposite side of the roaster stack seen in Exhibit #29
31. is a photograph of two additional lines which connect to the roaster

**ATTACHMENTS**
FDA 482, Notice of Inspection, issued to Mr. Adriano da Silva
FDA 463a, Affidavit, signed by Mr. Adriano da Silva
FDA 525 with photo negatives and digital disk

*Stephanie C Mangigian*
Stephanie C Mangigian, Investigator

Page 8 of 8

FEB. 6. 2006  2:14PM    AJG NY NY                    UNITED COCOA          NO. 0102  P. 23



TRANSMAR TOLLING - Incomming Beans
TOLLING # 12                        NOVEMBER 05

FEB. 6. 2006  2:15PM   AJG NY NY   NO. 0102   P. 24

# FiMAT
**A SOCIETE GENERALE BUSINESS**

**Friday** | **COCOA MARKET REPORT** | **December 2, 2005**

*[Dense price and statistics tables — London, New York, spreads, support & resistance, volumes, stochastics, moving averages, currency crosses, and COT data — are not legibly reproducible.]*

The Mch06 contract in London ended marginally higher today as the continuation of fund buying from Thursday's £31 eruption helped to send the spot month to a new 11-week high in more moderate trading conditions. The market printed to a new £13 gain in the first 13 minutes of trading, only to find a torrent of trade and origin selling quickly deflect the market back to pre-New York loss of £8 before a period of consolidation set in. A stronger-than-expected market in New York lifted the gears in London off of the lows to ultimately push the market back into the plus column in the final hours of the day. The market was strong enough to fight off of the inhibitive effects of a rising GB Pound as well as the seemingly negative-effects of the weakening Dec05/Mch06 spread which plummeted to a new contract low of £31 discount. The presence of heavy trade profit taking and aggressive origin selling compressed the arbitrage levels, leaving them at their tightest levels in roughly 3-weeks. The latest rise in world prices helped to loosen up the flow of cocoa today that had previously been accumulating at the ports, particularly from Nigeria and the Ivory Coast.

The New York market provided additional firepower on the upside today as the strength of the GB Pound teamed up with net fund buying of 3500 to 4000 lots to take the Mch06 contract to its highest close since the 13th of September. The surge in spec buying, which followed yesterday's revised estimates of 6000 to 7000 lots, seems to be part of a larger commodity buy program which has seen another huge allocation of long investment commodity money round the CRB's (old) Continuous Commodity Index to an all-time high just today.

Still the gains in cocoa may have also been sentimentally supported by reports of an attack by 20 gunmen on an army barrack in or near Abidjan that was quickly dispersed and resulted in no casualties. The mysterious attack was blamed on the rebels by government sources. However, Reuters reported that Ivory Coast rebels accused the government of staging the unusual attack on the military barracks to "provide President Laurent Gbagbo with an excuse not to attend a meeting of heads of state in Mali" where "everyone would be on his back". Whatever the case, the flow of cocoa was not affected as it was business as usual in Abidjan today.

Regarding the flow of cocoa in the Ivory Coast, there is increasing talk in the trade that the combined weekly arrivals in the ports of Abidjan and San Pedro, which should soon be hitting their seasonal peak of 70,000 tonnes per week, are topping out around 50,000 tonnes. This rumor has some analysts and government officials speculating that the Ivory main crop will not reach 1 million tonnes this season. Caution is advised, however, as the slowdown in "published arrivals" may not always equal "actual" arrivals. For example, in the last several years, we have seen and heard of large upward and unexplained adjustments to the Ivory Coast cumulative arrivals in January and February, sometimes by as much as 30,000 and 100,000 tonnes. That said, more verification of current arrivals may be needed before long term projections of total output can be reliably extrapolated. Notwithstanding any statistical gerrymandering, the month of December has historically proven itself to be a strong seasonally driven "upmonth" for cocoa. In fact, the four weeks in December generally produce the second strongest seasonal rally of the year behind the "Silly Season". Competition for required year-end futures and differential coverage by end-users may explain the rally within the heart of the Silly Season. January thru March, on the other hand, tends to counter any December strength. When all is said and done, the funds are in the midst of reversing a moderately large short position, the world of commodity prices continue to enjoy inflationary pressure and large investment inflows, and the cocoa market in and of itself is looking more technically convincing for the bulls. More gains in the short term should not be unexpected. Regards, Luis Rangel

**Draft Payments Detail Report**

Report run on:    August 16, 2006 12:21 PM

*Asterisk (*) denotes surcharge for un-allocated expenses per state statute.*

Draft_Detail_Rpt.ref

Page 1

| Draft Number | Issue Date | Reason | Pay Status | Payee | Amount | Suffix |
|---|---|---|---|---|---|---|
| 1134257 | 06-MAR-06 | FIRE 05-0914 | C | TRANSMAR COMMODITY GROUP LTD | $38358.37 | CARGO |
| 1134257 | 13-MAR-06 | INTERNAL CORRECTION | C | TRANSMAR COMMODITY GROUP | -$38358.37 | CARGO |
| 1134258 | 13-MAR-06 | INTERNAL CORRECTION | C | TRANSMAR COMODITY GROUP | $38358.37 | CARGO |
| 1136517 | 14-APR-06 | FIRE 05-0914 | C | TRANSMAR COMMODITY GROUP LTD | $150000.00 | CARGO |
| 1141039 | 22-JUN-06 | FIRE A/G # 05-0914 | C | TRANSMAR COMMODITY GROUP LTD | $48953.13 | CARGO |

**Total:**    $237311.50

# ARTHUR J. GALLAGHER & CO. OF NEW YORK

## REVISED--STATEMENT OF CLAIM

AJG Ref. No.: 05-0914                                    Date: June 20, 2006

Insurer: Fireman's

Insured: Transmar Commodity Group

Carrier/Location:    UCP Fire Claims        Date of loss: 11/01/06

Commodity: Cocoa Beans

Nature of Loss:  Fire at processing plant

Insured Value: $  178,171.90
Invoice Value: $  161,974.45
Advance: 10%

Calculation:

| | |
|---|---:|
| a.  Insured value of cocoa bean | $178,171.90 |
| b.  Transportation from UCP to Camden | 1,950.00 |
| c.  Stripping and Handling | 1,998.00 |
| d.  Storage | 2,660.48 |
| e.  Destruction costs | 14,172.75 |
| f.  Total Loss | $198,953.13 |
| g.  Less: Advance payment | ($150,000.00) |
| Balance  Due | $48,953.13 |

# CRAIG/is Ltd.

**Insurance Services**

PO Box 40569   Jacksonville   Florida   32203-0569
Voice 904.807.2500    Fax 904.807.2510

United Cocoa Processing Warehouse
701 Pencader Drive
Newark, DE 19702
And
TRAVELERS INDEMNITY COMPANY
BALTIMORE CL CLM - A007
 PO BOX 17158
BALTIMORE MD 212971158
Claim Number: ABT7329001
Policy Number: IH680300H2301

Dear Sirs,

Re: FFIC Claim Number: 20032675
FFIC Insured: Transmar Commodity
Date of Loss: December 2, 2005
Type of Loss: warehouse/fire Loss
Amount of loss: $130,000.00 or more

This correspondence and all statements herein are in furtherance of settlement
negotiations and as such are privileged and inadmissible. All information is provided on
an informal basis for the purpose of settlement discussions. FFIC and CRAIG/is, Ltd.
reserve all rights relative thereto.

FFIC insures stored product (Cocoa products- beans, cake, powder) of the insured. On
12/2/2005, insured goods were damaged in a fire at your processing warehouse where the
goods were stored. The fire started in the processing room where a stack caught fire. The
DEPT OF HEALTH condemned all cocoa products located in that area of the loss in
consequence of toxic fumes that emanated from the burnt styro foam roof insulation. A
portion of the cargo was wetted due to fire fighting activity.

This caused the insured loss and damage and FFIC paid out $237,311.50 to Transmar
under the policy and now seek recovery by way of subrogation.

We hereby call upon you to pay the sum demanded within 14 days.  Should we fail to
hear, we reserve the right to take such steps as may be necessary to pursue recovery
without further notice to you.

Yours truly,

---

**A Passion for Process™**                    **www.craigis.com**

# CRAIG/is Ltd.

**Insurance Services**

PO Box 40569    Jacksonville    Florida    32203-0569
Voice 904.807.2500    Fax 904.807.2510

United Cocoa Processing Warehouse
701 Pencader Drive
Newark, DE 19702
And
TRAVELERS INDEMNITY COMPANY
BALTIMORE CL CLM - A007
PO BOX 17158
BALTIMORE MD 212971158
Claim Number: ABT7329001
Policy Number: IH680300H2301



Dear Sirs,

Re: FFIC Claim Number: 20032675
FFIC Insured: Transmar Commodity
Date of Loss: December 2, 2005
Type of Loss: warehouse/fire Loss
Amount of loss: $130,000.00 or more

This correspondence and all statements herein are in furtherance of settlement
negotiations and as such are privileged and inadmissible. All information is provided on
an informal basis for the purpose of settlement discussions. FFIC and CRAIG/is, Ltd.
reserve all rights relative thereto.

FFIC insures stored product (Cocoa products- beans, cake, powder) of the insured. On
12/2/2005, insured goods were damaged in a fire at your processing warehouse where the
goods were stored. The fire started in the processing room where a stack caught fire. The
DEPT OF HEALTH condemned all cocoa products located in that area of the loss in
consequence of toxic fumes that emanated from the burnt styro foam roof insulation. A
portion of the cargo was wetted due to fire fighting activity.

This caused the insured loss and damage and FFIC paid out $237,311.50 to Transmar
under the policy and now seek recovery by way of subrogation.

We hereby call upon you to pay the sum demanded within 14 days. Should we fail to
hear, we reserve the right to take such steps as may be necessary to pursue recovery
without further notice to you.

Yours truly,

# A Passion for Process™

**www.craigis.com**

## Hughes,Robert D

**From:**    Hughes,Robert D

**Sent:**    Wednesday, October 04, 2006 2:28 PM

**To:**    'Don Soutar'

**Subject:** RE: United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Mr. Soutar:

I have reviewed the documents that you were kind enough to forward to me based on our 10/3/06 telephone call. The documents raise some additional questions.

Attachment #1:

Mr. McNamara's 3/29/06 e-mail to Mr. Lozer indicates that it is "Impossible to re-condition this fire damaged cocoa" and that ". . . tremendous cost would be incurred." The method of re-conditioning recommended by Transport Marine Surveyors, Inc. was to wash and dry the cocoa beans. There is no evidence presented to this point that the FDA would prohibit any such re-conditioning, only that they be able to approve and supervise any method of re-conditioning. Did Trans-Mar measure the potential cost of re-conditioning the beans? If not, on what basis are they able to make the statement that ". . . tremendous cost would be incurred?" If they did measure the cost and determined that the cost of re-conditioning would be more than the cost of replacing the beans, please provide that computation in support of your demand for payment.

McNamara's e-mail refers to invoking clause 33 "Control of Damaged Goods" To what document is he referring? Is it the insurance contract between Trans-Mar and Fireman's fund? If so, please provide the portion of the policy containing the clause.

Please provide a copy of the PDF document that is attached at the end of McNamara's 3/29/06 e-mail.

Attachment #3

Please provide Trans-Mar's 3/3/06 fax to the FDA referred to in the FDA response.

Other Questions:
You have not yet complied with my request that you provide to me an explanation and supporting documentation regarding the substance of FDA adulteration act #4. Pleas do so.

Currently, based on the information provided, I am not yet convinced that the FDA would not have allowed re-conditioning of the beans and that re-conditioning would have exceeded the cost of storing, destroying and replacing the cocoa beans with new beans.

I'll wait to hear from you.

> -----Original Message-----
> **From:** Don Soutar [mailto:DSoutar@CRAIG-IS.com]
> **Sent:** Tuesday, October 03, 2006 3:28 PM
> **To:** Hughes,Robert D
> **Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT
>
> Dear Mr. Hughes,
>
> Further to our pleasant telecon this morning, I attach documents in support, clarifying the fact that FDA gave a choice of destruction or reconditioning under their supervision.

2/13/2007

The assured considered the matter and concluded that it would be too expensive to recondiation to FDA standards and having a duty to mitigate the loss chose the cheaper option - destruction. They could not sell abroad, without reconditioning as you will see from the attached. They really had no choice but to pick the lesser of two evils.

Please do not hesitate to get back to me with any further queries, but as quite some time has now passed without us coming to amicable resolution, the litigation team have taken the file and are starting to initiate legal proceedings.

As you will appreciate, I am under great pressure to resolve this matter at a satisfactory price, so please get back to me with a formal proposal at the very earliest opportunity.

Kind regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

# Hughes,Robert D

**From:**   Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:**   Tuesday, October 10, 2006 11:14 AM
**To:**     Hughes,Robert D
**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 Without Prejudice

Dear Mr. Hughes,

The clause 33 is attached and shows the assured had final discretion.

Although he tried to mitigate his loss, he was unable to due to expense and or market concerns.

This will not make any difference in the claim as if it is impossible to mitigate, the wrongdoer has to "take his victim as he finds him". The loss is understandable in the circumstances and it is not unreasonable for a trader to wish to protect his market reputation. This type of insurance clause is very common.

As we appear to be getting caught up in detail, I have not been able to make any progress with constructive settlement discussions and so my litigation team are breathing down my neck, and have reviewed the file.

I am obtaining the other information you require concerning the FDA and will get this to you as soon as possible. I do not believe the outcome of this line of inquiry will affect the quantum of the claim by much.

In the meantime, can we not discuss a figure that may be attractive to us both? I had already suggested as follows but you have not responded to this suggestion.

To pay $229,821.54 in full and final settlement.

This offer represents a considerable saving to you if you look at paying full amount plus interest and applicable costs if we litigate this matter and win. I can see no reason why we would not succeed. Fireman's actually paid out a total of $240,920.50. The suggested sum is a considerable discount. nevertheless, to give you credit for the points you raise now, we would be prepared to recommend the sum of $215,000.00 be accepted in full and final. This is our bottom line.

We look forward to hearing from you on the possibility of amicable settlement at this stage.

Best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is Ltd.**
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

2/13/2007

33. **CONTROL OF DAMAGED GOODS AND/OR MERCHANDISE AND/OR PROPERTY:**



Notwithstanding anything to the contrary contained elsewhere in this policy, it is understood and agreed that in case of damage to goods and/or merchandise and/or property insured under this policy, The Assured is to retain control over the disposition of all such goods and/or merchandise and/or property in consultation with these Assurers. It is understood that The Assured shall be the sole judge as to whether disposal or sale of such goods and/or merchandise and/or property is detrimental to its interest. The Assurer shall be given the opportunity to have a representative in attendance.

34. **MACHINERY CLAUSE:**

In case of loss or damage to any part of a machine or other article consisting, when complete for sale or use, of several parts, then in case of loss or damaged covered by this insurance to any part of such machine or article, This Assurer shall be liable only for the proportion of the insured value applicable to the part or parts lost or damaged, or at The Assured's option, for the cost and expense of replacing, duplicating, assembling, or repairing the lost or damaged part or parts (including duty and/or any expediting, labor or installation charges) so that the machine or article is restored to its condition at the time of shipment. But in no event shall this assurer liability under this clause exceed the insured value of the machine or article.

35. **RECOOPERING/REPACKING:**

In the event the packaging of the goods and/or merchandise and/or property insured under this policy is damaged due to a risk insured against as a result of which it is necessary, in the sole judgment of The Assured, to recooper or provide new packaging, This Assurer will pay the cost of recoopering and/or the cost of new packaging.

In respect of packaging which falls outside the above provisions, it is agreed that should the outer packaging be damaged from an insured risk which renders the insured goods and/or merchandise and/or property unfit for on-shipment or distribution, irrespective of the final destination shown herein, This Assurer will pay the expense of reasonable repackaging, provided such damage occurred during the currency of this insurance.

36. **EXPEDITING EXPENSES:**

In the event of loss or damage, this Policy is extended to cover not only the cost of expense of replacing or duplicating the lost or damaged part or parts and/or repairing the machine or product, but also all expediting expenses to permit prompt replacement of lost or damaged material, including but not limited to, Air Express and/or Air Freight charges, overtime repair costs and other additional expenses, including duties, taxes and destination charges.

12

**J. A. LORENZO & COMPANY**

## Hughes,Robert D

**From:**    Don Soutar [DSoutar@CRAIG-IS.com]

**Sent:**    Tuesday, October 03, 2006 3:28 PM

**To:**    Hughes,Robert D

**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

Further to our pleasant telecon this morning, I attach documents in support, clarifying the fact that FDA gave a choice of destruction or reconditioning under their supervision.

The assured considered the matter and concluded that it would be too expensive to recondiation to FDA standards and having a duty to mitigate the loss chose the cheaper option - destruction.  They could not sell abroad, without reconditioning as you will see from the attached.  They really had no choice but to pick the lesser of two evils.

Please do not hesitate to get back to me with any further queries, but as quite some time has now passed without us coming to amicable resolution, the litigation team have taken the file and are starting to initiate legal proceedings.

As you will appreciate, I am under great pressure to resolve this matter at a satisfactory price, so please get back to me with a formal proposal at the very earliest opportunity.

Kind regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.



Albert_Loser@ajg.com
03/29/2006 03:18 PM

To  JZrebiec@FFIC.COM

cc

bcc

Subject  TRANSMAR, WAREHOUSE FIRE, YOUR 20032675, OUR
05-0914

James,

Please note Transmar's e-mail below regarding the remaining approx. 110MT of damaged cocoa beans.
We also attach Department of Health and Human Services' fax of March 6,2006. Kindly confirm that the
insured can proceed to have these cocoa beans destroyed.

Thanks & regards, Albert

Albert S. Loser
Vice President
Arthur J. Gallagher Risk Management Services
Arthur J. Gallagher & Co. of New York, Inc.
444 Madison Avenue, 20th Floor
New York, NY  10022
Tel: 212-994-7078
Fax: 212-994-7052

----- Forwarded by Albert Loser/BSD/AJG on 03/29/2006 03:03 PM -----

"Danny McNamara"
<Daniel.McNamara@TransmarUSA .com>

03/29/2006 01:41 PM

To  "albert loser" <albert_loser@ajg.com>

cc  "Blair" <Blair.Long@TransmarUSA.com>, "James_Tobenfeld"
<James_Tobenfeld@ajg.com>

Subject  cocoa removed from fire

Dear Albert,

We have received notification from Department of Health and Human Services
(letter of 3/6/06) that we passed to you and after much discussion in house
we have come to the conclusion it is impossible to re-condition this fire
damaged cocoa.  Besides the tremendous costs that will be incurred in
reconditioning, it is impossible to guarantee any success in this effort
based on our experience with other fire related damages of cocoa.

Regretably, this cocoa exposed to fire and its contaminants will result in a
large loss under our policy and we see no recourse other than to avail
ourselves to clause 33 - control of damaged goods.

We will in short order forward our final claim statement and we need material destroyed as per notification from USFDA. Government representation must witness this destruction and following our discussion we have agreed that a representative from Fireman's Fund be present.

Since we are continuing to incurr storage costs, kindly coordinate possible dates that a representative from Fireman's Fund will be available. I will notify USFDA of our intentions.

Thank you for your attention.

Daniel P. McNamara
SVP
Transmar Commodity Group


csu15200.PDF



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
USFDA
10 Waterview Blvd.
Parsippany, NJ 07054
Tel: (973) 526-6003
Fax: (973) 526-6069

# FAX Transmission

**Date:** 03/06/06

**To:** Dan McNamara, Transmar

**From:** Rich Manney, Compliance Officer, FDA

**Subject:** Cocoa beans in fire at United Cocoa, DE

**No. of Pages:** 1

**Mr. McNamara:**

I received your fax dated 03/03/06. In regards to why the product may not be re-exported under FD & C Act Section 801(e)(1):

Sub paragraph (A) "accords to the specifications of the foreign purchaser" – This sub-paragraph is interpreted as meaning that a product was manufactured or processed in accordance with a pre-determined foreign spec for a predetermined foreign buyer; not that a product is found adulterated under U.S. law and a willing foreign country/ purchaser is found subsequent to the adulteration occurring.

Further, sub paragraphs (A), (B), (C) are coupled with sub paragraph (D) (please note the Act specifies "and" before sup paragraph (D)). Therefore, sub-paragraph (D) "is not sold or offered for sale in domestic commerce" must also be met. Your product has been offered for sale. Courts have uniformly construed this section of the Act very broadly in the interest of consumer protection. Proof of actual sale is not an essential requirement for applying the provision. "Offered for sale" encompasses many transactions whereby the goods are stored, used, distributed or disposed of. It is the holding of the goods, not the selling, that precipitates the application of that section. Holding for sale can include storing pending further processing or disposition to consumers. All articles, single or compound, not intended for consumption by the producer, are designed for sale, and, because they are, it is of concern that they be lawful.

Once you decide if you intend to recondition or destroy the suspect product, please let me know, as we would need to either be informed as to the reconditioning plan or witness the destruction. If you have any other questions, please do not hesitate to contact me.

Rich Manney

NOTICE: This document is intended for the use of the addressed party. It may contain information that is privileged, confidential or otherwise screened for disclosure under Federal law. If you are not the addressee, or an authorized deliverer to the addressee, you are hereby notified that any disclosure, copying or action based on this document is strictly prohibited. If you have received this document in error, please notify this office by telephone at the number provided above.

MAR. 3.2006  2:22PM  FAX 9AJG NY NY  TRANSMAR COMMODITY GROUP    NO. 0353    P. 2 001/013





**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
USFDA
10 Waterview Blvd.
Parsippany, NJ 07054
Tel: (973) 526-6008
Fax: (973) 526-6069

## FAX Transmission
973 - 359 - 4058

Date:    03/02/06

To: Dan McNamara, Transmar

From: Rich Manney, Compliance Officer, FDA

Subject: Cocoa beans in fire at United Cocoa, DE

No. of Pages: 20

Mr. McNamara:

Attached please find the following documents:

1) sample summary sheets for samples 361621, 361622 & 361623; please note that sample 361621, which was the Ivory Coast product was found to be violative, as it had 5.8% mold by count.

2) Copy of FDA CPG 7105.12- showing that cocoa beans with > 4% moldy beans by count may be considered adulterated and seizure by FDA is possible.

3) Copy of the FDA investigation at United Cocoa processors showing that the lots stored there were impacted by water and smoke damage.

4) Copy of FD&C Act, Section 801(e); Please specifically see 801 (e) (1) (D) - since the product has been in domestic commerce, it cannot be re-exported as an adulterated product.

As I advised you in our telephone conversation today, Once you decide if you intend to recondition or destroy the suspect product, please let me know, as we would need to either be informed as to the reconditioning plan or witness the destruction. If you have any other questions, please do not hesitate to contact me.

Rich Manney

NOTICE: This document is intended for the use of the addressed party. It may contain information that is privileged, confidential or otherwise screened for disclosure under Federal law. If you are not the addressee, or an authorized deliverer to the addressee, you are hereby notified that any disclosure, copying or action based on this document is strictly prohibited. If you have received this document in error, please notify this office by telephone at the number provided above.

03 MAR. 3 2006  2:23PM FAX 9AJG NY NY  TRANSMAR COMMODITY GROUP                    NO. 0353   P. 8  007/013

FDA/ORA CPG 7105.12

Page 1 of 1

Updated: 2005-11-29

## Sec. 515.750 Cocoa Beans - Adulteration by Mold, Insect Infestation, and Mammalian Excreta (CPG 7105.12)

REGULATORY ACTION GUIDANCE:

The following represents criteria for direct reference seizure to *the Office of General Counsel* through Division of Compliance Management and Operations (HFC-210) and for direct citation by District Offices:

Examination shows:

1. The cocoa beans contain an average of more than 4 percent moldy beans by count;
2. The cocoa beans contain an average of more than 4 percent insect infested or insect damaged beans, by count; or
3. The cocoa beans contain an average of more than 6 percent reject beans (moldy plus insect infested or insect damaged beans) by count.

REMARKS:

If live external infestation is present use the CPG "Food Storage and Warehousing - Adulteration - Filth" (See Sec. 580.100 for CPG 7103.01).

SPECIMEN CHARGE:

Article (cocoa beans) adulterated (when introduced into and while in interstate commerce) (while held for sale after shipment in interstate commerce), within meaning of 21 U.S.C. 342(a)(3), in that it consists wholly or in part of a filthy substance by reason of presence there in of (insects) (insect fragments) (insect damaged cocoa beans); and that it consists in part of a decomposed substance by reason of the presence therein of (moldy, decomposed cocoa beans).

CRITERIA FOR RECOMMENDING LEGAL ACTION:

The following represents criteria for recommending legal action to CFSAN/Office of *Compliance*/Division of Enforcement (HFS-605):

The cocoa beans contain an average of 10 mgs or more mammalian excreta per pound.

NOTE: Analyses for mold, insect damage, and mammalian excreta are conducted using the method specified in FDA Technical Bulletin 5, Macroanalytical Procedures Manual, Chapter V.4.A - Method for Cocoa Beans.

*Material between asterisks is new or revised.*

Issued: 8/1/83
Revised: 3/95, 8/96, 5/2005

**Hughes,Robert D**

---

**From:**    Don Soutar [DSoutar@CRAIG-IS.com]

**Sent:**    Tuesday, September 26, 2006 10:12 AM

**To:**    Hughes,Robert D

**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

Please can you let me have your proposal at the earliest opportunity.

Best regards,


    Don Soutar
    Ocean Marine Product Manager
    **CRAIG/is** Ltd.
    904.807.2549  voice
    904.807.2649  fax
    dsoutar@craig-is.com


This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

**From:**    Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:**    Tuesday, September 19, 2006 4:55 PM
**To:**      Hughes,Robert
**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

I have supplied all evidence requested and would be grateful for your agreement to pay $229,821.54 in full and final settlement.

This offer represents a considerable saving to you if you look at paying full amount plus interest and applicable costs if we litigate this matter and win. I can see no reason why we would not succeed.

Please respond by the end of this week.

Kind regards,

> Don Soutar
> Ocean Marine Product Manager
> **CRAIG/is Ltd.**
> 904.807.2549  voice
> 904.807.2649  fax
> dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

2/13/2007

## Hughes,Robert D

**From:**    Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:**    Monday, September 11, 2006 9:48 AM
**To:**    Hughes,Robert
**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

I refer to my last email to you August 30th.

I am under great pressure to bring this matter to a close so could I hear from you on this case in the next day or so please?

Many thanks,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

701 Pencader Drive
Suite F
Newark, DE 19702
Phone: 302-731-0825
Fax: 302-731-0826

# United Cocoa Processor, Inc.

# Fax

| | |
|---|---|
| **To:** _Mr- Hughes_ | **From:** _Adriano_ |
| **Fax:** _1 877 348 7166_ | **Date:** |
| **Phone:** | **Pages:** (including cover sheet) _2_ |
| **Re:** | **CC:** |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

_Need an Address to mail C.D._

# CRAIG/is Ltd.

**Insurance Services**

PO Box 40569   Jacksonville   Florida   32203-0569
Voice 904.807.2500      Fax 904.807.2510

United Cocoa Processing Warehouse
701 Pencader Drive
Newark, DE 19702
And
TRAVELERS INDEMNITY COMPANY
BALTIMORE CL CLM - A007
PO BOX 17158
BALTIMORE MD 212971158
Claim Number: ABT7329001
Policy Number: IH680300H2301

Dear Sirs,

Re: FFIC Claim Number: 20032675
FFIC Insured: Transmar Commodity
Date of Loss: December 2, 2005
Type of Loss: warehouse/fire Loss
Amount of loss: $130,000.00 or more

This correspondence and all statements herein are in furtherance of settlement
negotiations and as such are privileged and inadmissible. All information is provided on
an informal basis for the purpose of settlement discussions. FFIC and CRAIG/is, Ltd.
reserve all rights relative thereto.

FFIC insures stored product (Cocoa products- beans, cake, powder) of the insured. On
12/2/2005, insured goods were damaged in a fire at your processing warehouse where the
goods were stored. The fire started in the processing room where a stack caught fire. The
DEPT OF HEALTH condemned all cocoa products located in that area of the loss in
consequence of toxic fumes that emanated from the burnt styro foam roof insulation. A
portion of the cargo was wetted due to fire fighting activity.

This caused the insured loss and damage and FFIC paid out $237,311.50 to Transmar
under the policy and now seek recovery by way of subrogation.

We hereby call upon you to pay the sum demanded within 14 days. Should we fail to
hear, we reserve the right to take such steps as may be necessary to pursue recovery
without further notice to you.

Yours truly,

---

# A Passion for Process™

**www.craigis.com**

## Hughes,Robert D

**From:** Don Soutar [DSoutar@CRAIG-IS.com]
**Sent:** Wednesday, August 30, 2006 1:02 PM
**To:** Hughes,Robert
**Subject:** United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT

Dear Mr. Hughes,

After our telephone call this morning, I have looked at the file and attach documents in support of the unit cost as requested.

In fact I confirm that Fireman' actually paid out 4 checks totaling $240,920.50.

The price used was per attached and is somewhat obscure in interpreting the Cocoa market report. See claim statement where they used Ivory Coast of $1685 and same for Togo. Ecuador was less $1653. I suggest we recalculate as follows purely for purposes of without prejudice amicable discussions to try to resolve this between us.

113.053 mt of beans destroyed

| | | |
|---|---|---|
| Ivory coast 77.953 x $1685 = | $131,350.80 | |
| Ecuador    15.249 x $1653 = | $ 25,206.59 | |
| Togo       19.869 x $1685 = | $ 33,479.26 | |
| | | |
| Total | $190,036.65 | |
| Plus 10% policy uplift | $ 19,003.66 | |
| Total | $209,040.31 | |
| Plus costs of destruction | $ 14,172.75 | |
| Transport | $  1,950.00 | |
| Stripping & handling | $  1,998.00 | |
| Storage | $  2,660.48 | |
| Grand total: | $229,821.54 | |

Even so, this is less than the total paid but is the sum we are able to really justify at this stage. By using this lower amount, we have in effect given you credit for the 10% policy uplift and other associated costs of this casualty.

We would be willing to forego the full amount paid provided you agree to make payment of this sum promptly in full and final settlement. We reserve the right to prove the higher amount if we do not settle at this figure. In addition there would be interest and legal costs.

We look forward to hearing from you at the earliest opportunity.

Best regards,


Don Soutar
Ocean Marine Product Manager
**CRAIG/is Ltd.**
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

# FiMAT

A SOCIETE GENERALE BUSINESS

Friday

## COCOA MARKET REPORT

December 2, 2005

| LONDON CLOSE | | | HI | LOW | OPEN INTEREST | | LDN VOLUME | VALUE DATE | GBP/USD 1.7313 | ARB USD | ARB STO | NEW YORK CLOSE | | | HI | LOW | OPEN INTEREST | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dec05 | 861 | -2 | 872 | 853 | 26,362 | -1,466 | 3885 | 12/21/05 | 1.7311 | 17 | 10 | Z | 1473 | 13 | 1,474 | 1,460 | 1,197 | -1 |
| Mch06 | 890 | 1 | 902 | 881 | 67,871 | -1,415 | 7357 | 03/15/06 | 1.7310 | 63 | 36 | H | 1478 | 13 | 1,484 | 1,460 | 56,979 | -1,427 |
| May06 | 901 | 1 | 910 | 894 | 21,021 | 793 | 1757 | 05/17/06 | 1.7318 | 62 | 36 | K | 1498 | 14 | 1,500 | 1,479 | 13,823 | 212 |
| Jul06 | 915 | 1 | 921 | 913 | 27,605 | 88 | 127 | 07/19/06 | 1.7329 | 68 | 39 | N | 1518 | 15 | 1,525 | 1,502 | 11,741 | 4 |
| Sep06 | 927 | 1 | 932 | 918 | 14,600 | 389 | 295 | 09/20/06 | 1.7342 | 71 | 41 | U | 1537 | 13 | 1,540 | 1,520 | 11,389 | 116 |
| Dec06 | 938 | 1 | 941 | 928 | 18,262 | 398 | 679 | 12/20/06 | 1.7357 | 62 | 36 | Z | 1566 | 13 | 1,563 | 1,548 | 10,163 | 16 |
| Mch07 | 947 | | 952 | 940 | 4,378 | 288 | 491 | 03/21/07 | 1.7371 | 55 | 32 | H | 1590 | 13 | 1,589 | 1,570 | 11,226 | 5 |
| May07 | 958 | -1 | | | 346 | | | 05/16/07 | 1.7377 | 54 | 31 | K | 1611 | 14 | | | 1,735 | 25 |
| Jul07 | 968 | -1 | | | 39 | | | 07/18/07 | 1.7383 | 52 | 30 | N | 1631 | 15 | | | 298 | |
| Sep07 | 978 | -1 | | | 15 | | | 09/19/07 | 1.7389 | | | U | 1649 | 13 | | | 3,600 | |
| | | | | | 180,499 | -925 | 14591 | | | | | | | | | | 122,151 | -1,050 |

| LDN VOLUMES | |
|---|---|
| AM: | 5300 |
| Final: | 14591 |
| Sprds: | 3807 |
| AA'S: | 1066 |
| Calls: | 100 |
| Puts: | 0 |
| LDN RSI | Mch06 |
| 9-Day = | 71.88 |
| 14-Day = | 65.58 |
| STOCHASTIC | |
| %K = | 66.49 |
| %D = | 61.84 |
| MOVING AVE. | |
| 5-Day = | 864 |
| 10-Day = | 865 |
| 20-Day = | 845 |
| 14-Day = | 853 |
| 40-Day = | 845 |

above studies basis Mch06

| - LONDON SPREADS - | Closing Bid/Ask | Hi Low | Volume |
|---|---|---|---|
| Z/H | -30/-23 | -26 -31 | 1137 |
| Z/K | -44/-34 | -41 -42 | 1275 |
| Z/N | -63/-48 | | |
| Z/U | -73/-60 | | |
| Z/Z | -82/-70 | | |
| H/K | -12/-11 | -11 -12 | 234 |
| H/N | -26/-25 | -26 -26 | 21 |
| H/U | -38/-36 | -37 -38 | 52 |
| H/Z | -47/-46 | -45 -47 | 338 |
| H/H | -58/-57 | -56 -58 | 209 |
| K/N | -14/-13 | -14 -14 | 33 |
| K/U | -26/-25 | -26 -26 | 18 |
| K/Z | -36/-35 | -35 -35 | 102 |
| K/H | -48/-45 | | |
| K/K | -59/-51 | | |
| N/U | -12/-11 | -12 -12 | 1 |
| U/Z | -11/-10 | -9 -10 | 60 |

| CRB INDEX (NYBOT) | | |
|---|---|---|
| RJ/CRB | 323.38 | 2.67 |
| CCI (old) | 339.69 | 1.51 |

| LONDON IS DUE: | |
|---|---|
| Mch06 | Unch |
| May06 | Unch |

| Daily CMAA Spot Prices basis East Seaboard, Ex-Dock Prices vrs. NYCC: | Mch06 |
|---|---|
| Ghana MC beans | $278 |
| Ivory Coast beans | $207 |
| Nigeria MC beans | $185 |
| Arriba ASS beans | $175 |
| Sanchez FAQ beans | $193 |
| Malaysia 110 beans | $15 |
| Sulawesi FAQ beans | $43 |
| Ecuador Liquor | 1.64 |
| African Type Butter | 2.95 |
| Nat. 10/12 Press Cake | 0.62 |

| SUPPORT & RESISTANCE Mch06 | LONDON |
|---|---|
| 2nd Resist. | 923 |
| 1st Resist. | 912 |
| Major Resist. | 901 |
| Pivot | 891 |
| Major Support | 880 |
| 1st Support | 870 |
| 2nd Support | 860 |

| SUPPORT & RESISTANCE Mch06 | NEW YORK |
|---|---|
| 2nd Resist. | 1508 |
| 1st Resist. | 1498 |
| Major Resist. | 1490 |
| Pivot | 1474 |
| Major Support | 1466 |
| 1st Support | 1450 |
| 2nd Support | 1436 |

| N.Y. VOLUMES | |
|---|---|
| FINAL: | 12242 |
| AA'S: | 37 |
| Est. Sw: | 714 |
| Calls: | 1156 |
| Puts: | 521 |
| EFS's: | 0 |
| NY RSI | Mch06 |
| 9-Day = | 70.93 |
| 14-Day = | 63.54 |
| STOCHASTIC | |
| %K = | 76.19 |
| %D = | 66.43 |
| MOVING AVE. | |
| 5-Day = | 1421 |
| 10-Day = | 1409 |
| 20-Day = | 1391 |
| 14-Day = | 1394 |
| 40-Day = | 1405 |

| - NEW YORK SPREADS - | Closing Bid/Ask | Hi Low | Est. Vol. |
|---|---|---|---|
| Z/H | -10/+0 | +0 +0 | 64 |
| H/K | -20/-18 | -19 -19 | 275 |
| H/N | -41/-38 | -41 -42 | 125 |
| H/U | -60/-58 | | |
| H/Z | -87/-84 | -84 -84 | 20 |
| H/H | -112/-109 | -109 -112 | 165 |
| K/N | -21/-19 | -20 -20 | 15 |
| K/U | -42/-38 | | |
| K/Z | -69/-65 | -69 -69 | 10 |
| K/H | -95/-90 | | |
| K/K | -113/-110 | -113 -113 | 10 |
| N/U | -21/-18 | | |
| N/Z | -47/-42 | -42 -43 | 20 |
| N/H | -73/-68 | | |
| N/K | -94/-88 | | |
| N/N | -113/-108 | | |
| U/Z | -29/-23 | | |

above studies basis Mch06

| GBP @ LDN CLOSE | | |
|---|---|---|
| USD: | 1.7313 | 0.0015 |
| EUR: | 1.4759 | 0.0015 |
| DEM: | 2.8945 | 0.0021 |
| FRF: | 9.7076 | 0.0095 |
| NGL: | 3.2613 | 0.0032 |
| CHF: | 2.2853 | -0.0004 |
| JPY: | 209.11 | 0.4400 |
| CAN: | 2.0132 | -0.0107 |

| EUR @ LDN CLOSE | | |
|---|---|---|
| USD: | 1.1699 | -0.0001 |
| GBP: | 0.6757 | -0.0007 |
| DEM: | 1.95583 | fixed |
| FRF: | 6.55957 | fixed |
| NGL: | 2.20371 | fixed |
| CHF: | 1.5442 | -0.0019 |
| JPY: | 141.30 | 0.1990 |
| CAN: | 1.3603 | -0.0017 |

| USD @ LDN CLOSE | | |
|---|---|---|
| STG: | 0.5776 | -0.0005 |
| EUR: | 0.8548 | 0.0001 |
| DEM: | 1.6718 | 0.0002 |
| FFR: | 5.6071 | 0.0007 |
| NGL: | 1.8837 | 0.0002 |
| BEF: | 34.4825 | 0.0040 |
| ITL: | 1655.12 | 0.1936 |
| CHF: | 1.3200 | -0.0014 |

| USD @ LDN CLOSE | | |
|---|---|---|
| YEN: | 120.78 | 0.15 |
| CAN: | 1.1628 | -0.0073 |
| MEX: | 10.4525 | -0.0400 |
| AUD: | 1.3397 | -0.0002 |
| INR: | 1943 | -37.0 |
| SGD: | 1.6879 | -0.0028 |
| BRZ: | 2.1991 | -0.0114 |
| VEB: | 2149.00 | 0.00 |

NYBOT STOCKS OF COCOA BEANS IN EXCHANGE LICENSED WAREHOUSES (~145 LB BAGS)

| | 02-Dec-05 | 1-Dec-05 | Chng |
|---|---|---|---|
| NY | 388,271 | 388,271 | 0 |
| DE | 2,619,138 | 2,635,489 | -16351 |
| BR | 27,375 | 27,375 | 0 |
| TTL | 3,034,784 | 3,051,135 | -16351 |

NYBOT COCOA GRADING RESULTS

Lots Passed: 1279 Lots Pending: 115

| Cocoa C.O.T. | | LS lng | LS shrt | Net LS Pos. | Sprd | COM Lng | COM Sht | Net COM Pos. | NR lng | NR sht | Net NR Pos. | Ttl O/I | Comb. Net Spec. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fut Only | 29-Nov | 28381 | 26387 | 1994 | 1509 | 85369 | 90194 | -4825 | 8024 | 5193 | 2831 | 123283 | Long | 4825 |
| Fut Only | 22-Nov | 29108 | 26732 | 2376 | 1715 | 82446 | 87471 | -5025 | 7441 | 4792 | 2649 | 120710 | Long | 5025 |
| Fut Only | 15-Nov | 28485 | 37850 | -9365 | 2966 | 88457 | 82079 | 6378 | 9324 | 6337 | 2987 | 129232 | Short | -6378 |

The Mch06 contract in London ended marginally higher today as the continuation of fund buying from Thursday's £31 eruption helped to send the spot month to a new 11-week high in more moderate trading conditions. The market sprinted to a new £13 gain in the first 13 minutes of trading, only to find a torrent of trade and origin selling quickly deflect the nears to a pre-New York loss of £8 before a period of consolidation set in. A stronger-than-expected market in New York lifted the nears in London off of the lows to ultimately push the market back into the plus column in the final hours of the day. The market was strong enough to fight off of the inhibitive effects of a rising GB Pound as well as the seemingly negative effects of the weakening Dec05/Mch06 spread which plummeted to a new contract low of £31 discount. The presence of heavy trade profit taking and aggressive origin selling compressed the arbitrage levels, leaving them at their tightest levels in roughly 3-weeks. The latest rise in world prices helped to loosen up the flow of cocoa today that had previously been accumulating at the ports, particularly from Nigeria and the Ivory Coast.

The New York market provided additional firepower on the upside today as the strength of the GB Pound against the US Dollar teamed up with net fund buying of 3500 to 4000 lots to take the take the Mch06 contract to its highest close since the 13th of September. The surge in spec buying, which followed yesterday's revised estimates of 6000 to 7000 lots, seems to be part of a larger commodity buy program which has seen another huge allocation of long investment commodity money send the CRB's (old) Continuous Commodity Index to an all-time high just today.

Still the gains in cocoa may have also been sentimentally supported by reports of an attack by 20 gunmen on an army barrack in or near Abidjan that was quickly dispersed and resulted in no casualties. The mysterious attack was blamed on the rebels by government sources. However, Reuters reported that Ivory Coast rebels accused the government of staging the unusual attack on the military barracks to "provide President Laurent Gbagbo with an excuse not to attend a meeting of heads of state in Mali" where "everyone would be on his back". Whatever the case, the flow of cocoa was not affected as it was business as usual in Abidjan today.

Regarding the flow of cocoa in the Ivory Coast, there is increasing talk in the trade that the combined weekly arrivals in the ports of Abidjan and San Pedro, which should soon be hitting their seasonal peak of 70,000 tonnes per week, are topping out around 50,000 tonnes. This in turn has some analysts and government officials speculating that the Ivory main crop will not reach 1 million tonnes this season. Caution is advised, however, as the slowdown in "published arrivals" may not always equal "actual" arrivals. For example, in the last several years, we have seen and heard of large upward and unexplained adjustments to the Ivory Coast cumulative arrivals in January and February, sometimes by as much as 50,000 and 100,000 tonnes. That said, more verification of current arrivals may be needed before long term projections of total output can be reliably reformulated. Notwithstanding any statistical gerrymandering, the month of December has historically proven itself to be a strong seasonally driven "upmonth" for cocoa. In fact, the four weeks in December generally produce the second strongest seasonal rally of the year behind the "Silly Season". Competition for required year-end figures and differential coverage by end-users may explain the rally within the heart of the harvest. January thru March, on the other hand, tends to counter any December strength. When all is said and done, the funds are in the midst of reversing a moderately large short position, the world of commodity prices continue to enjoy inflationary pressure and large investment inflows, and the cocoa market in and of itself is looking more technically convincing for the bulls. More gains in the short term should not be unexpected. Regards, Luis Rangel

| Cocoa C.O.T. | | LS lng | LS shrt | Net LS Pos. | Spreaders | COM Lng | COM Sht | Net COM Pos. | NR lng | NR sht | Net NR Pos. | | Ttl O/I | Comb. Net Spec. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| w/Opt. | 29-Nov | 26811 | 26412 | 399 | 8849 | 89245 | 92931 | -3686 | 9121 | 5835 | 3286 | 134026 | 134026 | Long | 3685 |
| w/Opt. | 22-Nov | 27298 | 26593 | 705 | 9477 | 86440 | 90410 | -3970 | 8632 | 5367 | 3265 | 131847 | 131847 | Long | 3970 |
| w/Opt. | 15-Nov | 26837 | 37890 | -11053 | 9766 | 92030 | 84429 | 7601 | 10196 | 6743 | 3453 | 138829 | 138829. | Short | -7600 |

[illegible]

# Arthur J. Gallagher & Co. of New York Inc.

## STATEMENT OF CLAIM

AJG Ref. No.: 05-0914                    Date: May 18, 2006

Insurer: Fireman's

Insured: Transmar Commodity Group

Carrier/Location: UCP Fire Claim          Date of loss:11/1/06

Commodity: Cocoa Beans

Nature of Loss: Fire at processing plant


Insured Value: $  195,989.08
Invoice Value: $  178,171.89
Advance:  10%

Calculation:

| | | |
|---|---|---|
| a. | Insured value of cocoa | $195,989.08 |
| b. | Transportation from UCP to Camden | 1,950.00 |
| c. | Stripping & Handling | 1,998.00 |
| d. | Storage | 2,660.48 |
| e. | Destruction costs | 14,172.75 |
| f. | Total loss | $216,770.31 |
| g. | Less: Advance payment | (150,000.00) |

                         Balance        $66,770.31

```
51,100·89 +
1,801·19 +
 888·32 +
53,798·40  *

53,798·4 ×
    1·1 =
37,178·24 +


 ··0··

37,178·24 +
 1,180·13 +
30,358·37  *
```

Fax: (212)513-0450

----- Forwarded by James Tobenfeld/BSD/AJG on 12/13/2005 10:54 AM -----
"Sol Seltzer" <Solomon.Seltzer@TransmarUSA.com>

12/12/2005 10:49 AM

To "JAMES TOBENFELD" <James_Tobenfeld@ajg.com>

cc

Subject U.C.P INVENTORY AS OF 12/8/05 FIRE

As per your request,please find list of inventory as follows

Beans in processing warehouse

| | |
|---|---|
| 76 tons Ivory Coast Beans @$1685.00 per ton | $ 128,060.00 |
| 19 tons Togo Cocoa  Beans @$1685.00 per ton | $ 32,015.00 |
| 24.5 tons Ecuador C.Beans $1653.00per ton | $ 40,498.50 |

Beans at dock doors

| | |
|---|---|
| 19   tons  Ivory Coast C.B,@1685.00 per ton | $ 32,015.00 |
| 49   tons  Ecuador Beans   @1653.00 Per ton | $ 80,997.00 |

Beans at yard

| | | |
|---|---|---|
| 19  tons Ivory Coast C.Beans@$1685.00 | | $ 32,015.00 |
| 19  tons Togo Beans        @$1685.00 | | $ 32,015.00 |

Nibs at yard

| | | |
|---|---|---|
| 48 tons | @$1653.00 | $   79,344.00 |

Liquor in tanks

| | | |
|---|---|---|
| 19.1 tons | @2,497.82 | $ 47,708.36 |

Butter in tanks(8 tanks)

| | | |
|---|---|---|
| 169 tons | @$4434.00 | $749,346.00 |

Cake in warehouse
Cake in supersacks

| | | |
|---|---|---|
| 355 tons | @ 916.36 | $325,307.80 |

Powder
in paper bags

| | | |
|---|---|---|
| 21 tons | @1016.36 | $ 21,343.56 |

RECAP

| | |
|---|---|
| BEANS IN PROCESSING WAREHOUSE | $200,573.50 |
| BEANS AT DOCK DOORS | $113,012.00 |
| BEANS AT YARD | $ 64,030.00 |
| NIBS | $ 79,344.00 |
| lIQUOR TANKS | $ 47,458.58 |
| BUTTER IN TANKS | $749,346.00 |
| CAKE | $325,307.80 |

POWDER                                          $ 21,343.56

                 TOTAL                      $1,600,415.44

## Hughes,Robert D

| | |
|---|---|
| **From:** | Don Soutar [DSoutar@CRAIG-IS.com] |
| **Sent:** | Wednesday, August 16, 2006 11:31 AM |
| **To:** | Hughes,Robert |
| **Subject:** | United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 NOW URGENT |

Dear Bob,

Please see below. I left voice message for you today. We must make progress on this one please. I am uncomfortable that I have not heard from you and I am now under pressure to pass this to my litigation department.

Please advise status within 7 days.

Thanks,

To: 'rhughes@stpaultravelers.com'
Subject: United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001

Dear Mr. Hughes,

Please see mine last Tusday below. I look forward to hearing from you.

Sent: Tuesday, July 18, 2006 2:40 PM
To: 'rhughes@stpaultravelers.com'
Subject: United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001

Dear Mr. Hughes,

I have been assigned this claim which I have reviewed for pursuit.

I am hopeful that we can come to terms quickly as liability seems very clear.

Can you please let me know what you need to see in addition to the attachments to process this claim. You should have received a demand package from us/your insured with accompanying documents.

Our total claim amounts to $237,311.50.

We look forward to hearing from you to dispose of this matter amicably.

With best regards,

> Don Soutar
> Ocean Marine Product Manager
> **CRAIG/is Ltd.**
> 904.807.2549 voice
> 904.807.2649 fax
> dsoutar@craig-is.com

2/13/2007

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

| | |
|---|---|
| **From:** | Don Soutar [DSoutar@CRAIG-IS.com] |
| **Sent:** | Friday, July 21, 2006 8:54 AM |
| **To:** | Hughes,Robert |
| **Subject:** | United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 |

Dear Mr. Hughes,

Please see mine last Tusday below. I look forward to hearing from you.

Sent: Tuesday, July 18, 2006 2:40 PM
To: 'rhughes@stpaultravelers.com'
Subject: United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001

Dear Mr. Hughes,

I have been assigned this claim which I have reviewed for pursuit.

I am hopeful that we can come to terms quickly as liability seems very clear.

Can you please let me know what you need to see in addition to the attachments to process this claim. You should have received a demand package from us/your insured with accompanying documents.

Our total claim amounts to $237,311.50.

We look forward to hearing from you to dispose of this matter amicably.

With best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549 voice
904.807.2649 fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

## Hughes,Robert D

| | |
|---|---|
| **From:** | Don Soutar [DSoutar@CRAIG-IS.com] |
| **Sent:** | Tuesday, July 18, 2006 2:40 PM |
| **To:** | Hughes,Robert |
| **Subject:** | United Cocoa Warehouse fire Claim: 20032675 Yr ref: clm# ABT7329001 |
| **Follow Up Flag:** | Follow up |
| **Due By:** | Friday, August 18, 2006 8:00 AM |
| **Flag Status:** | Flagged |

Dear Mr. Hughes,

I have been assigned this claim which I have reviewed for pursuit.

I am hopeful that we can come to terms quickly as liability seems very clear.

Can you please let me know what you need to see in addition to the attachments to process this claim. You should have received a demand package from us/your insured with accompanying documents.

Our total claim amounts to $237,311.50.

We look forward to hearing from you to dispose of this matter amicably.

With best regards,

Don Soutar
Ocean Marine Product Manager
**CRAIG/is** Ltd.
904.807.2549  voice
904.807.2649  fax
dsoutar@craig-is.com

This email, including attachments, contains information that is confidential and may be protected by the attorney/client or other privileges, and constitutes non-public information intended to be conveyed only to the designated recipients, subject to the confidentiality obligations that may exist between Craig and such recipients. If you are not the intended recipient, please delete this e-mail and any attachments, do not copy, distribute or forward any materials received in error, and use the reply function immediately to notify the sender of the error. The unauthorized use, dissemination or reproduction of this e-mail, including attachments, is prohibited and may be unlawful or in violation of the authorized recipients' obligations to Craig. Thank you for your strict compliance with these terms.

05/18/2006 08:57 FAX  9733594058      TRANSMAR COMMODITY GROUP      🖂 002/002



**TRANSMAR COMMODITY GROUP LTD.**
200 SOUTH STREET, 4TH FLOOR
MORRISTOWN, NJ 07960

Dear Mr. Loser

In regard to our UCP Fire Insurance Claim, Please find enclosed all paper work available to complete this claim. We are only missing the Final report from the F.D.A saying that they witnessed the destruction of the damaged beans.

1)    On Dec 2, 2005, a fire accrued at UCP in Newark Delaware.

2)    On Dec 4 2005, Sol Seltzer ordered a survey to be done. Upon completion of that survey it was determined that approximately 113MT of Cocoa Beans in the warehouse that was subjected to Fire, Smoke, and Water. The beans were place under F.D.A hold, and told that they could not be moved.

    a.  77.935 MT of Ivory Beans
    b.  15.249 MT of Ecuador Beans
    c.  19.869 MT of Togo Beans

3)    Under F.D.A supervision, The Cocoa beans were moved from UCP to Camden International by Phase III trucking. The total cost of this move was $1,950. The Cost of Sorting and handling the damaged Cocoa was a total of $1,998.00.

4)    The total storage charges so far on this Cocoa is $2,660.48

5)    On April 17, 2005, we received a check for Partial payment of the claim in the amount of $150,000.

6)    Between the period of April 26, 2006 & May 2, 2006, The 113 Metric Tons of Damaged beans were properly destroyed under the supervision of the F.D.A. The total cost of the destruction of the Cocoa was 14,172.75.

03/14/2006 18:10 FAX 9733591058    TRANSMAR COMMODITY GROUP    ☒ 002/002



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
USFDA
10 Waterview Blvd.
Parsippany, NJ 07054
Tel: (973) 526-6000
Fax: (973) 526-6069

# FAX Transmission

**Date:** 03/06/06

**To:** Dan McNamara, Transmar

**From:** Rich Manney, Compliance Officer, FDA

**Subject:** Cocoa beans in fire at United Cocoa, DE

**No. of Pages:** 1

Mr. McNamara:

I received your fax dated 03/03/06. In regards to why the product may not be re-exported under FD & C Act Section 801(e)(1):

Sub paragraph (A) "accords to the specifications of the foreign purchaser" – This sub-paragraph is interpreted as meaning that a product was manufactured or processed in accordance with a pre-determined foreign spec for a predetermined foreign buyer; not that a product is found adulterated under U.S. law and a willing foreign country/ purchaser is found subsequent to the adulteration occurring.

Further, sub paragraphs (A), (B), (C) are coupled with sub paragraph (D) (please note the Act specifies "and" before sup paragraph (D)). Therefore, sub-paragraph (D) "is not sold or offered for sale in domestic commerce" must also be met. Your product has been offered for sale. Courts have uniformly construed this section of the Act very broadly in the interest of consumer protection. Proof of actual sale is not an essential requirement for applying the provision. "Offered for sale" encompasses many transactions whereby the goods are stored, used, distributed or disposed of. It is the holding of the goods, not the selling, that precipitates the application of that section. Holding for sale can include storing pending further processing or disposition to consumers. All articles, single or compound, not intended for consumption by the producer, are designed for sale, and, because they are, it is of concern that they be lawful.

Once you decide if you intend to recondition or destroy the suspect product, please let me know, as we would need to either be informed as to the reconditioning plan or witness the destruction. If you have any other questions, please do not hesitate to contact me.

Rich Manney

NOTICE: This document is intended for the use of the addressed party. It may contain information that is privileged, confidential or otherwise screened for disclosure under Federal law. If you are not the addressee, or an authorized deliverer to the addressee, you are hereby notified that any disclosure, copying or action based on this document is strictly prohibited. If you have received this document in error, please notify this office by telephone at the number provided above.

MAR. 3. 2006  2:22PM  FAX  9AJG  NY NY  TRANSMAR COMMODITY GROUP        NO. 0353    P.  2  001/013



*Jim*

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**USFDA**
10 Waterview Blvd.
Parsippany, NJ 07054
Tel: (973) 526-6008
Fax: (973) 526-6069

---

**FAX Transmission**

973- 359- 4058

Date:    03/02/06

To:  Dan McNamara, Transmar

From: Rich Manney, Compliance Officer, FDA

Subject: Cocoa beans in fire at United Cocoa, DE

No. of Pages:  20

Mr. McNamara:

Attached please find the following documents:

1)  sample summary sheets for samples 361621, 361622 & 361623; please note that sample 361621, which was the Ivory Coast product was found to be violative, as it had 5.8% mold by count.

2)  Copy of FDA CPG 7105.12- showing that cocoa beans with > 4% moldy beans by count may be considered adulterated and seizure by FDA is possible.

3)  Copy of the FDA investigation at United Cocoa processors showing that the lots stored there were impacted by water and smoke damage.

4)  Copy of FD&C Act, Section 801(e); Please specifically see 801 (e) (1) (D) - since the product has been in domestic commerce, it cannot be re-exported as an adulterated product.

As I advised you in our telephone conversation today, Once you decide if you intend to recondition or destroy the suspect product, please let me know, as we would need to either be informed as to the reconditioning plan or witness the destruction. If you have any other questions, please do not hesitate to contact me.

Rich Manney

---

NOTICE: This document is intended for the use of the addressed party. It may contain information that is privileged, confidential or otherwise screened for disclosure under Federal law. If you are not the addressee, or an authorized deliverer to the addressee, you are hereby notified that any disclosure, copying or action based on this document is strictly prohibited. If you have received this document in error, please notify this office by telephone at the number provided above.

03.MAR. 3.2006j 2:23PM FAX 9AJG NY NY  TRANSMAR COMMODITY GROUP        NO. 0353    P. 9 @008/013



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
Food & Drug Administration
Philadelphia District, Investigations Branch
Wilmington Resident Post, HFR-CE1505

# Memorandum

**Date:** January 3, 2006

**From:** Gerald W. Kopp, Investigator

**To:** Director, Investigations Branch, HFR-CE150

**Subject:** United Cocoa Processor, Inc. Newark, DE (FEI:3004333578)
**Re:** Cocoa Beans, Storage Conditions

## Summary

This investigation was performed under FACTS Asgmt. #699353 per Supervisor's request. Inspection conducted 12/7, 12/8/05 at the subject firm revealed raw cocoa beans were stored there when a fire occurred on 12/2/2005. The fire burned and damaged the roof/ceiling above the stored cocoa beans. Water used to fight the fire leaked through the roof onto the stored cocoa beans below.

I inspected the warehouse where the cocoa beans were stored and monitored the loading of raw cocoa beans onto inspected, truck-trailers for interstate shipment to: Camden International Commodity Terminal, Gloucester, NJ. I officially sealed each trailer load when closed. I took photographs depicting the warehouse storage conditions and the condition of the raw cocoa beans that were packed in burlap bags. I verified the employee's counting inventory of the bags of beans as they were loaded onto trailers.

---

**Endorsements**

To: File                                                Date: 1/4/2006

The loading and sealing of trucks transporting cocoa beans affected by a fire at the subject firm was witnessed. The condition of the beans as they were being loaded was also documented by photographs. The delivery of the beans to Camden International Commodity Terminal, Gloucester, NJ was also witnessed and reported under separate cover. Info copy provided to HFR-CE340 as background information for review of the proposed reconditioning plan for the beans now in NJ.

Michael D. O'Meara, SI
PHI-DO, Wilmington RP

Distribution:
O: PHI-DO file
Cc w exh: HFR-CE340

#4252 P.008              US FDA NWJ DO              6069 926 ٤٧6 11:57 2006 02 .MAR

02/0 FEB. 8. 2006 1:04PM 3359 AJG NY NY    TRANSMAR COMMODITY GROUP    NO. 0144    P. 3

**TRANSMAR COMMODITY GROUP LTD.**
200 SOUTH STREET
MORRISTOWN NEW JERSEY 07960
TEL 973-359-4040 EXT 106
FAX 973-359-4058

12/6/2005

UNITED COCOA PROCESSORS INC
701 N.PENCADER DR,
NEWARK ,DELAWARE

Dear Sir:

This is to put you on notice that we indend to file claim      for any and all
damages that might araise due to fire which occurred at you warehouse
on Dec. 2,12005

*Solomon Seltzer*
Solomon Seltzer
Claims dept

Transmar Commodity Group Ltd.
200 South Street
Morristown New Jersey 07960

FEB. 10. 2006⁴ 4:22PM  873:AJG NY NY                                         NO. 0172  ⁻P. 2⁻

02/10/2006  10:50   S      10026

TRANSMAR COMMODITY GROUP
UNITED C

☑ 001/002
PAGE 02/02



STATE OF DELAWARE
OFFICE OF THE STATE FIRE MARSHAL

WILLARD F. PRESTON III
STATE FIRE MARSHAL

NEW CASTLE COUNTY
DIVISION

**DATE:  January 9, 2006**

**TO:  United Cocoa Processor, Inc.**

**ADDRESS:  701 Pencader Drive**
**Newark, DE 19702**

**The following investigative information is provided for your use:**

### STATEMENT OF VERIFICATION

**DATE & TIME OF INCIDENT:**  December 02, 2005 @12:35 – December 02, 2005
**@12:35**

**DATE & TIME INCIDENT REPORTED:**  December 02, 2005 @12:35

**LOCATION OF INCIDENT:**  701 Pencader Drive Newark, De 19702

**TYPE OF INCIDENT:**  Building Fire

**NAME OF VICTIM:**  United Cocoa Processor

**STATE FIRE MARSHAL'S INCIDENT #:**  90-05023546

**INVESTIGATING OFFICER:**  Krzysiak, J.

**RESULTS OF INVESTIGATION:**  Electrical malfunction in a conveyor ignited
material in the unit causing heavy damage to the processor and roof.

**STATUS OF INVESTIGATION:**  Closed - Accidental

**Richard R. Ward**
**Assistant State Fire Marshal**

**RRW/mb**

DELAWARE FIRE SERVICE CENTER, 2307 MACARTHUR ROAD, NEW CASTLE, DELAWARE 19720-2426
TECHNICAL SERVICES (302) 323-5366, FAX (302) 323-5366
ADMINISTRATION / INVESTIGATIONS (302) 323-5373, FAX (302) 323-5367

/18/2006 08:57 FAX  9733594058          TRANSMAR COMMODITY GROUP          ☎001/002



# TRANSMAR COMMODITY GROUP LTD.

200 SOUTH STREET, 4TH FLOOR
MORRISTOWN, NJ 07960

Date: 05/17/2006

RE: UCP Fire Claim

| | | |
|---|---|---|
| Purchase price of Cocoa | $ | 178,171.89 |
| Transportation From UCP to Camden | $ | 1,950.00 |
| Stripping / Handling | $ | 1,998.00 |
| Storage | $ | 2,660.48 |
| Cost to destroy Cocoa | $ | 14,172.75 |
| | | |
| Total Loss | $ | 198,953.12 |
| Less Payment Received | $ | (150,000.00) |
| | | |
| Total Claim remaining | $ | 48,953.12 |

Telephone: 973-359-4040  •  Fax: 973-359-4058  •  Email: transmarnj@aol.com

To:

Mr. Robert Hughes

St. Paul Travelers

From:

Jimmy Locke - UCP

2 pages total

1-9-06- RDH - Instructed ① to Send to
Ins. Agent + Request Liability File set-up.

# CRAIG/is Ltd.

**Insurance Services**

PO Box 40569   Jacksonville   Florida   32203-0569
Voice 904.807.2500     Fax 904.807.2510

December 27, 2005

United Cocoa Processor Warehouse
701 Pencader Dr.
Newark, DE 19702

### IMPORTANT NOTICE

| | | |
|---|---|---|
| Re: | FFIC Claim Number | : 20032675 |
| | FFIC Insured | : Transmar Commodity |
| | Date of Loss | : December 2, 2005 |
| | Type of Loss | : warehouse/fire Loss |
| | Anticipated Amount of loss | : $130,000.00 or more |

Dear Sirs:

We represent Fireman's Fund Insurance Company (FFIC) in pursuing subrogation recovery of any insurance funds which might be paid by FFIC for this loss. Our investigation thus far leads us to inform you that you and/or your agents may have legal liability for this loss.

To help you identify your possible involvement with this loss, please note that insured's bulk cocoa beans and product were stored under your care, custody and control by agreement at your warehouse in Newark. It is our understanding that the insured stored goods were damaged on the above date by a fire at the warehouse.

If you have liability insurance, please notify your insurance carrier of this loss and potential claim as soon as possible and have your carrier contact our office.

Should you or your representatives wish to inspect the evidence, please contact the undersigned immediately.

Sincerely,

Service Manager
Craig/is, Ltd.

JOC/jc

**A Passion for Process™**

www.craigis.com

01/10/2006  10:07     3027310826          UNITED COCOA                    PAGE  01/02

701 Peneader Drive
Suite F
Newark, DE 19702
Phone: 302-731-0825
Fax: 302-731-0826

# United Cocoa Processor, Inc.

*ABT 7329*


# Fax

**To:** *Ron*                          **From:** *Adriano*

**Fax:** *(502) 674 9250*             **Date:** *1/10*

**Phone:**                             **Pages:** *2 inc. cover.*

**Re:**                                **CC:**

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

*1 JAN 2006*
*RECEIVED*
*REAL PROPERTY MCU*

**TO:** *Travelers*

**ATTN.:** *Prop. Claims*

**RE:** *United Cocoa Proc.*

**CLAIM #:** *ABT 7329*

**CARLA HEADEN – CLAIM MANAGER**
**L & W INSURANCE – P.O. BOX 918**
**DOVER, DE 19903     302-674-3500**

01/10/2006  10:07    3027310826                    UNITED COCOA                        PAGE  02/02

# CRAIG/is Ltd.

**Insurance Services**

PO Box 40569   Jacksonville   Florida   32203-0569
Voice 904.807.2500     Fax 904.807.2510

December 27, 2005

United Cocoa Processor Warehouse
701 Pencader Dr.
Newark, DE  19702

## **IMPORTANT NOTICE**

Re:   FFIC Claim Number        : 20032675
      FFIC Insured             : Transmar Commodity
      Date of Loss             : December 2, 2005
      Type of Loss             : warehouse/fire Loss
      Anticipated Amount of loss : $130,000.00 or more

*AB77329*

Dear Sirs:

We represent Fireman's Fund Insurance Company (FFIC) in pursuing subrogation
recovery of any insurance funds which might be paid by FFIC for this loss.  Our
investigation thus far leads us to inform you that you and/or your agents may have legal
liability for this loss.

To help you identify your possible involvement with this loss, please note that insured's
bulk cocoa beans and product were stored under your care, custody and control by
agreement at your warehouse in Newark.  It is our understanding that the insured stored
goods were damaged on the above date by a fire at the warehouse.

If you have liability insurance, please notify your insurance carrier of this loss and
potential claim as soon as possible and have your carrier contact our office.

Should you or your representatives wish to inspect the evidence, please contact the
undersigned immediately.

Sincerely,

Service Manager
Craig/is, Ltd.

JOC/jc



A Passion for Process™                                    www.craigis.com